# EXHIBIT A




A-1

# Buy and Sell Agreement

Offer Date: __Jan 8 - 2021__
Selling Office: __CBTREG__ ("Selling Broker")
Selling REALTOR®: __Dennis Siem__
Selling REALTOR®'s Email Address: __DSiem310@gmail.com__
Selling REALTOR®'s Phone: __CBTREG 715 587-4154__  Facsimile: _____
Listing Office: __CBTREG__ ("Listing Broker")
Listing REALTOR®: __Dennis Siem__
Listing REALTOR®'s Email Address: __DSiem310@gmail.com__
Listing REALTOR®'s Phone: __715-587-4154__  Facsimile: _____

1. **PROPERTY DESCRIPTION:** Buyer agrees to buy from Seller the property located at __2003 To 2013 10th ST__, __Menominee__ County, Michigan, and legally described as: __About 134 FT Deep and 233 Frontage Approx # Parcel 051-019-590-10  Building About 4600 SQ FT__
The property includes all buildings; all fixtures; all gas, oil, and mineral rights owned by Seller; built-in appliances; lighting fixtures; plumbing fixtures; water softener (unless rented); heating fixtures; electrical fixtures; radio and television antennas and any mechanical controls; shades; awnings; shutters; window blinds; curtain and drapery rods; attached floor coverings; attached fireplace doors and screens; garage door openers and controls; screens, storm windows and doors; landscaping, fences, and mailboxes, if any; and _____

but does not include: _____

2. **PURCHASE PRICE:** The purchase price for the property is $ __415,000.00__

3. **METHOD OF PAYMENT:** All payments must be in the form of cash, certified check, cashiers check, or money order. The purchase will be completed by the following method:

   [X] **CASH:** Buyer will pay the purchase price in cash upon Seller's delivery of a warranty deed conveying marketable title.

   [ ] **NEW MORTGAGE:** This Agreement is contingent on Buyer's ability to obtain a _____ mortgage loan in the amount of $ _____. Buyer will provide evidence of mortgage application and appraisal order from Buyer's lender within _____ days of the date of this Agreement. If Buyer fails to deliver to Seller evidence of the loan approval before _____, Seller may cancel this Agreement. The sale will be completed upon Seller's delivery of a warranty deed conveying marketable title.

   [ ] **LAND CONTRACT:** Buyer will purchase the property on land contract with a $ _____ down payment and monthly installments of principal and interest in the amount of $ _____ or more, including annual interest of _____ percent. Buyer will pay the entire balance, which may require a lump-sum payment, within _____ years after closing.

   [ ] **MORTGAGE ASSUMPTION or LAND CONTRACT ASSIGNMENT:** If the holder of the mortgage or land contract agrees, Buyer will assume and pay Seller's existing mortgage or land contract according to its terms. Buyer will pay the difference between the purchase price and the existing balance of approximately $ _____ upon Seller's delivery of a warranty deed or a land contract assignment. Buyer will reimburse Seller at closing for any funds held in escrow.

4. **TITLE INSURANCE:** Seller shall provide to Buyer, at Seller's expense, an owner's policy of title insurance with standard exceptions in the amount of the purchase price. Seller will apply for a commitment for title insurance within __10__ days after the Buyer has waived all other contingencies contained in this Agreement. Any special exception will be subject to Buyer's approval, provided that this contingency shall be deemed waived unless Buyer notifies Seller in writing within __5__ days of receipt of the commitment. Seller will have 30 days after receiving written notice to remedy any claimed defect.

Form A ©1995 Michigan Association of REALTORS®. Revised 10/15

CB-REG

A-2

5. **PROPERTY INSURANCE:** Seller shall be responsible for fire and extended coverage insurance on the property until sale is closed.

6. **CLOSING COSTS:** Seller shall pay all state and county transfer taxes and costs required to convey clear title. Buyer shall pay the cost of recording the deed and/or security interests and all mortgage closing costs and fees required in connection with the Buyer's loan and the issuance of the lender's title insurance policy.

7. **REAL ESTATE TAXES:** Seller will pay all prior years' real estate taxes. The current year's real estate taxes will be paid as follows:

    ☐ NO PRORATION: Seller will pay the taxes which are due before the date of closing. Buyer will pay taxes which are due on or after the date of closing. "Due" means the date on which a tax becomes payable.

    ☐ PRORATION: With current year taxes treated as though they are paid in ☒ arrears ☐ advance, based on a ☒ calendar year ☐ fiscal year.

    ☐ OTHER: _____

8. **SPECIAL ASSESSMENTS:** All special assessments for municipal improvements shall be paid by the Seller, provided, however, that in the event a special assessment is payable in installments, current and future installments shall be
    ☐ allocated between Seller and Buyer using the same method for the proration of real estate taxes in paragraph 7 above; or
    ☒ paid in full by Seller at closing.

9. **MISCELLANEOUS PRORATED ITEMS:** Rent, association fees, insurance (if assigned) and fuel, as well as interest on any existing land contract, mortgage or other lien assumed or to be paid by the Buyer, will be prorated to the date of closing.

    Additional items: _____

10. **CLOSING DATE:** Sale to be closed on or before ___4-28-2021___.

11. **OCCUPANCY:** Seller will give occupancy as follows:

    ☒ Immediately after closing.

    ☐ _____ days after closing by 12:00 noon. From the date of closing to the date of vacating, Seller will pay Buyer $ _____ per day as an occupancy charge. At closing, Seller will pay $ _____ to Listing Broker to be held in escrow. After Buyer shall vacate the property, Listing Broker will use these funds to pay the accrued occupancy charge to Buyer and refund the balance, if any, to Seller. Seller is liable to Buyer for damage to the property occurring after closing and before vacating, to the extent not covered by the Buyer's homeowners policy, as well as for any deductible portions of a covered claim.

    If tenants occupy the property, then:

    ☐ Seller will cause the tenants to vacate the property before closing.

    ☒ Buyer will take the property subject to the rights of the tenants.

12. **SELLER'S DISCLOSURE:**

    ☐ Buyer acknowledges that a Seller's Disclosure Statement has been provided to Buyer.

    ☒ Seller shall provide Buyer with a Seller's Disclosure Statement with Seller's acceptance of this offer. Pursuant to the Seller Disclosure Act, MCL 565.951, *et seq.*, Buyer will have 72 hours after hand-delivery of the disclosure statement (or 120 hours after delivery by registered mail) to terminate this Agreement by delivery of a written notice to Seller or Seller's agent.

13. **RELEASE:** Buyer and Seller acknowledge that neither Listing Broker nor Selling Broker, nor their respective agents, have made any representations concerning the condition of the property covered by this Agreement or the marketability of title, and Buyer and Seller release the Listing Broker and Selling Broker and their respective agents, with respect to all claims arising out of or related to this Agreement, any addendums or counteroffers; all claims arising from any purported representations as to the physical and environmental condition of the property covered by this Agreement or the marketability of title; and all claims arising from any special assessments and/or utility bills which have been or may in the future be charged against the property covered by this Agreement and, in addition, agree to indemnify and hold harmless the Listing Broker and Selling Broker and their respective agents from any and all claims related to those matters.



# BAY TITLE & ABSTRACT, INC.

## Wiring Instructions

| | |
|---|---|
| Funds should be wired to: | Associated Bank<br>200 North Adams Street<br>Green Bay, WI 54301<br>Ph: 920-433-3200 |
| ABA Routing #: | 075900575 |
| On to: | Integra First Federal Credit Union<br>2600 10th Street<br>Menominee, MI 49858 |
| Account No: | 90005314 |
| For Final Credit to: | Bay Title & Abstract, Inc.<br>Trust Account<br>824 10th Avenue<br>Menominee, MI 49858 |
| Account No: | 2914350 |

A-3

14. **LEAD-BASED PAINT DISCLOSURE/INSPECTION (For residential housing built prior to 1978 only):** Buyer acknowledges that prior to signing this Agreement, Buyer has received a copy of the *Lead-based Paint Sellers Disclosure Form* completed by the Seller on _____, the terms of which shall be part of this Agreement. Buyer also agrees (check one below):

   ☐ Buyer shall have _____ days after the date of this Agreement to conduct an inspection of the property for the presence of lead-based paint and/or lead-based paint hazards. (Federal regulations require a 10-day period or other mutually agreed upon period of time.) If Buyer is not satisfied with the results of this inspection, upon notice from Buyer to Seller within this period, this Agreement shall terminate and any deposit shall be refunded to Buyer.

   ☒ Buyer hereby waives his/her opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

15. **LAND DIVISION ACT (For unplatted land only):** Seller and Buyer agree that the following statements shall be included in the deed at the time of delivery:

   (a) The grantor grants to the grantee the right to make _____ (insert "zero" or a specific number, as appropriate) division(s) under section 108 of the Land Division Act, MCL 560.108.

   (b) This property may be located within the vicinity of farm land or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors and other associated conditions may be used and are protected by the Michigan right to farm act.

   **CAUTION:** If the space contained in subparagraph (a) above is left blank, the deed will NOT grant Buyer the right to any divisions.

16. **PROPERTY INSPECTIONS:** Buyer has personally inspected the property and accepts it in AS IS present condition and agrees that there are no additional written or oral understandings except as otherwise provided in this Agreement.

   ☒ This offer is contingent upon satisfactory inspections of the property, at Buyer's choice and at Buyer's expense, no later than **120** business days of the date of this Agreement. These inspections may include, but may not be limited to, structural and/or mechanical inspections, survey and site investigation, soil borings, as well as inspections for radon, pests, mold and/or asbestos. Buyer agrees to return the property to its prior condition after any inspections or tests. If Buyer is not satisfied with the results of any inspection, upon written notice from Buyer to Seller within this period, this Agreement shall terminate and any deposit shall be refunded to Buyer. In the event the Buyer neither removes the contingencies nor terminates this Agreement in the time provided, the Buyer shall be deemed to have waived this contingency. Any request by Buyer to modify this Agreement based on the results of an inspection shall terminate this Agreement unless: (a) the request is agreed to by Seller in writing, or (b) the Buyer removes the inspection contingency in writing within the time for inspections.

   ☐ Buyer acknowledges that Selling Broker/REALTOR® has recommended that Buyer obtain an inspection of the property by an inspector and/or a licensed contractor. Buyer does not desire to obtain an inspection of the property.

17. **EARNEST MONEY DEPOSIT:** Buyer deposits $ **5,000** to be held by **Title Company, TBD** ("Escrowee") evidencing Buyer's good faith, which deposit shall be applied to the purchase price at closing.

   If this offer is not accepted or title is not marketable, or insurable or if the terms of purchase are contingent upon ability to obtain a new mortgage or any other contingencies as specified, which cannot be met, this deposit shall be refunded to Buyer. In the event the Buyer and Seller both claim the earnest money deposit, the earnest money deposit shall remain in Escrowee's trust account until a court action has determined to whom the deposit must be paid, or until the Buyer and Seller have agreed in writing to the disposition of the deposit. (This paragraph may be subject to the arbitration provisions in paragraph 22 below.)

18. **DEFAULT:** If Buyer defaults, Seller may enforce this Agreement, or may cancel the Agreement, keep the deposit, and pursue legal remedies. If Seller defaults, Buyer may enforce this Agreement or may demand a refund of the deposit and pursue legal remedies. (This paragraph may be subject to the arbitration provisions in paragraph 22 below).

19. **LIMITATION:** Buyer and Seller agree that any and all claims or lawsuits which they may have against the Listing Broker and its agents and/or Selling Broker and its agents relating to their services must be filed no more than six (6) months after the date of closing of the transaction described in this Agreement. Buyer and Seller waive any statute of limitations to the contrary.

A-4

20. **ENTIRE AGREEMENT:** Buyer and Seller agree that this is the entire agreement between the parties and that there are no other written or oral understandings. Buyer and Seller further agree that this Agreement supersedes any and all prior agreements, understandings or representations made by the parties or their agents.

21. **WALK-THROUGH:** Buyer has the right to walk through the property within forty-eight (48) hours prior to closing.

22. **ARBITRATION:** Any dispute over the disposition of any earnest money deposits or claim arising out of or related to the physical condition of any property covered by this Agreement, included without limitation, claims of fraud, misrepresentation, warranty and negligence, shall be settled in accordance with the rules, then in effect, adopted by the endorsed provider of arbitration services for the Michigan Association of REALTORS®. This is a voluntary agreement between the Buyer and Seller. Failure to agree to arbitrate does not affect the validity of the Agreement. A judgment of any circuit court shall be rendered on the award or determination made pursuant to this Agreement. This Agreement is specifically made subject to and incorporates the provisions of the Michigan Uniform Arbitration Act, MCL 691.1681, *et seq*. This Agreement is enforceable only as to parties and brokers/agents who have agreed to arbitrate as acknowledged by their initials below. The terms of this paragraph shall survive the closing.

INITIAL IF YOU AGREE TO ARBITRATE:

Seller [JAH]   Buyer [MT]   Listing Broker [DG]   Selling Broker [AS]

23. **ELECTRONIC COMMUNICATION:** As an alternative to physical delivery, the parties agree that this Agreement, any amendment or modification of this Agreement and/or any written notice or communication in connection with this Agreement may be delivered to the Seller in care of the Listing REALTOR® and the Buyer in care of the Selling REALTOR® via electronic mail or by facsimile via the contact information set forth above. Any such communication shall be deemed delivered at the time it is sent or transmitted. Seller represents and warrants that an electronic email address has been provided to Listing REALTOR® from which Seller may receive electronic mail. Buyer represents and warrants that an electronic email address has been provided to Selling REALTOR® from which Buyer may receive electronic mail. The parties agree that the electronic signatures and initials shall be deemed to be valid and binding upon the parties as if the original signatures or initials were present in the documents in the handwriting of each party.

24. **COUNTERPARTS:** This Agreement may be signed in any number of counterparts with the same effect as if the signature of each counterpart were upon the same instrument.

25. **HEIRS, SUCCESSORS AND ASSIGNS:** This Agreement binds Seller, Seller's personal representatives and heirs, and anyone succeeding to Seller's interest in the property. Buyer shall not assign this Agreement without Seller's prior written permission.

26. **OTHER CONDITIONS:** Seller has a right to terminate this agreement within 7 days of acceptance of the contract in case Wild West Tobacco will exercise their right of first refusal.

27. **THIS OFFER WILL EXPIRE ON** January 21 **at** 5  ☐ A.M. ☒ P.M., or upon Seller's receipt of revocation from Buyer, whichever is earlier.

28. **RECEIPT IS ACKNOWLEDGED BY BUYER** of a copy of this Agreement.

Buyer Signature: /s/ 
1240 S Bannock LLC, Rita Tsalyuk, member
Print Name

Buyer Signature
Print Name

BUYER'S ADDRESS: _____

Deposit in the form of ☐ Personal Check ☐ Other _____
received by _____
Selling Broker/REALTOR®

A-5

Date _Jan 26-2021_

## SELLER'S ACCEPTANCE

29. THE ABOVE OFFER is hereby accepted _____

_____ and/or see addendum attached hereto.

30. SELLER ALSO AGREES to pay the Listing Broker/REALTOR® named above a commission as stated in the Listing Agreement for the property.

31. RECEIPT IS ACKNOWLEDGED by Seller of a copy of this Agreement.

_Steven A Newt_                                    _Donald S New_
Seller Signature                                   Seller Signature

_____                           _____
Print Name                                         Print Name

SELLER'S ADDRESS: _____

_____

                                                        Date _____

## BUYER'S RECEIPT OF ACCEPTANCE

32. RECEIPT IS HEREBY ACKNOWLEDGED BY BUYER of the Seller's acceptance of Buyer's offer. In the event the acceptance was subject to changes from Buyer's offer, the Buyer agrees to accept said changes, as set forth in paragraph 29 above.

_____                           _____
Buyer Signature                                    Buyer Signature

_____                           _____
Print Name                                         Print Name

**Disclaimer:** This form is provided as a service of the Michigan Association of REALTORS®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Michigan Association of REALTORS® is not responsible for use or misuse of the form, for misrepresentation, or for warranties made in connection with the form.