UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

NORTHERN DIVISION

1240 S. BANNOCK, LLC,
 a Colorado limited liability corporation,

Plaintiffs,

v.

DENNIS SIEM, DONALD J. NERAT,
STEVEN A. NERAT, COLDWELL
BANKER REAL ESTATE GROUP, and
BAY TITLE & ABSTRACT,

Defendants.

Case No. 2:21-cv-00183

Hon. Paul L. Maloney

**Oral Argument Requested**

| | |
|---|---|
| Miller Johnson | Collins Einhorn Farrell PC |
| Shoran R. Williams (P83262) | Theresa M. Asoklis (P42709) |
| Joslin E. Monahan (P77362) | Trent B. Collier (P66448) |
| 45 Ottawa Ave. SW, Suite 1100 | 4000 Town Center, Floor 9 |
| Grand Rapids, MI 49503 | Southfield, MI 48075 |
| (616) 831-1700 | (248) 355-4141 |
| williamssr@millerjohnson.com | Theresa.Asoklis@ceflawyers.com |
| monahanj@millerjohnson.com | Trent.Collier@ceflawyers.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants Dennis Siem and* |
| | *Coldwell Banker Real Estate Group* |

# Defendants Dennis Siem and Coldwell Banker Real Estate Group's Motion to Dismiss

## Oral Argument Requested

Defendants Dennis Siem and Coldwell Banker Real Estate Group ask this Court to enter an order under Fed. R. Civ. P. 12(b)(6) dismissing this action for failure to state a claim on which relief can be granted. The contract attached to plaintiff 1240 S. Bannock, LLC's complaint releases all claims against Siem and Coldwell Banker. In addition, Bannock alleges that Siem and Coldwell Banker tortiously interfered with their clients' contract. Under Michigan law, an agent cannot interfere with a principal's contract. Therefore, Bannock has failed to state a claim on which relief can be granted.

As required under Local Civil Rule 7.1(d), Siem and Coldwell Banker sought Bannock's concurrence in this motion on September 7, 2021 by phoning plaintiff's counsel. Bannock did not concur.

For the foregoing reasons, Siem and Coldwell Banker respectfully request that this Court enter an order dismissing all claims against them.

Respectfully submitted,

Collins Einhorn Farrell PC

By:      /s/ Theresa M. Asoklis
Theresa M. Asoklis (P42709)
Trent B. Collier (P66448)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
Theresa.Asoklis@ceflawyers.com
Trent.Collier@ceflawyers.com
*Attorney for Defendants*

Dated: September 7, 2021

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

NORTHERN DIVISION

1240 S. BANNOCK, LLC,
a Colorado limited liability corporation,

        Plaintiffs,

v.

DENNIS SIEM, DONALD J. NERAT,
STEVEN A. NERAT, COLDWELL
BANKER REAL ESTATE GROUP, and
BAY TITLE & ABSTRACT,

        Defendants.

Case No. 2:21-cv-00183

Hon. Paul L. Maloney

**Oral Argument Requested**

| | |
|---|---|
| Miller Johnson | Collins Einhorn Farrell PC |
| Shoran R. Williams (P83262) | Theresa M. Asoklis (P42709) |
| Joslin E. Monahan (P77362) | Trent B. Collier (P66448) |
| 45 Ottawa Ave. SW, Suite 1100 | 4000 Town Center, Floor 9 |
| Grand Rapids, MI 49503 | Southfield, MI 48075 |
| (616) 831-1700 | (248) 355-4141 |
| williamssr@millerjohnson.com | Theresa.Asoklis@ceflawyers.com |
| monahanj@millerjohnson.com | Trent.Collier@ceflawyers.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants Dennis Siem and Coldwell Banker Real Estate Group* |

# Brief in Support of Defendants Dennis Siem and Coldwell Banker Real Estate Group's Motion to Dismiss

## Oral Argument Requested

# Table of Contents

*Index of Authorities* .................................................................................................................. ii

*Questions Presented* .............................................................................................................. iv

*Introduction* ............................................................................................................................... 1

*Facts and Procedural History* ............................................................................................. 2

*Standard of Review* ................................................................................................................. 3

*Choice of Law* ............................................................................................................................ 4

*Argument 1: Release* ............................................................................................................... 5

  Bannock released the Nerats' agent/broker from "all claims arising out of or relating
  to" the purchase agreement. Its tortious-interference claims relate to the purchase
  agreement, and Siem and Coldwell Banker are the Nerats' agent/broker. Therefore,
  the purchase agreement's release bars Bannock's tortious-interference claims against
  Siem and Coldwell Banker ...................................................................................................... 5

*Argument 2: Tortious Interference* .................................................................................. 10

  A party to a contract cannot tortiously interfere with their own contract. The same
  rule applies to a contracting party's agent. Siem and Coldwell Banker are the Nerats'
  agents. Therefore, they cannot tortiously interfere with the Nerats' contract.
  Bannock's tortious-interference claims fail as a matter of law ....................................... 10

*Conclusion* .............................................................................................................................. 13

*Certificate of Compliance* .................................................................................................. 14

<u>*CERTIFICATE OF SERVICE*</u> .......................................................................................... 15

# Index of Authorities

*Cases*

*Amini v. Oberlin Coll.*, 259 F.3d 493 (6th Cir. 2001) ................................................................. 4

*Andrie v Chrystal-Anderson & Assoc. Realtors, Inc.,*
187 Mich. App. 333; 466 N.W.2d 393 (1991) ......................................................................... 12

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) ................................. 3, 4

*Brooks v. Holmes*, 163 Mich. App. 143; 413 N.W.2d 688 (1987) ............................................... 6

*Cole v. Ladbroke Racing Mich., Inc.*, 614 N.W.2d 169 (Mich. Ct. App. 2000) .................. 6, 8, 9

*Collucci v. Eklund,* 613 N.W.2d 402 (Mich. Ct. App. 2000) ................................................... 6, 9

*Copeland v. MidMichigan Regional Medical Center,*
No. 314880 (Mich. Ct. App. June 5, 2014), 2014 WL 2600553 ........................................ 7, 8, 9

*Cudnik v. William Beaumont Hosp.*, 525 N.W.2d 891 (Mich. Ct. App. 1994) .......................... 6

*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) .................................................................. 4

*Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915 (Mich. 1999) ......................... 6

*Feldman v. Green*, 360 N.W.2d 881 (Mich. Ct. App. 1984) ..................................................... 12

*Hall v. Small*, 267 Mich. App. 330; 705 N.W.2d 741 (2005) .................................................... 10

*Health Call of Detroit v. Atrium Home & Health Care Services, Inc.,*
706 N.W.2d 843 (Mich. Ct. App. 2005) ................................................................................... 11

*International Ins. Co. v. Stonewall Ins. Co.,* 86 F.3d 601 (6th Cir. 1996) .................................... 4

*Kevelighan v. Trott & Trott, P.C.,* 771 F. Supp. 2d 763 (E.D. Mich. 2010) ....................... 11, 12

*Knight Enterprises v. RPF Oil Co.,* 829 N.W.2d 345 (Mich. Ct. App. 2013) .......................... 12

*Meyer v. Oakland Community College Board of Trustees,*
No. 350234 (Mich. Ct. App. Oct. 22, 2020), 2020 WL 6236543 .............................................. 6

*Olmstead v. Anderson*, 400 N.W.2d 292 (Mich. 1987) ................................................. 4

*Reed v. Michigan Metro Girl Scout Council,*
201 Mich. App. 10; 506 N.W.2d 231 (1993) .............................................................. 11

*Saab Auto AB v. Gen. Motors Co.*, 770 F.3d 436 (6th Cir. 2014) ................................ 11

*Skotak v. Vic Tanny Intern., Inc.,* 513 N.W.2d 428 (Mich. Ct. App. 1994) ........................ 6, 8

*Spartan Graphics, Inc. v. Entermarket Corp.,*
Docket No. 292235 (Mich. Ct. App. Nov. 16, 2010), 2010 WL 4628643 ................................ 7

*Sutherland v. Kennington Truck Service, Ltd.*, 562 N.W.2d 466 (Mich. 1997) ..................... 4, 5

**Statutes**

28 U.S.C. § 1332 ....................................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................... 3, 5, 10, 13

Fed. R. Civ. P. 12(d) ....................................................................................... 3

Fed. R. Civ. P. 56 ........................................................................................ 3

# Questions Presented

1. The plaintiff released the defendants real-estate agent/ broker from "all claims arising out of or relating to" the purchase agreement. The plaintiff's tortious-interference claims against these defendants relate to the purchase agreement. Specifically, they allege that the agent/broker induced a breach of that agreement. Does the purchase agreement's release bar the plaintiff's tortious-interference claims against these defendants?

   Plaintiff presumably answers:                              No.

   Defendants Siem and Coldwell Banker answer:               Yes.

   This Court should answer:                                 Yes.

2. A party to a contract cannot tortiously interfere with their own contract. The same rule applies to a contracting party's agent. The agent/broker defendants are agents of a contracting party. Therefore, they cannot tortiously interfere with the contract at issue. Do the plaintiff's tortious-interference claims against these defendants fail as a matter of law?

   Plaintiff presumably answers:                              No.

   Defendants Siem and Coldwell Banker answer:               Yes.

   This Court should answer:                                 Yes.

## Introduction

This is a breach-of-contract action—at least in part. Plaintiff 1240 S. Bannock, LLC alleges that defendants Steven and Donald Nerat agreed to sell real property in Menominee, Michigan. That sale depended on another company obtaining permission to run a marijuana business. Bannock alleges that the Nerats sold the property to a third party while that company was still seeking permission, and seeks relief for breach of contract. Not content with a contractual remedy, Bannock adds two tortious-interference claims against the Nerats' real-estate agent/broker, defendant Dennis Siem and defendant Coldwell Banker Real Estate Group.[1] It claims—without citing a single supporting fact— that Siem and Coldwell Banker persuaded the Nerats to break their agreements with Bannock. *Complaint,* ECF No. 1, PageID.6, ¶41.

These claims have two primary flaws. First, Bannock signed a contract that released "all claims arising out of or related to [the purchase agreement]…" It now claims that Siem and Coldwell Banker induced a third party to purchase the property, "thereby facilitating [the Nerats'] breach of the Purchase Agreement." *Complaint,* ECF No. 1, PageID.5, ¶31. These allegations "relate to" the purchase agreement and are therefore invalid under the purchase agreement's release.

---

[1] Coldwell Banker The Real Estate Group is a d/b/a of The Real Estate Group, Inc., a Wisconsin corporation.

Second, Bannock admits that Siem and Coldwell Banker are the Nerats' agents. *Complaint*, ECF No. 1, PageID.4, ¶22. Under Michigan law, an agent cannot interfere with a principal's contract. With or without the release, Bannock's tortious-interference claim fails to state a claim on which relief can be granted. For either or both of these reasons, the Court should dismiss all claims against Siem and Coldwell Banker.

## Facts and Procedural History

This lawsuit arises from a January 8, 2021 Buy and Sell Agreement between Bannock on one hand and Donald and Steven Nerat on the other. *Complaint*, ECF No. 1, PageID.2, ¶12. Defendants Siem and Coldwell Banker Real Estate Group served as the Nerats' real-estate agent/broker. *Id*, PageID.4, ¶22.

The Nerats agreed to sell property known as 2003 to 2013 10th Street, Menominee, Michigan to Bannock for $415,000. *Id*. Bannock planned to continue the commercial rental agreements in place for the property, while also using the property for "marijuana business ventures[.]" *Id*., PageID.3, ¶13.

Bannock and the Nerats later entered into an Addendum to the Purchase Agreement. *Complaint*, ECF No. 1, PageID.3, ¶14. This addendum provided that the sale was contingent on another company, Yuma Way, MI LLC, receiving a license to open a retail marijuana shop on the property. *Id*. The sale was to close on the later of July 1, 2021 or five days after Yuma Way received its marijuana-sales license. *Id*. Bannock soon

transferred $5,000 in earnest money to defendant Bay Title & Abstract's escrow account. *Id.*, ¶18.

Bannock alleges that, in late June 2021, it learned that the Nerats had sold the property to an "undisclosed" third party. *Complaint,* ECF No. 1, PageID.4, ¶21. This sale, Bannock argues, was a "material breach of the Purchase Agreement and Addendum." *Id.*, ¶21. Bannock then filed a complaint against Dennis Siem, Donald Nerat, Steven Nerat, Coldwell Banker, and Bay Title & Abstract.

In Count I, Bannock asserts that the Nerats are liable for breach of contract. In Count II, it accuses Siem and Coldwell Banker of tortiously interfering with the purchase agreement. Count III accuses Bay Title & Abstract of breaching an implied-in-fact contract, and Count IV accuses Siem, Coldwell Banker, and Bay Title & Abstract of tortiously interfering with Bannock's business relationship or expectancy.

## Standard of Review

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008).[2] When applying Rule 12(b)(6), a reviewing court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all

---

[2] This motion relies solely on the complaint and its attachments, and is therefore proper under Fed. R. Civ. P. 12(b)(6). If the Court construes this motion as falling under Fed. R. Civ. P. 56, then Coldwell Banker respectfully requests that the Court convert this motion to Rule 56 under Fed. R. Civ. P. 12(d).

reasonable inferences in favor of the plaintiff." *Bassett,* 528 F.3d at 430 (quoting *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007)). The Court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* (citing *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001)).

## Choice of Law

This case arises under this Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. In cases invoking diversity jurisdiction, a federal district court must apply the choice-of-law rules of the state in which it sits. *International Ins. Co. v. Stonewall Ins. Co.,* 86 F.3d 601, 604 (6th Cir. 1996). Bannock filed this action in the U.S. District Court for the Western District of Michigan.

For tort claims, Michigan uses an interest-based analysis. *See Olmstead v. Anderson,* 400 N.W.2d 292 (Mich. 1987); *Sutherland v. Kennington Truck Service, Ltd.,* 562 N.W.2d 466 (Mich. 1997). According to this approach, courts apply the law of the forum—Michigan law—unless there is a "rational reason" to do otherwise. *Sutherland,* 562 N.W.2d at 471. This inquiry calls for a "two-step analysis." *Id.* First, the court must determine whether "any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome." *Id*. If a foreign state does have an interest in having its law applied, "the Court must then determine if

4

Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.*

Colorado has some interest in this case because Bannock is organized there and all of its members live there. *Complaint,* ECF No. 1, PageID.1, ¶1. But Michigan's interest substantially outweighs Colorado's interest. The contract at issue concerns property in Michigan, all of the defendants reside in Michigan, and the entire case arises from Bannock's desire to do business in Michigan. Consequently, there is no reason to displace Michigan law.

## Argument 1: Release

**Bannock released the Nerats' agent/broker from "all claims arising out of or relating to" the purchase agreement. Its tortious-interference claims relate to the purchase agreement, and Siem and Coldwell Banker are the Nerats' agent/broker. Therefore, the purchase agreement's release bars Bannock's tortious-interference claims against Siem and Coldwell Banker.**

In the purchase agreement at issue, Bannock released "all claims arising out of or related to" the purchase agreement and its addendum. *Complaint,* ECF No. 1, PageID.9, ¶13. That release applies to any claims against the "Listing Broker or Selling Broker," *id.,* which includes Siem and Coldwell Banker. Given this contractual language, Bannock has failed to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

Michigan law treats a release like any other contract. The scope of a release depends on the parties' intent—and when a release's language is unambiguous, a court

5

must discern the parties' intent solely from that language. *Collucci v. Eklund,* 613 N.W.2d 402, 404 (Mich. Ct. App. 2000). A dispute between the parties over the meaning of a release does not, in itself, establish an ambiguity. *Cole v. Ladbroke Racing Mich., Inc.,* 614 N.W.2d 169, 176 (Mich. Ct. App. 2000). Rather, language is ambiguous only if it is reasonably susceptible to more than one interpretation. *Id.* Whether a release is ambiguous is a question of law. *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 918 (Mich. 1999).

The release in this case is valid and enforceable. In *Brooks v. Holmes*, 163 Mich. App. 143; 413 N.W.2d 688 (1987), the Court of Appeals affirmed the validity of a release contained in a real-estate purchase agreement "with respect to all claims arising out of the performance of [the purchase agreement and addendums]." *Id.* at 144. True, Michigan law prohibits some prospective releases, such as prospective releases of medical-malpractice claims. *Cudnik v. William Beaumont Hosp.,* 525 N.W.2d 891, 896 (Mich. Ct. App. 1994).[3] But there is no bar against releasing claims for ordinary negligence. *Skotak,* 513 N.W.2d at 429. Nor does Michigan law prohibit prospective releases of tortious-interference claims. The Michigan Court of Appeals' unpublished opinion in *Copeland v.*

---

[3] *Cudnik* also states in *dicta* that releases generally operate retrospectively, while covenants not to sue are prospective. *Id.,* n. 8. More recently, the Court of Appeals has indicated that labels—whether "release" or "covenant not to sue"—are not that important. *Meyer v. Oakland Community College Board of Trustees,* No. 350234 (Mich. Ct. App. Oct. 22, 2020), 2020 WL 6236543, *12. The contractual language is controlling, not the labels a party might choose. *Id.*

*MidMichigan Regional Medical Center,* No. 314880 (Mich. Ct. App. June 5, 2014), 2014 WL 2600553, is one example of a release applying to a tortious-interference claim.

In *Copeland,* a hospital suspended Dr. Brain Copeland's privileges based on a colleague's concerns about his demeanor in the operating room. Dr. Copeland sued the hospital for disability discrimination, defamation, breach of contract, and tortious interference with a business relationship. *Copeland, supra,* at 1. But the hospital had a defense: When Dr. Copeland first applied for staff privileges a decade before the incidents at issue, he had executed a release. This release stated, "I extend absolute immunity to, and release from any and all liability, and agree not to sue the hospital … for any actions … which are … taken … relating …. to the following … (j) any other matter that might directly or indirectly have an effect on my competence, on patient care …." *Id.* at 1. This contract barred Dr. Copeland's claims—including his tortious-interference claim.[4]

Dr. Copeland argued that, because a party cannot release claims involving gross negligence, a release is inapplicable to a claim that requires malice, like tortious interference. *Copeland, supra,* at 2. The Court of Appeals concluded that Dr. Copeland was confusing two different standards. Malice, in the context of a tortious-interference claim,

---

[4] Of course, Michigan courts reach a different conclusion when a release is actually limited to claims existing at a particular time. See, e.g., *Spartan Graphics, Inc. v. Entermarket Corp.,* Docket No. 292235 (Mich. Ct. App. Nov. 16, 2010), 2010 WL 4628643, at 2 (treating release as retroactive where it applied to claims that "were, could have been, or might have been asserted by the Plaintiffs in the lawsuit …"). In this case, the release has no language limiting its application to any particular timeframe.

involves knowingly making a false statement or making a statement with reckless disregard for the truth. Gross negligence involves "reckless disregard for whether an injury resulted." *Id.* at 4. Because the complaint did not plead a reckless disregard for whether Dr. Copeland was injured, the release applied to bar Dr. Copeland's tortious-interference claim. *Id.* at 4.

Here, Bannock executed a contract that released "all claims arising out of or related to" the purchase agreement and its addendum:

> Buyer and Seller acknowledge that neither Listing Broker nor Selling Broker, nor their respective agents, have made any representations concerning the condition of the property covered by this Agreement or the marketability of title, and *Buyer and Seller release the Listing Broker and Selling Broker and their respective agents, with respect to all claims arising out of or related to this Agreement, any addendums or counteroffers*; all claims arising from any purported representations as to the physical and environmental condition of the property covered by this Agreement or the marketability of title; and all claims arising from any special assessments and/or utility bills which have been or may in the future be charged against the property covered by this Agreement and, in addition, agree to indemnify and hold harmless the Listing Broker and Selling Broker and their respective agents from any and all claims related to those matters.

*Buy and Sell Agreement,* ECF No. 1-1, PageID.9, ¶13 (emphasis added). The word *all* is a broad, all-encompassing term that "leaves room for no exceptions." *Skotak v. Vic Tanny Intern., Inc.*, 513 N.W.2d 428, 430 (Mich. Ct. App. 1994). *See also Cole v. Ladbroke Racing Michigan, Inc.,* 614 N.W.2d 169, 176 (Mich. Ct. App. 2000) (quoting *Skotak* for the principle that "there is no broader classification than the word 'all.'").

Given this contractual language, the only question for the Court is whether the claims against Siem and Coldwell Banker are claims "arising out of or related to" the purchase agreement. In Count II, Bannock accuses Siem and Coldwell Banker of inducing a "breach of the Purchase Agreement[.]" *Complaint,* ECF No. 1, PageID.5, ¶31. That purchase agreement is the same document that contains the release. Similarly, Count IV alleges that Siem and Coldwell Banker "induced Defendants to breach the Purchase Agreement…." *Id.,* PageID.6, ¶41. Both counts against Siem and Coldwell Banker relate to the purchase agreement and its addendum. Both, therefore, are invalid under the release.

It makes no difference that Bannock's interference claims arose after the parties executed the purchase agreement. The release's plain language is controlling and it lacks any language that might limit its scope to claims existing as of the agreement's execution. *Complaint,* ECF No. 1, PageID.5, ¶31. To the contrary, it applies to "all" claims. Its scope is as broad as it can possibly be. *Cole,* 614 N.W.2d at 176 (citing *all* as the broadest classification). This release bars Bannock's tortious-interference claims, just as a release prospectively barred a tortious-interference claim in *Copeland, supra.*

Finally, it is irrelevant that neither Siem nor Coldwell Banker are parties to the purchase agreement that contains the release. When the language of a release clearly applies to a particular entity, it does not matter whether that entity is also a party to the contract. *Collucci,* 240 Mich App at 658. ("Here, . . . the release language clearly applies to defendants, employees of Textron. Therefore, though defendants were not parties to the

execution of the release and did not provide any of the consideration given to plaintiff for the release, the release operates to discharge defendants from liability in this matter."). *See also Hall v. Small*, 267 Mich. App. 330; 705 N.W.2d 741 (2005) (holding that release of seller's broker was valid even though broker was not a party to the purchase agreement).

Put simply, the release barred "all" claims "related to" the purchase agreement. Bannock's tortious-interference claims against Siem and Coldwell Banker are "related to" the purchase agreement. They are barred. The Court should therefore dismiss all claims against Siem and Coldwell Banker.

### Argument 2: Tortious Interference

**A party to a contract cannot tortiously interfere with their own contract. The same rule applies to a contracting party's agent. Siem and Coldwell Banker are the Nerats' agents. Therefore, they cannot tortiously interfere with the Nerats' contract. Bannock's tortious-interference claims fail as a matter of law.**

Bannock's complaint fails to state a claim against Siem and Coldwell Banker for a second and independent reason. A party to a contract cannot tortiously interfere with that contract—and, under Michigan law, the same rule applies to a contracting party's agents. Bannock alleges that Siem and Coldwell Banker were the Nerats' agents. Taking that allegation as true (as the Court must for purposes of Rule 12(b)(6)), it follows that Bannock's tortious-interference claims fail as a matter of law.

To state a tortious interference with contract claim, a plaintiff must allege "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of

the breach by the defendant." *Health Call of Detroit v. Atrium Home & Health Care Services, Inc.*, 706 N.W.2d 843, 848 (Mich. Ct. App. 2005). To state a tortious-interference-with-economic-expectancy claim, on the other hand, a plaintiff must allege: "(i) the existence of a valid business relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage." *Saab Auto AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014).

For both claims, however, a plaintiff must allege that the alleged interferer was a third party to the contract or business relationship at issue. *Reed v. Michigan Metro Girl Scout Council,* 201 Mich. App. 10, 13; 506 N.W.2d 231 (1993) ("To maintain a cause of action for tortious interference, the plaintiffs must establish that the defendant was a 'third party' to the contract or business relationship."); *Kevelighan v. Trott & Trott, P.C.,* 771 F. Supp. 2d 763 (E.D. Mich. 2010) (holding that a plaintiff cannot allege a tortious-interference-with-contract claim against "a party to the contract or an agent of a party to the contract").

The plaintiffs in *Kevelighan* alleged that the defendants involved in administering mortgage agreements tortiously interfered with those agreements. *Kevelighan,* 771 F. Supp. 2d at 766. The defendants included banks, mortgage servicers, and law firms representing the banks. The U.S. District Court for the Eastern District of Michigan held that the plaintiffs' tortious-interference claim was deficient as a matter of law because "all

11

defendants [were] either contracting parties or agents to contracting parties." *Id.* at 779. The Court "reject[e]d plaintiffs' unsupported attempts to distinguish between individual and agency 'hats' worn by some of the defendants." *Id.*

The same analysis applies here. Bannock alleges that Siem and Coldwell Banker were the Nerats' agents: "At all times relevant to the Buy and Sell Agreement, Addendum and subsequent improper s[ale] of the Property to an undisclosed 3rd Party, Defendants Siem and Coldwell Banker Real Estate Group were the real estate agents representing Defendants Nerat." *Complaint,* ECF No. 1, PageID.4, ¶22. When a real-estate agent represents a seller, that real-estate agent has an agency relationship with the seller as principal. *Andrie v Chrystal-Anderson & Assoc. Realtors, Inc.,* 187 Mich. App. 333, 335; 466 N.W.2d 393 (1991) ("Real estate brokers and sales[people] are the agents of the seller, their principal."). The sellers—the Nerats—were parties to the contract with which Siem and Coldwell Banker allegedly interfered. *Complaint,* ECF No. 1, PageID.2, ¶12. So Bannock alleges that Siem and Coldwell Banker are agents who interfered with their principals' contract. Michigan law prohibits that claim. *Kevelighan,* 771 F. Supp. 2d at 779.[5]

---

[5] Bannock's tortious-interference claims have other problems, too. A plaintiff alleging tortious interference with a contract must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights of business relationship of another." *Knight Enterprises v. RPF Oil Co.,* 829 N.W.2d 345, 348 (Mich. Ct. App. 2013). Tortious interference with a business relationship or expectancy also requires malice. *Feldman v. Green*, 360 N.W.2d 881, 886 (Mich. Ct. App. 1984). Bannock does not allege that Siem or Coldwell Banker engaged in an act that is wrongful per se or was performed with

Accordingly, Bannock's tortious-interference claims against Siem and Coldwell Banker fail as a matter of law. The Court should dismiss them under Fed. R. Civ. P. 12(b)(6).

## Conclusion

For the foregoing reasons, Dennis Siem and Coldwell Banker Real Estate Group respectfully request that the Court dismiss all claims against them under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

Collins Einhorn Farrell PC

By: /s/ Theresa M. Asoklis
Theresa M. Asoklis (P42709)
Trent B. Collier (P66448)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
Theresa.Asoklis@ceflawyers.com
Trent.Collier@ceflawyers.com
*Attorney for Defendants Siem and Coldwell Banker*

Dated: September 7, 2021

---

malice. That is yet another reason to dismiss its claims against Siem and Coldwell Banker.

## Certificate of Compliance

This brief includes 3,253 words as defined by L. Civ. P. 7.2(b)(i). This calculation is based on Microsoft Word, Microsoft Office, Standard 2016.

Respectfully submitted,

Collins Einhorn Farrell PC

By: */s/ Theresa M. Asoklis*
Theresa M. Asoklis (P42709)
Trent B. Collier (P66448)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
Theresa.Asoklis@ceflawyers.com
Trent.Collier@ceflawyers.com
*Attorney for Defendants Siem and Coldwell Banker*

Dated: September 7, 2021

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 7, 2021, a copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties to the above cause to each of the attorneys of record herein.

<div style="margin-left: 40%;">

Respectfully submitted,

Collins Einhorn Farrell PC

By: <u>/s/ Theresa M. Asoklis</u>
Theresa M. Asoklis (P42709)
Trent B. Collier (P66448)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
Theresa.Asoklis@ceflawyers.com
Trent.Collier@ceflawyers.com
*Attorney for Defendants Siem and Coldwell Banker*

</div>

Dated: September 7, 2021