UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

NORTHERN DIVISION

1240 S. BANNOCK, LLC,
 a Colorado limited liability corporation,

              Plaintiffs,

v.

DENNIS SIEM, DONALD J. NERAT,
STEVEN A. NERAT, COLDWELL
BANKER REAL ESTATE GROUP, and
BAY TITLE & ABSTRACT,

              Defendants.

Case No. 2:21-cv-00183

Hon. Paul L. Maloney

**Oral Argument Requested**

---

| | |
|---|---|
| Miller Johnson<br>Shoran R. Williams (P83262)<br>Joslin E. Monahan (P77362)<br>45 Ottawa Ave. SW, Suite 1100<br>Grand Rapids, MI 49503<br>(616) 831-1700<br>williamssr@millerjohnson.com<br>monahanj@millerjohnson.com<br>*Attorneys for Plaintiff*<br><br>NUMINEN DEFORGE & TOUTANT PC<br>PHILLIP B. TOUTANT (P72992)<br>105 Meeske Avenue<br>Marquette, MI 49855<br>(906) 226-2580/(906) 226-2248<br>phillip@numinenlaw.com<br>*Attorney for Defendants Donald J. Nerat &*<br>*Steven A. Nerat* | Collins Einhorn Farrell PC<br>Theresa M. Asoklis (P42709)<br>Trent B. Collier (P66448)<br>4000 Town Center, Floor 9<br>Southfield, MI 48075<br>(248) 355-4141<br>Theresa.Asoklis@ceflawyers.com<br>Trent.Collier@ceflawyers.com<br>*Attorneys for Defendants Dennis Siem and*<br>*Coldwell Banker Real Estate Group* |

# Defendants Dennis Siem and Coldwell Banker Real Estate Group's Motion to Dismiss 1240 S. Bannock, LLC's First Amended Complaint

## Oral Argument Requested

Defendants Dennis Siem and Coldwell Banker Real Estate Group ask this Court to enter an order under Fed. R. Civ. P. 12(b)(6) dismissing plaintiff 1240 S. Bannock LLC's First Amended Complaint [ECF No. 16, PageID.67] for failure to state a claim on which relief can be granted. The contract attached to plaintiff 1240 S. Bannock, LLC's amended complaint releases all claims against Siem and Coldwell Banker. In addition, Bannock has not pleaded a valid fraud or silent fraud claim because (a) it does not plead fraud with particularity, (b) it does not allege facts showing reliance, (c) it does not allege that Siem or Coldwell Banker made any fraudulent statements to it, and (d) it does not allege facts that would arguably give rise to a duty to disclose the other purchase agreement.

As required under Local Civil Rule 7.1(d), Siem and Coldwell Banker sought Bannock's concurrence in this motion on October 12, 2021, by phoning plaintiff's counsel. Bannock denied concurrence.

For the foregoing reasons, Siem and Coldwell Banker respectfully request that this Court enter an order dismissing all claims against them.

Respectfully submitted,

Collins Einhorn Farrell PC

By:     /s/ Theresa M. Asoklis
Theresa M. Asoklis (P42709)
Trent B. Collier (P66448)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
Theresa.Asoklis@ceflawyers.com
Trent.Collier@ceflawyers.com
*Attorney for Defendants*

Dated: October 12, 2021

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

NORTHERN DIVISION

1240 S. BANNOCK, LLC,
a Colorado limited liability corporation,

     Case No. 2:21-cv-00183

     Plaintiffs,

     Hon. Paul L. Maloney

v.

**Oral Argument Requested**

DENNIS SIEM, DONALD J. NERAT,
STEVEN A. NERAT, COLDWELL
BANKER REAL ESTATE GROUP, and
BAY TITLE & ABSTRACT,

     Defendants.

| | |
|---|---|
| Miller Johnson<br>Shoran R. Williams (P83262)<br>Joslin E. Monahan (P77362)<br>45 Ottawa Ave. SW, Suite 1100<br>Grand Rapids, MI 49503<br>(616) 831-1700<br>williamssr@millerjohnson.com<br>monahanj@millerjohnson.com<br>*Attorneys for Plaintiff*<br><br>NUMINEN DEFORGE & TOUTANT PC<br>PHILLIP B. TOUTANT (P72992)<br>105 Meeske Avenue<br>Marquette, MI 49855<br>(906) 226-2580/(906) 226-2248<br>phillip@numinenlaw.com<br>*Attorney for Defendants Donald J. Nerat &*<br>*Steven A. Nerat* | Collins Einhorn Farrell PC<br>Theresa M. Asoklis (P42709)<br>Trent B. Collier (P66448)<br>4000 Town Center, Floor 9<br>Southfield, MI 48075<br>(248) 355-4141<br>Theresa.Asoklis@ceflawyers.com<br>Trent.Collier@ceflawyers.com<br>*Attorneys for Defendants Dennis Siem and*<br>*Coldwell Banker Real Estate Group* |

**Brief in Support of Defendants Dennis Siem and Coldwell Banker Real Estate Group's Motion to Dismiss1240 S. Bannock, LLC's First Amended Complaint**

**Oral Argument Requested**

# Table of Contents

*Index of Authorities* ..........................................................................................................*iii*

*Questions Presented* ..........................................................................................................*v*

*Introduction* ..................................................................................................................... 1

*Facts and Procedural History* .......................................................................................... 2

    A.  Bannock enters into a buy-sell agreement with the Nerats ........................................ 2

    B.  The Nerats enter into a buy-sell agreement with Deniro Saco .................................. 2

    C.  Bannock amends its agreement .................................................................................. 3

    D.  The Nerats sell the property to a third party ............................................................ 3

*Standard of Review* ......................................................................................................... 4

*Choice of Law* ................................................................................................................. 5

*Argument 1: Release* ....................................................................................................... 6

    Bannock released the Nerats' agent/broker from "all claims arising out of or relating to" the purchase agreement. Its fraud claims relate to the purchase agreement, and Siem and Coldwell Banker are the Nerats' agent/broker. Therefore, the purchase agreement's release bars Bannock's fraud claims against Siem and Coldwell Banker.. 6

*Argument 2: Fraud and Silent Fraud* ......................................................................... 11

    A fraud claim must be pleaded with particularity, establish reliance, and include a false representation. The same elements apply to silent-fraud claims, except that a plaintiff must also allege facts creating a duty of disclosure. Bannock's fraud and silent fraud claim against Coldwell Banker contains none of the above. The Court should dismiss it ................................................................................................................ 11

      2.1  A plaintiff must plead fraud with specificity and allege a false statement (for a fraud claim) or a failure to disclose combined with a duty to disclose (for a silent-fraud claim) ............................................................................................................... 11

i

2.2  Bannock's fraud theories satisfy neither Rule 9(b)'s heightened pleading standards nor Michigan law governing fraud claims .................................................. 13

 2.2.1   Bannock's allegations lack specificity ............................................................. 14

 2.2.2   Bannock does not allege relianc ...................................................................... 14

 2.2.3   Bannock alleges neither a false statement nor facts giving rise to a duty to disclose information about a third-party purchaser ................................................. 15

*Conclusion* .................................................................................................................... *16*

*Certificate of Compliance* ............................................................................................ *17*

*<u>CERTIFICATE OF SERVICE</u>* ................................................................................... *18*

ii

# Index of Authorities

*Cases*

*Amini v. Oberlin Coll.,* 259 F.3d 493 (6th Cir. 2001) ................................................... 4

*Andrie v. Chrystal-Anderson & Assoc., Inc.,*
466 N.W.2d 393 (Mich. Ct. App. 1991) ........................................................... 12, 15

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................................... 15

*Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426 (6th Cir. 2008) ................... 4

*Brooks v. Holmes,* 413 N.W.2d 688 (Mich. Ct. App. 1987) ......................................... 7

*Cole v. Ladbroke Racing Mich., Inc.,* 614 N.W.2d 169 (Mich. Ct. App. 2000) ............... 6, 9, 10

*Collucci v. Eklund,* 613 N.W.2d 402 (Mich. Ct. App. 2000) ................................... 6, 10

*Cudnik v. William Beaumont Hosp.,* 525 N.W.2d 891 (Mich. Ct. App. 1994) ......... 7

*Directv, Inc. v. Treesh,* 487 F.3d 471 (6th Cir. 2007) ............................................... 4

*Dresden v. Detroit Macomb Hosp. Corp.,* 553 N.W.2d 387 (Mich .Ct. App. 1996) ......... 7, 8, 9

*Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel,* 596 N.W.2d 915 (Mich. 1999) ......... 6

*Hall v. Small,* 705 N.W.2d 741 (Mich. Ct. App. 2005) ........................................... 10

*International Ins. Co. v. Stonewall Ins. Co.,* 86 F.3d 601 (6th Cir. 1996) ................ 5

*M&D, Inc. v. W.B. McConkey,* 585 N.W.2d 33 (Mich. Ct. App. 1998) ............... 12, 14, 15

*Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.,* 683 F.3d 239 (6th Cir. 2012) ............ 11

*Roberts v. Saffell,* 760 N.W.2d 715 (Mich. Ct. App. 2008) ....................................... 12

*Roehl v. Higbie Maxon, Inc.,* unpublished per curiam opinion of the
Court of Appeals, issued Feb. 15, 2002 (Case No. 221957) ................................... 13

*Skotak v. Vic Tanny Intern., Inc.,* 513 N.W.2d 428 (Mich. Ct. App. 1994) ............... 9

*Spartan Graphics, Inc. v. Entermarket Corp.,* Docket No. 292235
(Mich. Ct. App. Nov. 16, 2010), 2010 WL 4628643 ............................................... 7

iii

*Sutherland v. Kennington Truck Service, Ltd.*, 562 N.W.2d 466 (Mich. 1997) ......................... 5

**Statutes**

28 U.S.C. § 1332 ................................................................................................................. 5

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................passim

Fed. R. Civ. P. 9(b) ............................................................................... 1, 11, 13, 14

Local Civil Rule 7.1(d) ............................................................................................ 2

# Questions Presented

1. The plaintiff released the defendants real-estate agent/broker from "all claims arising out of or relating to" the purchase agreement and its amendments. The plaintiff's fraud claims against these defendants relate to the purchase agreement and its amendment. Specifically, the plaintiff alleges that the agent/broker fraudulently induced a breach of that agreement. Does the purchase agreement's release bar the plaintiff's fraud claims against these defendants?

   Plaintiff presumably answers:                           No.

   Defendants Siem and Coldwell Banker answer:       Yes.

   This Court should answer:                              Yes.

2. A fraud claim must be pleaded with particularity, it must allege facts showing reliance, and it must allege a false representation. The same elements apply to silent-fraud claims, except that a plaintiff must allege facts giving rise to a duty to disclose. The plaintiff's fraud and silent fraud claim contains none of the above. Should the Court dismiss it?

   Plaintiff presumably answers:                           No.

   Defendants Siem and Coldwell Banker answer:       Yes.

   This Court should answer:                              Yes.

## Introduction

Plaintiff 1240 S. Bannock, LLC alleges that defendants Steven and Donald Nerat agreed to sell real property in Menominee, Michigan. That sale depended on Yuma Way MI, LLC obtaining permission to run a marijuana business there. According to Bannock, the Nerats sold the property to another buyer while Yuma Way was still seeking permission. So Bannock filed this action, asserting that the Nerats breached their contract.

Not content with a contractual remedy, Bannock has been looking for a way to rope in the Nerats' real-estate agent/broker, defendant Dennis Siem and defendant Coldwell Banker Real Estate Group. That was never a viable option: Bannock signed an agreement releasing all claims against Coldwell Banker. That agreement applies here and it bars Bannock's claims against Coldwell Banker and Siem.

In fact, Bannock's claims fail as a matter of law even without the release. Originally, Bannock accused Coldwell Banker of tortious interference. When Coldwell Banker filed a motion showing that this tortious-interference theory was invalid, Bannock came up with a new tort: Count III now accuses Coldwell Banker of fraud and silent fraud. But neither theory works. The amended complaint cites no allegedly fraudulent statements from Coldwell Banker. It also fails to allege facts that would give rise to a duty to share information about the seller's plans with Bannock. It cites no facts establishing reliance, and it doesn't even meet Fed. R. Civ. P. 9(b)'s particularity requirements.

Whether it's the release or Bannock's failure to plead the elements of a fraud or silent fraud claim, governing law bars Bannock's claims against Coldwell Banker and Siem. The Court should dismiss them. *See* Fed. R. Civ. P. 12(b)(6).

<h1 align="center">Facts and Procedural History</h1>

### A.  Bannock enters into a buy-sell agreement with the Nerats

In January 2021, 1240 S. Bannock, LLC entered into an agreement with Donald and Steven Nerat to purchase real property known as 2003 to 2013 10th Street, Menominee, Michigan. *First Amended Complaint,* ECF No. 16, PageID.68, ¶11. Bannock was to pay the Nerats $415,000. *Id.* Additionally, the parties' Buy and Sell Agreement required Bannock to deposit $5,000 in earnest money with a title company. *Id.,* ECF No. 16, PageID.69, ¶16. Bannock wired those funds on February 2, 2021. *Id.,* ¶19.

Bannock alleges that the only condition in the original agreement was that a third party called Wild West Tobacco had a right of first refusal. *First Amended Complaint,* ECF No. 16, PageID.16, ¶15. Wild West Tobacco had to exercise that option within seven days of Bannock's acceptance on January 26, 2021. *Id.* The Nerats never told Bannock that Wild West Tobacco exercised its option so, by February 2, 2021, Bannock wired its earnest funds to the Nerats' title company. *Id.* Bannock alleges that it began "incur[ring] expenses related to its anticipated ownership" of the property. *Id.,* ¶20. Aside from the costs of inspection, Bannock does not identify any particular expenses. *Id.*

### B.  The Nerats enter into a buy-sell agreement with Deniro Saco.

Bannock alleges that the Nerat defendants entered into another buy-sell agreement for the property on March 3, 2021. *First Amended Complaint,* ECF No. 16, PageID.69, ¶21. This time, the prospective buyer was Deniro Saco. *Id.* Bannock says it never knew that the Nerats executed an agreement with Saco. *Id.,* PageID.70, ¶¶23-25. It

<div align="center">2</div>

also questions whether Saco has anything to do with Wild West Tobacco, the company with a right of refusal.[1] *Id.,* ¶22.

## C.  Bannock amends its agreement.

Bannock and the Nerats amended their agreement on April 8, 2021. *First Amended Complaint,* ECF No. 16, PageID.70, ¶26. This amendment stated that the sale to Bannock was contingent on a third-party company called Yuma Way MI, LLC receiving a license to run a retail marijuana shop at the property. *Id.,* ¶29. The closing date was moved from April 28, 2021 to July 1, 2021. *Id.* A couple days after amending the agreement, Donald Nerat executed a "Property Owner Consent Form" that said he would allow Yuma Way to operate a marijuana business at the property if it could obtain a license. *Id.,* ¶31.

## D.  The Nerats sell the property to a third party.

Bannock alleges that it called the title company in late June 2021 to prepare for the closing, only to learn that the Nerats sold the property to a third party. *First Amended Complaint,* ECF No. 16, PageID.71, ¶38. So it filed the lawsuit presently before the Court.

Originally, Bannock sued Dennis Siem, Donald Nerat, Steven Nerat, Coldwell Banker, and Bay Title & Abstract. In Count I, Bannock asserted that the Nerats were liable for breach of contract. In Count II, it accused Siem and Coldwell Banker of tortiously interfering with the purchase agreement. Count III accused Bay Title & Abstract of breaching an implied-in-fact contract, and Count IV accused Siem, Coldwell Banker, and Bay Title & Abstract of tortiously interfering with Bannock's business relationship or

---

[1] A quick search of the Michigan Department of Licensing and Regulatory Affairs website shows that Saco is involved with a number of "Wild West Tobacco" companies. But the Court need not address this factual issue to resolve Coldwell Banker's motion.

expectancy. Siem and Coldwell Banker filed a motion to dismiss, arguing that (1) a release in Bannock's buy-sell agreement bars this lawsuit and (2) Bannock cannot pursue a tortious-interference theory against Siem or Coldwell Banker because they are the Nerats' agents. A party cannot interfere with its own contract—and that rule applies to a party's agents, too.

This Court allowed Bannock to file an amended complaint. *Order Regarding Motion to Dismiss*, ECF No. 13, PageID.62. On September 28, 2021, Bannock filed a new complaint. This one drops all claims against Bay Title and Abstract. *Stipulation and Order for Dismissal of Bay Title & Abstract, Inc. with Prejudice*, ECF No. 15, PageID.65. The amended complaint also eliminates Bannock's tortious-interference claims against Siem and Coldwell Banker, and substitutes a claim called "fraud and silent fraud."

## Standard of Review

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). When applying Rule 12(b)(6), a reviewing court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett*, 528 F.3d at 430 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The Court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## Choice of Law

This case arises under this Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. In cases invoking diversity jurisdiction, a federal district court must apply the choice-of-law rules of the state in which it sits. *International Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996).

For tort claims, Michigan uses an interest-based analysis. *See Sutherland v. Kennington Truck Service, Ltd.*, 562 N.W.2d 466 (Mich. 1997). According to this approach, courts apply the law of the forum—Michigan law—unless there is a "rational reason" to do otherwise. *Id.* at 471. This inquiry calls for a "two-step analysis." *Id.* First, the court must determine whether "any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome." *Id.* If a foreign state does have an interest in having its law applied, "the Court must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.*

Colorado has some interest in this case because Bannock is organized there and all of its members live there. *First Amended Complaint,* ECF No. 16, PageID.67, ¶1. But Michigan's interest substantially outweighs Colorado's interest. The contract at issue concerns property in Michigan, all of the defendants reside in Michigan, and the entire case arises from Bannock's desire to do business in Michigan. Consequently, there is no reason to displace Michigan law.

## Argument 1: Release

> **Bannock released the Nerats' agent/broker from "all claims arising out of or relating to" the purchase agreement. Its fraud claims relate to the purchase agreement, and Siem and Coldwell Banker are the Nerats' agent/broker. Therefore, the purchase agreement's release bars Bannock's fraud claims against Siem and Coldwell Banker.**

In the purchase agreement at issue, Bannock released "all claims arising out of or related to" the purchase agreement and its addendum. *Buy-Sell Agreement,* ECF No. 16-1, PageID.80-81, ¶13. That release applies to any claims against the "Listing Broker or Selling Broker," *id.,* which includes Siem and Coldwell Banker. When Bannock and the Nerats amended their agreement in April 2021, they reaffirmed all other contractual terms. *WB-40 Amendment to Offer to Purchase,* ECF No. 16-4, PageID.93, ¶29. That reaffirmation necessarily included the original release. Given this contractual language, Bannock has failed to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

Michigan law treats a release like any other contract. The scope of a release depends on the parties' intent—and when a release's language is unambiguous, a court must discern the parties' intent solely from that language. *Collucci v. Eklund,* 613 N.W.2d 402, 404 (Mich. Ct. App. 2000). A dispute between the parties over the meaning of a release does not, in itself, establish an ambiguity. *Cole v. Ladbroke Racing Mich., Inc.,* 614 N.W.2d 169, 176 (Mich. Ct. App. 2000). Rather, language is ambiguous only if it is reasonably susceptible to more than one interpretation. *Id.* Whether a release is ambiguous is a question of law. *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 918 (Mich. 1999).

The release is valid and enforceable when applied to fraud or misrepresentation claims.[2] In *Brooks v. Holmes*, 413 N.W.2d 688 (Mich. Ct. App. 1987), the Michigan Court of Appeals considered a similar release in the context of a similar real-estate transaction. The buyer plaintiffs accused the seller defendant and her realtors of fraud, misrepresentation, and negligence. *Id.* at 689. The court affirmed the validity of a release contained in the parties' real-estate purchase agreement "with respect to all claims arising out of the performance of [the purchase agreement and addendums]." *Id.* at 689.

The Court explained that a release is valid under Michigan law if it is "fairly and knowingly made." *Brooks*, 413 N.W.2d at 699. And a release is invalid if "(1) the releaser was acting under duress, (2) there was misrepresentation as to the nature of the release agreement, or (3) there was fraudulent or overreaching conduct to secure the release." *Id.* The plaintiffs in *Brooks* did not allege that they were unaware of what they were signing. *Id.* Nor did they allege duress, a misrepresentation about the release, or overreaching conduct to obtain the release. *Id.* Accordingly, the court held that the release barred the plaintiffs' fraud and misrepresentation claims.

A release that applies to "all" claims is broad enough to include fraud claims. In *Dresden v. Detroit Macomb Hosp. Corp.*, 553 N.W.2d 387 (Mich .Ct. App. 1996), for example,

---

[2] Michigan law prohibits some prospective releases, such as prospective releases of medical-malpractice claims. *Cudnik v. William Beaumont Hosp.*, 525 N.W.2d 891, 896 (Mich. Ct. App. 1994). And a release may not apply if it is limited to claims existing at a particular time. See, e.g., *Spartan Graphics, Inc. v. Entermarket Corp.*, Docket No. 292235 (Mich. Ct. App. Nov. 16, 2010), 2010 WL 4628643, at 2 (treating release as retroactive where it applied to claims that "were, could have been, or might have been asserted by the Plaintiffs in the lawsuit …"). In this case, the release has no language limiting its application to any particular timeframe.

the plaintiff sued medical personnel for medical malpractice and agreed to a settlement

after learning that the hospital could not find the key x-ray image at issue. *Id.* at 389. The

settlement included a release of all claims. After settlement, the plaintiff learned that a

doctor had allegedly destroyed the key x-ray to avoid liability. So the plaintiff filed a new

lawsuit suit, alleging fraud and asking the court to reopen the original medical-

malpractice case. *Id.* at 389.

The Court of Appeals held that the release barred the plaintiff's claim. When the

plaintiff argued that the release did not include fraud claims, the court rejected that

argument: "The release specifically mentions all the defendants and includes language

releasing the defendants from liability for 'any and all' causes of action that could have

been based upon, or could have arisen out of, the medical care rendered to Dresden …"

*Dresden,* 553 N.W.2d at 390. The Court added, "Plaintiff's claim that the release is silent

concerning unknown claims is erroneous, because the release mentions 'any and all'

cause of action. The scope of the release was sufficiently broad to bar the fraud claim." *Id.*

at 390.

Here, Bannock executed a contract that released "all claims arising out of or related

to" the purchase agreement and its addendum:

> Buyer and Seller acknowledge that neither Listing Broker nor
> Selling Broker, nor their respective agents, have made any
> representations concerning the condition of the property
> covered by this Agreement or the marketability of title, and
> Buyer and Seller **release the Listing Broker and Selling
> Broker** and their respective agents, with respect to **all claims**
> arising out of or related to this Agreement, **any addendums**
> or counteroffers; all claims arising from any purported
> representations as to the physical and environmental

> condition of the property covered by this Agreement or the
> marketability of title; and all claims arising from any special
> assessments and/or utility bills which have been or may in
> the future be charged against the property covered by this
> Agreement and, in addition, agree to indemnify and hold
> harmless the Listing Broker and Selling Broker and their
> respective agents from any and all claims related to those
> matters.

*Buy and Sell Agreement,* ECF No. 16-1, PageID.80-81, ¶13 (emphasis added). The word *all*

is a broad, all-encompassing term that "leaves room for no exceptions." *Skotak v. Vic*

*Tanny Intern., Inc.,* 513 N.W.2d 428, 430 (Mich. Ct. App. 1994). *See also Cole v. Ladbroke*

*Racing Michigan, Inc.,* 614 N.W.2d 169, 176 (Mich. Ct. App. 2000) (quoting *Skotak* for the

principle that "there is no broader classification than the word 'all.'"); *Dresden,* 553

N.W.2d at 390 (holding that a release prohibiting "any and all" causes of action applied

to a fraud claim).

Given this contractual language, the only question for the Court is whether the

claims against Siem and Coldwell Banker are claims "arising out of or related to" the

purchase agreement and its addendum. *Buy and Sell Agreement,* ECF No. 16-1, PageID.80-

81, ¶13. In Count III, Bannock accuses Siem and Coldwell Banker of failing to disclose the

Saco agreement when Bannock executed its amendment:

> 78. **By providing the executed Amendment** to Plaintiff
> without disclosing the Deniro Purchase Agreement to
> Plaintiff, Defendants Siem and Coldwell Banker made
> incomplete and misleading representations that created a
> false impression in Plaintiff that the sale of the Property to
> Plaintiff was still moving forward.
>
> 79. Likewise, Defendants Siem and Coldwell Banker made
> incomplete and misleading misrepresentations by, among
> other statements referring generally to a third party 'offer' but

> failing to identify that a contract had been executed with the
> undisclosed third party. This reference to a mere 'offer'
> created a false impression in Plaintiff that the sale of the
> Property to Plaintiff was still moving forward.

*First Amended Complaint,* ECF No.16, PageID.76, ¶¶78-79 (emphasis added).

Bannock's allegations against Siem and Coldwell Banker are therefore "related to" the agreement and its addendum. Because the release applies to "all" claims related to the agreement and its addendums, it bars Bannock's fraud claims against Siem and Coldwell Banker. *Cole,* 614 N.W.2d at 176 (citing *all* as the broadest classification).

Finally, it is irrelevant that neither Siem nor Coldwell Banker are parties to the purchase agreement that contains the release. When the language of a release clearly applies to a particular entity, it does not matter whether that entity is also a party to the contract. *Collucci,* 613 N.W.2d at 404 ("Here, . . . the release language clearly applies to defendants, employees of Textron. Therefore, though defendants were not parties to the execution of the release and did not provide any of the consideration given to plaintiff for the release, the release operates to discharge defendants from liability in this matter."). *See also Hall v. Small*, 705 N.W.2d 741 (Mich. Ct. App. 2005) (holding that release of seller's broker was valid even though broker was not a party to the purchase agreement).

Put simply, the release barred "all" claims "related to" the purchase agreement and its addendum. Bannock's fraud claim against Siem and Coldwell Banker is "related to" the purchase agreement's addendum. It is barred. The Court should therefore dismiss all claims against Siem and Coldwell Banker.

# Argument 2: Fraud and Silent Fraud

**A fraud claim must be pleaded with particularity, establish reliance, and include a false representation. The same elements apply to silent-fraud claims, except that a plaintiff must also allege facts creating a duty of disclosure. Bannock's fraud and silent fraud claim against Coldwell Banker contains none of the above. The Court should dismiss it.**

The release in Bannock's agreement bars its claims against Siem and Coldwell Banker. That fact alone is enough to dismiss Bannock's claims against Siem and Coldwell. But there is a second and independent reason to dismiss Bannock's claims: Bannock has not alleged a valid fraud or silent fraud claim.

## 2.1    A plaintiff must plead fraud with specificity and allege a false statement (for a fraud claim) or a failure to disclose combined with a duty to disclose (for a silent-fraud claim).

Fraud claims "pose a high risk of abusive litigation." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.,* 683 F.3d 239, 246 (6th Cir. 2012) (internal quotations omitted). In light of that risk, the Federal Rules of Civil Procedure require parties to plead fraud with specificity. Fed. R. Civ. P. 9(b). A plaintiff is required "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank,* 683 F.3d at 247.

A plaintiff that satisfies these pleading requirements must also allege each element of a fraud claim under Michigan law. To state a fraud claim, a plaintiff must allege "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it

recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *M&D, Inc. v. W.B. McConkey,* 585 N.W.2d 33, 36 (Mich. Ct. App. 1998).

While fraud requires an actual false statement, a claim of "silent fraud" requires proof that a defendant suppressed a material fact they had a duty to disclose. *M&D,* 585 N.W.2d at 37. It's not enough to show that "the seller was aware of and failed to disclose a hidden defect" *Roberts v. Saffell,* 760 N.W.2d 715 (Mich. Ct. App. 2008). Rather, "Michigan courts have recognized that silence cannot constitute actionable fraud *unless* it occurred under circumstances where there was a legal duty of disclosure." *M&D,* 585 N.W.2d at 37 (emphasis in original).

A seller's agent does not have a general duty of disclosure to a buyer. *M&D,* 585 N.W.2d at 35. Rather, a real estate broker is the seller's agent. *Andrie v. Chrystal-Anderson & Assoc., Inc.,* 466 N.W.2d 393, 394 (Mich. Ct. App. 1991). And that makes it very difficult for a buyer to prove that a seller's agent owed it a duty of disclosure.

In *Andrie,* for example, the Court of Appeals upheld a judgment of no cause of action where prospective purchasers of a home sued the seller's listing agent and broker under a theory of negligence for inaccurately conveying a purchase offer to the seller. Analyzing whether a duty existed, the Court of Appeals held that, "[i]n negotiating a real estate sale, any relationship between the seller's agent and the potential buyer is a commercially antagonistic one, with each side working for his best advantage and not for the benefit of the other." *Andrie,* 466 N.W.2d at 395. Applying these principles in *Andrie,*

12

the Michigan Court of Appeals held that "a seller's real estate broker or agent owe[d] no duty to a potential buyer to properly convey a purchase offer to the seller." *Id.* See also *Roehl v. Higbie Maxon, Inc.,* unpublished per curiam opinion of the Court of Appeals, issued Feb. 15, 2002 (Case No. 221957) (rejecting the homebuyer's silent fraud claim against the seller's agent and broker because "real estate agents representing sellers do not have a general duty to disclose to purchasers material defects involving the property").

### 2.2   Bannock's fraud theories satisfy neither Rule 9(b)'s heightened pleading standards nor Michigan law governing fraud claims.

Bannock alleges that it "submitted an offer to amend the Purchase Agreement" on April 8, 2021. *First Amended Complaint,* ECF No. 16, PageID.70, ¶26. That was over two months after Bannock submitted its earnest-money deposit. *Id.,* ¶19. Coldwell Banker "presented" that amendment to the Nerats on April 12, 201. *Id.,* ¶27. The Nerats executed the amendment that day. *Id.* The amendment somehow made its way back to Bannock. *Id.,* ¶78. Bannock says Coldwell Banker "provid[ed]" the document but it does not allege how or when. *Id.*

Bannock alleges that, by returning an executed copy of the document without mentioning the Saco purchase agreement, Coldwell Banker supposedly made "incomplete and misleading representations" to Bannock:

> 78. By providing the executed Amendment to Plaintiff without disclosing the Deniro Purchase Agreement to Plaintiff, Defendants Siem and Coldwell Banker made incomplete and misleading representations that created a false impression in Plaintiff that the sale of the Property to Plaintiff was still moving forward.

13

*First Amended Complaint,* ECF No.16, PageID.76, ¶¶78. Bannock also refers vaguely to "other statements" about a third-party offer that supposedly failed to give adequate notice of the Saco agreement:

> 79. Likewise, Defendants Siem and Coldwell Banker made incomplete and misleading misrepresentations by, among other statements referring generally to a third party 'offer' but failing to identify that a contract had been executed with the undisclosed third party. This reference to a mere 'offer' created a false impression in Plaintiff that the sale of the Property to Plaintiff was still moving forward.

*First Amended Complaint,* ECF No.16, PageID.76, ¶¶78. These allegations fall far short of the mark.

### 2.2.1 Bannock's allegations lack specificity.

First, Bannock's allegations lack the specificity required under Fed. R. Civ. P. 9(b). Bannock does not allege when it received the executed document from Coldwell Banker, who sent it, or what they said when they sent it. *First Amended Complaint,* ECF No.16, PageID.76, ¶¶78. The allegations in Paragraph 79 about "other statements referring generally to a third party 'offer' are even more vague. *Id.* Bannock fails to allege what was said, who said it, when they said it, or to whom they were speaking. Count III falls far short of a valid fraud claim.

### 2.2.2 Bannock does not allege reliance.

A party can pursue a fraud or silent-fraud claim only if they relied on the false statement or withheld information. *M&D,* 585 N.W.2d at 36. Bannock does not allege reliance. To the contrary, its allegations disprove any claim of reliance. It sent a deposit in February 2021. *First Amended Complaint,* ECF No.16, PageID.69, ¶19. Coldwell Banker's

supposedly fraudulent misrepresentations took place in April 2021. *Id.*, PageID.76, ¶¶78-79. The complaint lists some supposed injuries in Paragraph 83, but it includes no factual allegations about any actions taken in reliance on the returned agreement. Without factual allegations showing reliance, Bannock has failed to plead a valid claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'").

### 2.2.3   Bannock alleges neither a false statement nor facts giving rise to a duty to disclose information about a third-party purchaser.

Aside from failing to plead fraud with particularity and failing to plead facts showing reliance, Bannock's amended complaint fails to address the core of a fraud or silent fraud claim.

A fraud claim requires a false, material representation. *M&D, Inc.,* 585 N.W.2d at 36. Anyone searching Bannock's complaint for specifics about a false representation from Coldwell Banker will search in vain. It does not list a single false statement from Coldwell Banker, and that omission dooms Bannock's fraud theory.

Bannock's silent-fraud theory fares no better. A party alleging silent fraud must cite facts giving rise to a duty of disclosure. *M&D,* 585 N.W.2d at 37. That is a high bar here because Coldwell Bank represented the Nerats, not Bannock. *Andrie,* 466 N.W.2d at 394. And Bannock's allegations come nowhere close to clearing that bar. It alleges that it sent Coldwell Banker an addendum to share with the Nerats. *First Amended Complaint,* ECF No. 16, PageID.70, ¶26. Coldwell Banker "presented" that amendment to the Nerats

on April 12, 201. *Id.*, ¶27. The Nerats executed the amendment that day, and Coldwell Banker apparently returned it. (The complaint doesn't say when or how).

So Bannock started the amendment process and Coldwell Banker was just an intermediary. Bannock does not claim that it asked any questions that might give rise to a duty of disclosure. Nor does it cite a single statement from Coldwell Banker that might support a duty of disclosure. Count III is nowhere near a valid fraud or silent-fraud claim under Michigan law.

Between Bannock's short-lived tortious-interference theory and its facially deficient fraud allegations, it is clear that Bannock has no valid basis for a claim against Coldwell Banker—and that's without even considering the release. For all of these reasons, the Court should dismiss Bannock's fraud and silent-fraud claim.

## Conclusion

For the foregoing reasons, Dennis Siem and Coldwell Banker Real Estate Group respectfully request that the Court dismiss all claims against them under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

Collins Einhorn Farrell PC

By: */s/ Theresa M. Asoklis*
Theresa M. Asoklis (P42709)
Trent B. Collier (P66448)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
Theresa.Asoklis@ceflawyers.com
Trent.Collier@ceflawyers.com
Dated: October 12, 2021          *Attorney for Defendants Siem and Coldwell Banker*

16

## Certificate of Compliance

This brief includes 4,416 words as defined by L. Civ. P. 7.2(b)(i). This calculation is based on Microsoft Word, Microsoft Office, Standard 2016.

<div style="margin-left: 40%">

Respectfully submitted,

Collins Einhorn Farrell PC

By: */s/ Theresa M. Asoklis*
Theresa M. Asoklis (P42709)
Trent B. Collier (P66448)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
Theresa.Asoklis@ceflawyers.com
Trent.Collier@ceflawyers.com
*Attorney for Defendants Siem and Coldwell Banker*

</div>

Dated: October 12, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2021, a copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties to the above cause to each of the attorneys of record herein.

Respectfully submitted,

Collins Einhorn Farrell PC

By: */s/ Theresa M. Asoklis*
Theresa M. Asoklis (P42709)
Trent B. Collier (P66448)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
Theresa.Asoklis@ceflawyers.com
Trent.Collier@ceflawyers.com
*Attorney for Defendants Siem and Coldwell Banker*

Dated: October 12, 2021

18