UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| 1240 S. BANNOCK, LLC, | ) | |
| | ) | Case No. 2:21-cv-00183-PLM-MV |
| Plaintiff, | ) | |
| | ) | U.S. District Judge: |
| v. | ) | Hon. Paul L. Maloney |
| | ) | |
| DENNIS SIEM, DONALD J. NERAT, | ) | U.S. Magistrate Judge: |
| STEVEN A. NERAT, and COLDWELL | ) | Hon. Maarten Vermaat |
| BANKER REAL ESTATE GROUP, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS DONALD J. NERAT AND STEVEN A. NERAT'S MOTION TO DISMISS

### Oral Argument Requested

Defendants Donald Nerat and Steven Nerat request that this Court dismiss Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted. The purported contract attached to Plaintiff's First Amended Complaint[1] was signed by the Nerat Defendants after the offer expired. See PageID.82, ¶ 27; see PageID.68, ¶ 11. Under Michigan law, accepting an expired offer does not form an agreement. Therefore, it is not a contract, and Plaintiff's breach of contract claim against the Nerats (Count I) fails to state a claim for which relief can be granted. Further, the parties' subsequent "Addendum" is void due to illegality. The newly added fraud/silent fraud allegations fail to state a claim because they entail future conduct, which fails to state a fraud claim under Michigan law. Further, the fraud claims fail to state a claim due to illegality and lack of specificity required by Fed. R. Civ. P. 9(b).

---

[1]     PageID.79-PageID.83

Counsel for the Nerat Defendants sought concurrence from Plaintiff's counsel in the relief sought on October 15, 2021 per L Civ R 7.1(d). As of yet, Plaintiff's counsel has not concurred. Therefore, the Nerat Defendants bring this Motion.

Respectfully submitted,

**Numinen, DeForge & Toutant, P.C.**

s/ Phillip B. Toutant

_____

PHILLIP B. TOUTANT (P72992)
Attorneys for Defendants Nerat
105 Meeske Ave.
Marquette, MI 49855
(906) 226-2580
phillip@numinenlaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| 1240 S. BANNOCK, LLC, | ) | |
| | ) | Case No. 2:21-cv-00183-PLM-MV |
| Plaintiff, | ) | |
| | ) | U.S. District Judge: |
| v. | ) | Hon. Paul L. Maloney |
| | ) | |
| DENNIS SIEM, DONALD J. NERAT, | ) | U.S. Magistrate Judge: |
| STEVEN A. NERAT, COLDWELL | ) | Hon. Maarten Vermaat |
| BANKER REAL ESTATE GROUP, and | ) | |
| BAY TITLE & ABSTRACT, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS DONALD J. NERAT AND STEVEN A. NERAT'S BRIEF IN SUPPORT OF MOTION TO DISMISS

### Oral Argument Requested

I.   **INTRODUCTION**

Plaintiff 1240 S. Bannock, LLC ("**Bannock**") claims that Defendants Steven and Donald Nerat agreed to sell them real estate containing a strip mall in Menominee, Michigan. Plaintiff's Complaint, ECF 1, PageID.2, ¶ 12. Bannock claims that the agreement was breached when the property was sold to a third party. *Id.* PageID.4, ¶ 21. Additional claims have been made against Co-Defendants. Initially, the only claim against the Nerats is breach of contract (Count I). See *id.* at ¶¶ 24-27. Now, however, Bannock has filed its First Amended Complaint (the "**FAC**") and raises an additional claim—that of fraud and silent fraud against the Nerats. ECF 16, PageID.73-PageID.75, ¶¶ 58-70.

Plaintiff's breach of contract claim fails because there was not a contract at all. Bannock's offer, titled Buy and Sell Agreement (the "**Offer**"), stated that it "WILL EXPIRE ON January

21 ... " Exhibit A to Plaintiff's Complaint, ECF 1, PageID.12, ¶ 27 (emphasis supplied in original). However, the Nerats signed the offer on January 26, *after* it had already expired. *Id.* at PageID.13. Because the Offer had expired when signed, the Nerat Defendants accepted nothing. For this reason, Plaintiff fails to state a claim for which relief can be granted as to the Offer. Simply put, it was not a binding contract.

Subsequently, Bannock and the Nerats executed an Amendment to Offer to Purchase (the "**Amendment**") around April 12, 2021. Exhibit B to Plaintiff's Complaint, ECF 1, PageID.15-PageID.16. In part, the Amendment attempted to push back the closing date set forth in the Offer. *Id.* It also imposed an additional condition: "[Bannock] and [the Nerats] agree that the sale is contingent on Yuma Way MI LLC receiving a license from the City of Menominee to operate a retail marihuana establishment at the property." *Id.* at lines 6-7.

Plaintiff fails to state a claim for which relief can be granted as to the Amendment. This is for two reasons. First, by entering into an addendum claiming to amend an agreement amounting to nothing (*i.e.*, the Offer), the parties amended just that: nothing. There was nothing to amend. Second, the Amendment explicitly conditioned all performance on a third party receiving a license to sell cannabis. Selling cannabis is in direct violation of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (the "**CSA**"). The Amendment was illegal under federal law. It appears that the issue of contractual illegality under the CSA for a marijuana business issue permitted under state law with an Article III federal court sitting in diversity has received little, if any treatment by Michigan's federal courts.[2] However, it has been addressed in other federal courts and a similar

---

[2]     Caselaw within Michigan federal courts that consider the interplay of marijuana issues under state law and federal law generally bar the use of federal protections because Marijuana is illegal under the CSA. See *Barnett v. Commissioner of Social Sec.*, unreported opinion of the U.S. District Court for the Western District of Michigan, Case No. 1:13-cv-376, 2014 WL 4987722 (W.D. Mich. 2014) (Affirming denial of Social Security benefits

analysis should be applied here, resulting in dismissal. For these two reasons, Bannock fails to state a claim for which relief can be granted in this Court as to the Amendment. Plaintiff's claims against the Nerat Defendants should be dismissed.

For similar reasons, the fraud and silent fraud allegations against the Nerat Defendants fail to state a claim for which relief can be granted. First, the fraud claims fail for lack of damages—there was never an actual agreement, merely an acceptance of an expired offer. Second, Plaintiff fails to state a claim for which relief can be granted because the transaction was illegal. Finally, the fraud claims fail to meet the specificity requirements of Fed. R. Civ. P. 9(b).

II.     **FACTS AND PROCEDURAL HISTORY**

Bannock alleges that it made an offer to purchase a piece of real estate owned by the Nerat Defendants. FAC, PageID.68, ¶ 11. The Offer was conveyed by way of a "Buy and Sell Agreement," which Plaintiff attached to the FAC. PageID.79-PageID.83. The purchase price in the offer was $415,000. FAC, PageID.68, ¶ 11. On its terms, the Offer states "**THIS OFFER WILL EXPIRE ON January 21 . . . or upon Seller's receipt of revocation from Buyer, whichever is earlier.**" Buy and Sell Agreement, Exhibit A to the FAC, PageID.82, ¶ 27 (emphasis supplied in original). The Nerat Defendants signed the Offer on January 26, 2021, five days after it had expired. FAC, PageID.68, ¶ 13; Offer, PageID.83, ¶ 31. The Offer stated that closing was to be on or before April 28, 2021. Offer, PageID.80, ¶ 10.

---

on the basis of drug and alcohol abuse where illicit and later medical marijuana was used by claimant. *Id.* at *5-*6.); *In re Basrah Custom Design, Inc.*, 602 B.R. 31 (Bankr. E.D. Mich. 2019) (Bankruptcy court refused to assist in discharge of debtor's lease to marijuana dispensary to allow lease to another marijuana dispensary as such leases violated the CSA, dismissing bankruptcy case. *Id.* at 38.).

On April 8, 2021, Bannock presented and signed the Amendment, titled "WB-40 AMENDMENT TO OFFER TO PURCHASE." FAC, PageID.70, ¶ 26; Amendment, PageID.93. The Amendment moved the closing date to July 1, 2021 or "five (5) business days following Yuma Way LLC receiving a license to operate a marihuana retail establishment at the above-mentioned property." Amendment, PageID.93. The Amendment also stated that "Buyer and Seller agree that the sale is contingent upon Yuma Way LLC receiving a license from the City of Menominee to operate a retail marihuana establishment at the property." *Id.* Without providing further information, Bannock claims that it began spending money in anticipation of closing on the purchase. FAC, PageID.69, ¶ 20. However, the amounts spent are not identified. The property was subsequently sold to a third party. *Id.*, PageID.71, ¶ 38.

Plaintiff claims that it was unaware of a contract with a third party. FAC, PageID.72, ¶ 42. This, however, is plainly contradicted by Offer, which stated that "Seller has a right to terminate this agreement within 7 days of acceptance of the contract in case Wild West Tobacco will exercise their right of first refusal." Offer, PageID.82, ¶ 26. Taking Plaintiff's allegations as true for the purposes of this Motion, at the least this should have informed Plaintiff that there was involvement of a third party and that there was some sort of contractual obligation. Nevertheless, Plaintiff now claims that it was unaware that it was in backup position with regard to the sale of the real estate. FAC, PageID.72 ¶¶ 40-41.

The property was subsequently sold to a third party. *Id.*, PageID.71, ¶ 38. Bannock claims to have first learned of the sale in June of 2021. *Id.*, PageID.71, ¶ 38. After learning of the sale, Bannock filed suit.  Bannock first filed suit against Dennis Siem, Coldwell Banker, Bay Title & Abstract, Donald Nerat and Stephen Nerat. The following counts were alleged:

4

- **Count I:** breach of contract against the Nerat Defendants;

- **Count II:** tortious interference with contract against Coldwell Banker and Siem;

- **Count III:** breach of implied-in-fact contract against Bay Title & Abstract; and

- **Count IV:** tortious interference with business relationships against Siem, Coldwell Banker, and Bay Title & Abstract. Complaint, ECF 1, PageID.4-PageID.6, ¶¶ 28-42.

Siem and Coldwell Banker filed a 12(b)(6) motion, seeking to dismiss the claims against them. After reviewing Siem/Coldwell Banker's motion, the Court gave Plaintiff leave to amend its complaint or the option of opposing the motion. ECF 13, PageID.62.

Plaintiff elected to amend its Complaint, filing the FAC on September 28, 2021. ECF 16, PageID.67-PageID.97. In the FAC, Bay Title has been dropped altogether, and has been dismissed from the case. See ECF 15, PageID.65. Tortious interference claims have also been abandoned. However, Plaintiff has added allegations of "fraud and silent fraud" as to all Defendants.

## III.    <u>STANDARD OF REVIEW</u>

To survive a 12(b)(6) motion, a plaintiff has to plead "enough facts to state a claim to relief that is plausible on its face." *Bassett v. Nat. Collegiate Athletics Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008). In considering a 12(b)(6) motion, a court should "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Id.* at 430. However, the court should not accept as true legal conclusions, bare assertions, or conclusory allegations. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-

679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). As to attachments or exhibits to a complaint, the Court may "[c]onsider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.

## IV.   CHOICE OF LAW

This case comes before the Court under its diversity jurisdiction. See 28 U.S.C. § 1332; see also FAC, ECF 16, PageID.68 ¶ 10. In a diversity case, a federal trial court should apply the substantive law of the state in which the court sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *International Insurance Co. v. Stonewall Insurance Co.*, 86 F.3d 601, 604-605 (6th Cir. 1996). At this point, there does not seem to be much dispute that Michigan substantive law is controlling in this case. Given that the place of contracting, place of performance, and the situs of the real estate that is the subject of this litigation is in Michigan, Michigan substantive law should be applied.

However, federal law nevertheless governs this court as to some elements of this dispute. As to issues concerning marijuana, the CSA preempts, is controlling and should be applied by the Court. See analysis, *infra*.

## V.    ARGUMENT

### A.    *Because the Nerat Defendants Executed the Offer After it Expired, the Parties Did Not Form a Contract. Therefore, There Was No Contract to Breach.*

The Buy and Sell Agreement was not in fact an agreement. It states "**THIS OFFER WILL EXPIRE ON January 21 . . . or upon Seller's receipt of revocation from Buyer, whichever is earlier.**" Buy and Sell Agreement, Exhibit A to the FAC, PageID.82, ¶ 27 (emphasis supplied in original). The paragraph concerning the Sellers' acceptance is left blank. *Id.*, PageID.83, ¶ 29. The Nerats signed, acknowledging receipt of the document on January 26, 2021. *Id.*, ¶ 31; FAC, PageID.68, ¶ 13. Assuming that the "acknowledgement of receipt" paragraph constitutes an acceptance as alleged by Plaintiff, it was nevertheless executed after the offer had expired. Therefore, the Nerats accepted nothing. No agreement was formed.

It is well-settled law that a late acceptance of an offer does not form an enforceable contract. "Before a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Pakideh v. Franklin Commercial Mortgage Group, Inc.*, 213 Mich. App. 636, 640 (Mich. Ct. App. 1995). "An offer comes to an end at the expiration of the time given for its acceptance." *Id.* at 640-641. An offeree cannot accept, either through words or deeds, an offer that has lapsed." *Id.* at 641. "[A]n offeror cannot waive the lapse of his offer simply by choosing to disregard it." *Id.* For that matter, implicit behavior of the parties cannot form a contract when an offer has lapsed. *Id.*

For example, in *Raptis v. Bank of America, N.A.*, unpublished opinion per curiam of the Michigan Court of Appeals, Case No. 310089, 2013 WL 3032295 (Mich. Ct. App. Issued June 18, 2013), the Michigan Court of Appeals held that an offer of a mortgage modification did not create

a binding contract when it was signed after the expiration of the offer, even when post-signing actions of the parties suggested the formation of an agreement. In *Raptis*, Plaintiff George Raptis owned a home subject to a mortgage serviced by Bank of America. In 2009, Mr. Raptis started experiencing financial hardships. Bank of America sent him an offer for a "Trial Plan Agreement," which would have allowed him to pay a smaller amount on his mortgage.

Under the terms of the proposed agreement, Raptis had to sign the agreement before a notary and return it to Bank of America by November 19, 2010. He signed, but not before a notary and he did not attempt to accept the offer until December 7, 2010. On December 13, 2010, Mr. Raptis sent the bank a check in the adjusted amount set forth in the offer. The bank accepted the payment. Subsequently, the bank foreclosed. Mr. Raptis filed suit alleging a number of theories, including breach of contract. The trial court granted summary disposition to Defendant. Plaintiff appealed. The Michigan Court of Appeals made clear that there was no agreement formed because Mr. Raptis failed to timely sign the offer and failed to sign it before a notary. The court observed that even though the December 13, 2010 was for the adjusted amount under the bank's modification offer, the acceptance of his check by the bank did not imply acceptance of the offer and form a contract.

Similar to the loan modification agreement in *Raptis*, Bannock's offer was not signed by the Nerats until ***after*** the offer had expired on January 21. Bannock's payment of an earnest money deposit and the signing of the Amendment of the Offer to Purchase (PageID.93 & PageID.95) does not convert an expired offer into a binding contract. Because the Nerats signed after Bannock's offer had expired, Bannock fails to state a claim for which relief can be granted and the breach of contract count should be dismissed.

**B.**      *The Amendment to Offer to Purchase is Illegal. Therefore, Bannock Fails to State an Actionable Claim in Attempting to Enforce the Amendment.*

**i.**      *The Amendment is Illegal and Should be Dismissed.*

To the extent that the Amendment to Offer to Purchase (the "**Amendment**") creates a creates a contract, it is illegal and unenforceable by this Court. The Amendment states "Buyer and Seller agree that the sale is contingent upon Yuma Way MI LLC receiving a license from the City of Menominee to operate a retail marihuana establishment at the property." (PageID.93 & PageID.95).

Under the CSA cannabis is a Schedule I controlled substance. 21 U.S.C. § 812. The CSA makes it illegal to "manufacture, distribute, or dispense" a controlled substance. 21 U.S.C. §§ 841(a)(1), 844(a) (penalties). Under the CSA, it a crime to manufacture, distribute, and possess marijuana for any reason, including for purposes permitted by state law. *Gonzalez v. Raich* 545 U.S. 1, 14 & 29, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). "If there is any conflict between federal and state law with regard to marijuana legislation, federal law shall prevail pursuant to the supremacy clause." *U.S. v. Walsh*, 654 Fed. Appx. 689, 695 (6th Cir. 2016) (quoting *Gonzalez*, *supra* at 29; internal quotations omitted).

"The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract." *McMullen v. Hoffman*, 174 U.S. 639, 654, 19 S.Ct. 839, 43 L.Ed. 1117 (1899). A federal district court cannot enforce a contract if doing so would require a party to do something that would violate federal statutes. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982); see also *Anderson v. International Union, United Plant Guard Workers of America*, 370 F.3d 542, 554

9

(6th Cir. 2004) ("Federal courts may not enforce a contract if the result would be to compel a violation of the law." *Id.*).

Under Michigan law, courts may not enforce illegal contracts. "All contracts which are founded on an act prohibited by a statute under a penalty are void although not expressly declared to be so and neither law nor equity will enforce a contract made in violation of such a statute or one that is in violation of public policy." *Krause v. Boraks*, 341 Mich. 149, 155 (Mich. 1954) (quoting *Jaenicke v. Davidson*, 290 Mich. 298, 304 (Mich. 1939) (internal quotations omitted)).

Even where marijuana, medical or otherwise, is legal at the state level, federal courts sitting in diversity have declined to allow a plaintiff's breach of contract claims on illegality grounds. *Tracy v. USAA Cas. Ins. Co.*, 11-00487 LEK-KSK, 2012 WL 928186 at *13 (D. Haw. Mar. 16, 2012) (Summary judgment granted to defendant insurance company in breach of contract action where alleged breach was for denying plaintiff's insurance claims for loss of medical marijuana plants because of federal illegality.); *Hemphill v. Liberty Mutual Ins. Co.*, 10-861 LH/RHS, 2013 WL 12123984 at *2 (D. N.M. Mar. 28, 2013) ("This federal court, even sitting in diversity, cannot force Defendant to recompense Plaintiff for medical expenses that are contrary to federal law and federal policy, even if the contract generally provides for the payment of future medical expenses. Such payment violates federal law, as clearly expressed by Congress, and New Mexico state law prevents the enforcement of an illegal contract." *Id.*); *J. Lilly, LLC v. Clearspan Fabric Structures International, Inc.*, Case No. 3:18-cv-01104-HZ, 2020 WL 1855190 at *12 (D. Or. April 13, 2020) (Breach of contract claim alleging failure to build a greenhouse to be used to grow marijuana dismissed. "[A]warding Plaintiff damages for lost profits would require the Court to

compel Defendants to violate the Controlled Substances Act." *Id.*); *Sensoria LLC v. Kaweske*, Case No. 20-cv-00942-MEH, 2021 WL 103020 at *6 (D. Colo. January 12, 2021) (Derivative action/subscription agreement dispute where corporation created investment vehicle for cannabis businesses dismissed on 12(b)(6) grounds because investments concerned marijuana businesses in violation of the CSA.); *Bart Street III v. ACC Enterprises, LLC*, unpublished opinion of the U.S. District Court for the District of Nevada, Case No. 2:17-cv-00083-GMN-VCF, 2020 WL 1638329 (D. Nev. April 1, 2020) (Court sitting in diversity granted summary judgment in favor of defendant borrower where plaintiff lender sued to recover $4.7 million loan where cannabis-related right of first refusal was not severable from contract under Nevada law. *Id.* at *8.); *Polk v. Gontmakher*, unpublished opinion of the U.S. District Court for the Western District of Washington, Case No. 2:18-cv-01434-RAJ, 2020 WL 2562536 (W.D. Wash. May 21, 2020) (12(b)(6) motion granted where plaintiff sued for violation of partnership agreement where partnership was cultivating cannabis. *Id.* at *2-*3.); *Ricatto v. M3 Innovations Unlimited, Inc.*, unpublished opinion of the United States District Court for the Southern District of New York, Case No. 18 Civ. 8404, 2019 WL 6681558 (S.D.N.Y. December 6, 2019) (Noting in dicta in a footnote, that if the contract at issue in the dispute were to be solely for development of a marijuana grow, it could not enforce the contract, but nevertheless dismissing pursuant to 12(b)(6) on different grounds. *Id.* at *7, n. 4.).

Here, Plaintiff made it explicit that the closing of the transaction was contingent upon the granting of a retail cannabis license by the city of Menominee to a third party. By making the transaction contingent upon the grant of a marijuana license, Plaintiff fails to state a claim for which relief can be granted. In *Sensoria*, the underlying transaction was related to marijuana sales

in violation of the CSA. *Id.* at *1-*3. Similarly, here, the entire transaction was explicitly conditioned on the granting of a marijuana license to a third party. In *Sensoria*, the aggrieved investors were seeking return on investment from a marijuana business, but the investors' claimed losses allegedly also involved monies spent on legal services, corporate law matters, non-marijuana products, and other independent acts not proscribed by the CSA. *Id.* Taking the plaintiff's allegations in *Sensoria* as true, the monies lost and at issue were frittered away by the defendants for personal gain, not marijuana at all. *Id.* Nevertheless, the lawsuit was still dismissed on 12(b)(6) grounds. The outcome should be the same here.

Applying Michigan law on severability of illegal contract provisions does not save Plaintiff's case. Michigan courts will sever illegal portions of a contract where portions may still be legally enforced. *E.g.*, *Eastern Distributing Corp. v. Lightstone*, 257 Mich. 184, 185-186 (Mich. 1932) (Publisher suing for breach of contract for payments from reseller barred only from collecting profits from illegal and "immoral" magazines sold under the contract, not other "legitimate" magazines. *Id.* at 186.). However, where the illegal portion of an agreement is central to the parties' agreement, the contract is unenforceable. *Stokes v. Millen Roofing Co.*, 466 Mich. 660, 666 (Mich. 2002). Here, per the Addendum, the ***entire sale transaction*** was contingent upon the granting of a marijuana license to a third-party entity. Addendum, PageID.93 & PageID.95. As the granting of a cannabis license was central—a condition precedent—to the parties' agreement, it cannot be severed. Thus, the case should be dismissed.

### ii.   *The Court Should Not Follow Non-Binding Case Law Where the CSA is Disregarded.*

The Court should not follow cases where a plaintiff in a diversity case has defeated a dispositive motion based on an illegality argument. Though not controlling to this Court, *Mann v. Gullickson*, unpublished opinion of the United States District Court for the Northern District of California, Case No. 15-cv-03630-MEJ, 2016 WL 6473215 (N.D. Cal. November 2, 2016) has been cited by federal courts sitting in diversity and vetting state law disputes implicating the CSA. In *Mann*, the dispute amounted to a "simple breach of contract claim." *Id.* at *1. Plaintiff Dharminder Mann sold Defendant Sara Gullickson two businesses pursuant to a stock purchase agreement. One of the businesses was "a consulting business for state-regulated marijuana dispensary or cultivation licenses" and the other was a hydroponic retail sales franchise. *Id.* at *1. Plaintiff sued in state court when Defendant failed to make payments as agreed under the stock purchase agreement. *Id.* at *1-*2. Defendant Gullickson removed the case to federal district court on diversity grounds and filed counterclaims with her responsive pleadings. *Id.* at *2.

Subsequently, Ms. Gullickson moved for summary judgment, arguing that the stock purchase agreements were illegal due to the businesses' involvement with medical marijuana. *Id.* The court denied the motion. In its opinion, the *Mann* court reasoned that "it could grant relief in this case that does not require Gullickson to violate the CSA." *Id.* at *7. Specifically, it found that it could rule in favor of Mann, requiring the payment for the sale of the businesses, because doing so would not "require Gullickson to possess, cultivate, or distribute marijuana, or to in any other way require her to violate the CSA." *Id.* This is not the case here.

*Mann* and its progeny are distinguishable and should not be followed by this Court. Here, the Addendum explicitly conditioned the closing of the disputed transaction on the granting of a

13

license to sell marijuana. PageID.93. The transaction was conditioned upon the granting of a license to violate the CSA. See *id.* For this reason alone, Plaintiff's Complaint should be dismissed. Further, in *Mann*, Defendant Gullickson chose to remove the case from state court (which likely would have disregarded a CSA-based illegality defense), and then argued for dismissal in the federal court. Here, Plaintiff ***chose*** to file suit in federal court, despite the CSA's prohibition on manufacturing, distributing, or dispensing marijuana. Finally, *Mann* should not be followed by the Court as it runs contrary to the CSA and *Gonzalez*, *supra*. Because the Addendum was illegal, Plaintiff fails to state a claim for which relief can be granted and the case should be dismissed.

Public policy arguments about fairness of results in contract illegality caselaw should not be applied here. Some courts have overlooked the issue of contractual illegality on fairness grounds. For example, in *Kush, Inc. v. Van Vranken*, unpublished opinion for the United States District Court for the District of Nevada, Case No. 2:20-cv-649JCM(DJA), 2020 WL 8371452 (D. Nev. June 19, 2020), the court observed that "courts have recognized the need to enforce 'illegal' contracts in order to avoid unjustly enriching a defendant or disproportionately penalizing a plaintiff." *Id.* at *5. These types of public policy concerns are not present in this case.

There is no risk that the Nerat Defendants would be unjustly enriched—they sold the same property to another buyer at the same price. See Offer, PageID.79, ¶ 2; see Deniro Saco Buy and Sell Agreement, PageID.87, ¶ 2. Note that this is the case when there is at the least some question of whether Plaintiff's offer to purchase was a back up offer or secondary offer. See FAC,

PageID.72, ¶¶ 40-41.[3] Similarly, dismissal does not create a disproportionately harsh penalty against Plaintiff. The Offer was not timely accepted and had expired—it was not a contract. Illegality is not a bar to Plaintiff's claims in state court. Dismissal of Plaintiff's claims here is not disproportionately harsh—it is indicated.

## C.     *Plaintiff's Fraud/Silent Fraud Arguments Fail to State a Claim for Which Relief Can be Granted.*

Plaintiff's newly added claims also fail to state a claim for which relief can be granted. This is for three reasons: first, because failure to follow through on a future promise is not actionable for fraud. Second, these claims fail on illegality grounds as they arise out of the same contemplated transaction that violates the CSA. Third, because Plaintiff has failed to meet the specificity requirements of Fed. R. Civ. P. 9(b).

### i.     *The Fraud Claims Fail to State a Claim Since a Future Promise is Not Actionable.*

Here, the problem is that a plaintiff cannot state a claim for which relief can be granted for fraud when a promise of future compliance is at issue. *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (Mich. 1976). "Failure to carry out a promise to do a future act does not constitute actionable fraud; instead, the remedy, if any, lies in a suit for breach of contract." *Michigan National Bank v. Holland-Dozier-Holland Sound Studios*, 73 Mich. App. 12, 18 (Mich. Ct. App. 1976); see also *Adell Broadcasting Corp. v. Cablevision Industries*, 854 F.Supp. 1280, 1293 (E.D. Mich. 1994). The future promise at issue here—to sell a commercial building— do not sound in fraud.

---

[3]     Because this Motion is brought under Fed. R. Civ. P. 12(b)(6), Defendants take Plaintiff's allegations as true and will not delve into defenses outside of the applicable standard. If the case were to proceed, Defendants anticipate showing that Plaintiff did in fact know that it was in a backup position with regard to the purchase of the property.

Plaintiff's fraud claims allege that the Nerat Defendants made material misrepresentations "that they intended to sell the Property to Plaintiff pursuant to the Purchase Agreement." FAC, PageID.74, ¶ 65. The FAC's fraud allegations against the Nerat Defendants are grounded in a promise to do a future act. Because Plaintiff's fraud allegations claim the Nerat Defendants made misrepresentations as to a promise of future compliance, these claims fail. Caselaw notes that such a claim, "if any," may exist in breach of contract. *Hi-Way Motor Co.*, *supra*. However, for the reasons discussed above, there is no valid breach of contract claim either. This count should be dismissed for failure to state a claim for which relief can be granted.

### ii.     *The Fraud Claims Fail to State a Claim Since Plaintiff Seeks to Enforce Illegal Activity.*

Plaintiff's fraud claims run afoul of the CSA for the same reasons argued above. This Court should not enforce an illegal contract. If the Court decides that Plaintiff fails to state a claim concerning the Addendum because of illegality grounds, the fraud/silent fraud claims should fall as well. Plaintiff claims that the Nerat Defendants defrauded Plaintiff by misrepresenting that they would sell the strip mall to Plaintiff under the terms of the Addendum, but omitting that Defendants were under contract to sell to another buyer. See FAC, PageID.74, ¶ 63. If the sale had moved forward under the Addendum, the transaction would have been illegal and in violation of the CSA. Thus, Plaintiff's claim of damages under the fraud/silent fraud claims fail on illegality grounds.

### iii.     *The Fraud Allegations Fail to Meet the Pleading Requirements of Fed. R. Civ. P. 9(b).*

Fed. R. Civ. P. 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." The rule "requires plaintiffs at a minimum 'to allege the time, place and contents of the misrepresentation(s) upon which he relied.''" *American Town Center v. Hall 83 Associates*, 912 F.2d 104, 109 (6th Cir. 1990) (quoting *Bender v. Southland Corp.*, 649 F.2d 1205, 1216 (6th Cir. 1984)). When pleading fraud, a Plaintiff is required "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012). Here, Plaintiff has failed to specify its damages, making only a perfunctory claim that it "incur[red] expenses" pursuing the sale. FAC, PageID.69, ¶ 20. Plaintiff also fails to specify who made the allegedly fraudulent statements, when and where they were made, or what made them fraudulent. Plaintiff claims that the Amendment contains the misrepresentation that the Nerats "intended to sell the Property to Plaintiff pursuant to the Purchase Agreement." FAC, PageID.74, ¶ 65. However, the Addendum includes no such statement. Addendum, PageID.93. In fact, the Addendum contains a perpetual contingency on selling the property: that "the closing date shall be defined as the later of July 1, 2021 or five (5) business days following Yuma Way MI LLC receiving a license to operate a marihuana retail establishment at the above-mentioned property." *Id.* Aside from likely violating the rule against perpetuities, the plain language of the Addendum shows that Plaintiff has not alleged the sufficiently alleged misrepresentations to satisfy Fed. R. Civ. P. 9(b). Plaintiff's cursory allegations of fraud fail to meet the specificity requirements of Rule 9(b).

## VI.    <u>CONCLUSION</u>

As to all counts raised against the Nerat Defendants, Plaintiff's complaint fails to state a claim for which relief can be granted. As such, the FAC should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Defendants recognize that leave to amend complaints is freely given where justice requires, but leave to amend a complaint should not be awarded when doing so would be futile. *U.S. ex rel. Harper v. Muskingum Watershed Conservancy District*, 842 F.3d 430, 440 (6th Cir. 2016). "'A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.'" *Id.* (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). Such is the case here. The FAC should be dismissed.

Respectfully submitted,

**Numinen, DeForge & Toutant, P.C.**

s/ Phillip B. Toutant

_____
PHILLIP B. TOUTANT (P72992)
Attorneys for Defendants Nerat
105 Meeske Ave.
Marquette, MI 49855
(906) 226-2580
phillip@numinenlaw.com

## <u>CERTIFICATE OF COMPLIANCE CONCERNING WORD COUNT</u>

Pursuant to W.D. Mich. L. Civ. R. 7.2(b)(ii), I hereby certify that Defendants' Donald J. Nerat and Stephen A. Nerat's Brief in Support of Motion to Dismiss contains 5,147 words as defined by W.D. Mich. L. Civ. R. 7.2(b)(i) and is therefore compliant with said rule. The word count was generated by word processing software, specifically Microsoft Word for Microsoft 365.

s/ Phillip B. Toutant

_____

PHILLIP B. TOUTANT (P72992)