IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| 1240 S. BANNOCK, LLC,<br>Colorado limited liability corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>DENNIS SIEM, DONALD J. NERAT,<br>STEVEN A. NERAT, COLDWELL<br>BANKER REAL ESTATE GROUP, and<br>BAY TITLE & ABSTRACT,<br><br>                    Defendants. | Case No. 2:21-cv-00183<br><br>U.S. District Judge:<br>Hon. Paul L. Maloney<br><br>U.S. Magistrate Judge:<br>Hon. Maarten Vermaat |

**PLAINTIFF'S RESPONSE TO DEFENDANTS DENNIS SIEM AND COLDWELL
BANKER REAL ESTATE GROUP'S MOTION TO DISMISS 1240 S. BANNOCK, LLC'S
FIRST AMENDED COMPLAINT**

**Table of Contents**

**Page**

Introduction....................................................................................................................1

Factual Background .........................................................................................................2

      A.      Plaintiff and the Defendant Nerats Execute a Buy-Sell Agreement
for Plaintiff to purchase real property from Defendant Nerats. .............................2

      B.      One month later, in March of 2021, the Defendant Nerats execute a
Purchase Agreement with a third party..................................................................3

      C.      In April 2021, the Defendant Nerats Execute an Amendment to its
Purchase Agreement with Plaintiff. ........................................................................3

      D.      The Defendant Nerats Close on the Deniro Purchase Agreement. ..........................4

Standard of Review and Choice of Laws.........................................................................5

Analysis...........................................................................................................................5

I.      Plaintiff Bannock's claims are not barred by the Release Found within the
Purchase Agreement. .............................................................................................5

      A.      The Release does not Bar Claims that arise after the Purchase
Agreement was executed and the Release is Ambiguous. .......................................5

      B.      In the alternative, if Plaintiff Bannock never entered into a contract
with the Defendant Nerats as asserted by the Nerats in their Motion
to Dismiss (ECF No. 21), then the release is invalid. .............................................9

II.     Plaintiff Bannock has pled a Cognizable Claim for Fraud with
Particularity.........................................................................................................10

Conclusion ....................................................................................................................13

## Index of Authorities

**Page(s)**

**Cases**

*Adair v. State of Michigan*,
   250 Mich. App. 691, 651 N.W.2d 393 (2002), aff'd in part, rev'd on other
   grounds in part sub nom. *Adair v.* State, 470 Mich. 105, 680 N.W.2d 386
   (2004)...................................................................................................................... 6

*Alan Custom Homes, Inc. v. Krol*,
   256 Mich. App. 505, 667 N.W.2d 379 (2003)......................................................... 7

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009)..................................................................... 5

*Brooks v. Holmes*,
   162 Mich App 143, 413 NW2d 688 (1987).............................................................. 8

*Coffey v. Foamex L.P.*,
   2 F.3d 157 (6th Cir.1993) ...................................................................................... 11

*Directv, Inc. v. Treesh*,
   487 F.3d 471 (6th Cir. 2007) ................................................................................... 5

*Hines v. G. Reynolds Sims & Assocs., P.C.*,
   No. CIV.A. 12-12478, 2013 WL 1774938 (E.D. Mich. Apr. 25, 2013)............................ 6, 7, 9

*Irwin Seating Co. v. Int'l Bus. Machines Corp.*,
   No. 1:04-CV-568, 2007 WL 2351007 (W.D. Mich. Aug. 15, 2007), aff'd, 306
   F. App'x 239 (6th Cir. 2009).................................................................................... 7

*M & D, Inc. v. McConkey*,
   226 Mich. App. 801, 573 N.W.2d 281 (1997), opinion vacated (Nov. 26, 1997),
   opinion reinstated in part sub nom. *M&D, Inc. v. W.B. McConkey*, 231 Mich.
   App. 22, 585 N.W.2d 33 (1998) ......................................................................... 10, 12

*Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist.*,
   452 Mich. 309, 550 N.W.2d 228 (Mich.1996) ........................................................ 6

*Shay v Aldrich*,
   487 Mich 648, 790 NW2d 629 (2010).................................................................. 9, 10

*State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*,
   107 F. Supp. 3d 772 (E.D. Mich. 2015)................................................................. 11

*Wyrembelski v. City of St. Clair Shores*,
   218 Mich. App. 125, 553 N.W.2d 651 (Mich.Ct.App.1996).................................... 6

*Zahn v. Kroger Co.,*
   483 Mich. 34, 764 N.W.2d 207 (Mich.2009) .............................................................. 6

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................. 11

Fed. R. Civ. P. 9(b) ................................................................................................. 10, 11

**Introduction**

This case arises from a failed real estate sale transaction.  The transaction failed because Defendants Steven and Donald Nerat ("Defendant Nerats") executed a real estate sale agreement with a third party *after* they had already agreed to sell the same real property to Plaintiff 1240 S. Bannock, LLC (" Plaintiff Bannock").  At all relevant times, Defendant Dennis Siem, an employee of Coldwell Banker, acted as Defendant Nerats' agent and broker.  Defendant Siem knew Defendant Nerats had executed sale agreements with different parties and that the Defendant Nerats intended to proceed with the sale to the third party, not with Plaintiff Bannock.  Yet, when Defendant Siem returned an executed amendment to the Purchase Agreement between Plaintiff Bannock and Defendant Nerats to Plaintiff Bannock, Defendant Siem *did not* disclose that the transaction would not be moving forward.  Instead, by providing the executed amendment to Plaintiff Bannock and failing to disclose that the transaction would not proceed, Defendants Siem and Coldwell Banker took part in a fraudulent scheme to string Plaintiff Bannock along and prevent it from taking action to protect its rights until the sale to the third party had closed.

Now, Defendants Siem and Coldwell Banker ask the Court to allow an ambiguous release, which was signed prior to Defendants' fraudulent conduct, to bar Plaintiff Bannock's fraud claim against them.  Furthermore, they ask the Court to dismiss Plaintiff Bannock's fraud claim on technical grounds, even though the Amended Complaint has pled the allegations with sufficient specificity to allow Defendant Nerats to answer Plaintiff's claim of fraud.  Plaintiff Bannock respectfully request the Court **DENY** Defendant Nerats' Motion to Dismiss.  Instead, the Court should permit Plaintiff Bannock to proceed to discovery and have the opportunity to test its claims on the merits.

**Factual Background**

A.      **Plaintiff and the Defendant Nerats Execute a Buy-Sell Agreement for Plaintiff to purchase real property from Defendant Nerats.**

Plaintiff Bannock entered into the Purchase Agreement with Donald and Steven Nerat to purchase real property commonly described as 2003 to 2013 10th Street, Menominee, MI ("the Property") for $415,000 in cash. [ECF No. 16, PageI.D.68, ¶11; ECF No. 16-1]. Defendants Siem and Coldwell Banker acted as the brokering/seller's agent in the sale, and Defendant Siem was at all relevant times an employee of Coldwell Banker [¶¶12, 44].

The Purchase Agreement provided the Defendant Nerats with the right to terminate the Agreement within 7 days of their January 26, 2021 acceptance in case a third party tenant, Wild West Tobacco, exercised its right of first refusal. ECF No. 16-1, ¶26.  The Purchase Agreement included a release provision, which stated in full:

> Buyer and Seller acknowledge that neither Listing Broker nor Selling Broker, nor their respective agents, have made any representation concerning the condition of the property covered by this Agreement or the marketability of title, and Buyer and Seller release the Listing Broker and Seller Broker and their respective agents, with respect to all claims arising out of or related to this Agreement, any addendums or counteroffers; all claims arising from any purported representations as to the physical and environmental condition of the property covered by this Agreement or marketability of title; and all claims arising from any special assessments and/or utility bills which have been or may in the future be charged against the property covered by this Agreement and, in addition, agree to indemnify and hold harmless the Listing Broker and Selling Broker and their respective agents from any and all claims related to those matters.

[*Id.* at ¶ 13].  The Purchase Agreement required Plaintiff to deposit $5,000 of earnest funds with a Title Company whose identity would later be determined. [*Id.* at ¶ 17].  The Defendant Nerats instructed the title agency to proceed with closing with Plaintiff Bannock. [ECF No. at ¶ 14].  On February 1, 2021, Plaintiff received wire transfer instructions from Bay Title to complete the

2

earnest money deposit. [*Id.* at ¶ 17].  As of February 2, 2021, the Defendant Nerats did not terminate the Purchase Agreement. [*Id.* at ¶ 18].  On February 2, 2021, Plaintiff Bannock wire transferred $5,000 of earnest funds into Bay Title's trust account for the benefit of the Nerat Defendants. [*Id.* at ¶ 19].  Plaintiff began to inspect the Property pursuant to the 120-day inspection period provided by the Purchase Agreement and incur expenses related to its anticipated ownership in the Property. [*Id.* at ¶ 20].

**B.      One month later, in March of 2021, the Defendant Nerats execute a Purchase Agreement with a third party.**

On or about March 3, 2021, the Defendant Nerats executed a buy-sell agreement with Deniro Saco to sell the Property to Deniro Saco (the "Deniro Purchase Agreement"). [*Id.* at ¶ 21].  Wild West Tobacco is not identified as the purchaser on the Deniro Purchase Agreement nor does the agreement indicate that the Deniro Purchase Agreement arises from the exercise of a right of first refusal. [*Id.* at ¶ 22].

**C.      In April 2021, the Defendant Nerats Execute an Amendment to its Purchase Agreement with Plaintiff.**

On April 8, 2021, Plaintiff Bannock submitted an offer to amend the Purchase Agreement. ("the Amendment"). [*Id.* at ¶ 26; ECF No. 16-4].  Defendants Siem and Coldwell Banker presented the Amendment to the Nerat Defendants for their signatures on April 12, 2021. Defendants Siem and Coldwell Banker then returned the signed Amendment to Plaintiff Bannock. [ECF No. 16, Page I.D. 70, ¶ 27].  The Defendant Nerats executed the Amendment on or about April 12, 2021. [*Id.* at ¶ 28; ECF No. 16-5].   The Amendment re-affirmed the Parties' Purchase Agreement, moved the closing date from April 28, 2021 to July 1, 2021, and modified the Purchase Agreement in ways not pertinent to the pending motion. [*Id.* at ¶ 29].  The Defendant Nerats began to perform under the Agreement. [*Id.* at Page I.D. 70-71, ¶¶ 30-33].  The Defendant Nerats never disclosed the Deniro Purchase Agreement to Plaintiff Bannock.  Defendants Siem and Coldwell

3

Banker knew the Defendant Nerats had executed the Deniro Purchase Agreement. [*Id.* at ¶ 35].

Yet, Defendants Siem and Coldwell Banker did not (and never have) disclosed the Deniro

Purchase Agreement to Plaintiff Bannock. [*Id.* at ¶ 36].

By providing the executed Amendment to Plaintiff Bannock without disclosing the

Deniro Purchase Agreement to Plaintiff, Defendants Siem and Coldwell Banker made incomplete

and misleading representations that created a false impression in Plaintiff that the sale of the

Property to Plaintiff was still moving forward. [*Id.* at Page I.D. 76, ¶ 78].  Defendants Siem and

Coldwell Banker intended for Plaintiff Bannock to have this false impression. [*Id.* at ¶ 80].

Defendants Siem and Coldwell Banker knew that their conduct was deceitful and they intended

for Plaintiff Bannock to rely upon their deceitful conduct. [*Id.* at ¶ 81].  Plaintiff reasonably relied

upon Defendant Siem and Coldwell Banker's deceit because Plaintiff had no reason to believe that

the Defendant Nerats had executed a contract with a third party to sell the Property to a third party

instead of Plaintiff. [*Id.* at ¶ 82].  Plaintiff Bannock relied on the Defendants' deceit by proceeding

toward closing, not searching for other properties, and by not seeking the immediate return of its

earnest money deposit. [See, e.g., *Id.* at Page I.D.s 71, 74, 76, ¶¶ 37, 68, 77].

As a result of Plaintiff's reasonable reliance, Plaintiff Bannock has suffered

injuries which include, but are not limited to: incurring expenses related to its plans for the

Property, not having the opportunity to begin looking for other properties, losing the opportunity

to bring an action in court to request specific performance under the Purchase Agreement prior to

the Property's sale to a third party, among other injuries and damages. [*Id.* at ¶¶ 70, 83].

### D.     The Defendant Nerats Close on the Deniro Purchase Agreement.

On June 28, 2021, Plaintiff called Bay Title to follow up on the expected closing

date for the sale of the Property to Plaintiff. [*Id.* at Page I.D. 71, ¶ 37].  On that call, a representative

of Bay Title informed Plaintiff that the Property had already been sold to a third party. [*Id.* at ¶

38]. Based upon information and belief, the Defendant Nerats and Defendant Siem attended the closing of the Deniro Purchase Agreement. [*Id.* at Page I.D. 72, ¶ 39]. Based upon information and belief, the Defendant Nerats and Defendant Siem misrepresented to Bay Title that Plaintiff's Purchase Agreement was a mere "second offer." [*Id.* at ¶ 40].

Neither the Defendant Nerats nor Defendants Siem or Coldwell Banker had ever informed Plaintiff that the Purchase Agreement was a mere "second offer." [*Id.* at ¶ 41]. Prior to June 28, 2021, Plaintiff was not aware that a third party had executed any contract with the Defendant Nerats to purchase the Property. [*Id.* at ¶ 42].

## Standard of Review and Choice of Laws

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face*." Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Furthermore, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Plaintiff concurs with Defendants Siem and Coldwell Banker's analysis of the choice of laws as stated at ECF No. 20, PageI.D.116 of their Motion to Dismiss.

## Analysis

I. **Plaintiff Bannock's claims are not barred by the Release Found within the Purchase Agreement.**

    A. **The Release does not Bar Claims that arise after the Purchase Agreement was executed and the Release is Ambiguous.**

5

Under Michigan law, the scope of a release — like any contract — is governed by the intent of the parties. *Wyrembelski v. City of St. Clair Shores*, 218 Mich. App. 125, 553 N.W.2d 651, 652 (Mich.Ct.App.1996).   When interpreting the release, courts "may not make a new contract for parties under the guise of a construction of the contract, if doing so will ignore the plain meaning of words chosen by the parties ...." *Zahn v. Kroger Co.*, 483 Mich. 34, 764 N.W.2d 207, 211 (Mich.2009).   A release of liability is valid, if it is fairly and knowingly made. *Wyrembelsk*i, 553 N.W. at 652.

Generally, a release will "ordinarily release all present, but not future, claims." 29 Williston on Contracts § 73:10 (4th ed.).  Michigan courts have enforced this tenet of hornbook law, refusing to interpret releases to cover future claims arising from future conduct where the release does not explicitly reference such scope. *Hines v. G. Reynolds Sims & Assocs., P.C.*, No. CIV.A. 12-12478, 2013 WL 1774938, at *3 (E.D. Mich. Apr. 25, 2013)(collecting cases).  Where the scope of the release is ambiguous, the finder of fact must discern the intent of the parties. *Id.* A release is ambiguous only if its language is reasonably susceptible to more than one interpretation. *Adair v. State of Michigan*, 250 Mich. App. 691, 707, 651 N.W.2d 393, 402 (2002), aff'd in part, rev'd on other grounds in part sub nom. *Adair v.* State, 470 Mich. 105, 680 N.W.2d 386 (2004).  The initial question whether a release is ambiguous is a question of law.  *Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist.,* 452 Mich. 309, 550 N.W.2d 228, 237 (Mich.1996).

Here, the release states:

> Buyer and Seller acknowledge that neither Listing Broker nor Selling Broker, nor their respective agents, have made any representation concerning the condition of the property covered by this Agreement or the marketability of title, and Buyer and Seller release the Listing Broker and Seller Broker and their respective agents, with respect to all claims arising out of or related to this Agreement, any addendums or counteroffers; all claims arising from any purported representations as to the physical and environmental condition of the property covered by this Agreement or

6

marketability of title; and all claims arising from any special
assessments and/or utility bills which have been or may in the future
be charged against the property covered by this Agreement and, in
addition, agree to indemnify and hold harmless the Listing Broker
and Selling Broker and their respective agents from any and all
claims related to those matters.

Notably, the release does not state that Plaintiff Bannock is releasing claims based

on any future conduct by Defendants Coldwell Banker and Siem.  Additionally, it is ambiguous

whether Defendants Siem and Coldwell Banker's fraudulent conduct regarding Defendant Nerats'

failure to disclose information about its client's intent to not proceed with the transaction and the

existence of a third party agreement to sell the party "arises out of or is related to" the Agreement

or an addendum[1].  The Eastern District of Michigan's decision in *Hines v G. Reynolds Sims &*

*Associates* is instructive.  In *Hines*, the parties had entered into a release which stated, in pertinent

part,

Defendant [Hines] hereby forever releases the Plaintiff [A & A],
their assigns, legal counsel, agents and successors from any and all
further claims of whatever nature and all liability, known or
unknown, foreseen and unforeseen, that could or may arise from this
action or facts.

The *Hines* Court concluded that the release did not expressly release "future

liability arising from conduct that had not yet occurred. It further held that the language "*this action*

*or facts*" and "*any and all further claims*" was ambiguous. The release language in the *Hines* case

was far broader than the language here and yet it was not sufficient to include claims based on

---

[1] Furthermore, Defendants Siem and Coldwell Banker assume that an "addendum" is the same as an "amendment",
but that is far from clear. See, e.g., *Irwin Seating Co. v. Int'l Bus. Machines Corp.*, No. 1:04-CV-568, 2007 WL
2351007, at *15 (W.D. Mich. Aug. 15, 2007), aff'd, 306 F. App'x 239 (6th Cir. 2009)(referring to "agreements,
addenda, *and amendments*…") (emphasis added); see also, *Alan Custom Homes, Inc. v. Krol*, 256 Mich. App. 505,
515, 667 N.W.2d 379, 385 (2003)(quoting a contractual provision that referred to "any written amendments *or*
*addenda*…")(emphasis added); see also, Mashvisor blog post entitled "Addendum v Amendment: What every Real
Estate Agent Should Know, https://www.mashvisor.com/blog/addendum-vs-amendment-guide/, indicating that
within the real estate industry the terms addendum and amendment, while similar, are not synonymous but have
distinct meanings and uses. Therefore, on this basis alone, the Court should decline to apply the relief to bar Plaintiff's
claims at this stage because it is unclear whether the parties intended for the release to apply to amendments.

future conduct.  Likewise, here, the phrase "arises from or relates to the agreement, addendum…"

is ambiguous just like the phrases "this action or facts" and "any and all further claims."  It is

unclear whether the phrase "all claims arising from or related to the Agreement, addendums…" is

limited to claims arising from performance or provisions in the Agreement or whether it also

includes a claim for fraud that arises from Defendant Nerats' failure to disclose information about

its client's intent to not proceed with the transaction.

        Defendants Siem and Coldwell Banker assert that the Court of Appeals upheld a

similar release in the case *Brooks v. Holmes*, 162 Mich App 143, 413 NW2d 688 (1987).[2]  Not so.

There, the relevant portion of the release states that the realtor and broker company were released

"with respect to all claims ***arising out of the performance*** of such Buy and Sell Agreement and

Addendums and Counter Offers thereto." (emphasis added).  This language is specific and

delineates that it applies only to claims arising out of the performance of the agreement (i.e., the

carrying out of terms by the contracting parties).  In contrast, the language at bar does not reference

performance.  Instead, it makes vague reference to claims arising from or related to "this

Agreement, and, any addendums…" without providing any linguistic context or guidance for what

that means.  In short, the release at bar is quite different from the release in Brooks and, far from

helping Defendant Nerats' position.  It actually *helps Plaintiff Bannock's position* because it

demonstrates the ambiguous and vague nature of the clause at bar as opposed to an unambiguous

release provision enforced by a Michigan court.

        In sum, the release at bar does not include language sufficient to release claims

arising from conduct which post-dates the release.  At most, the key language relied upon by

---

[2] Defendant Nerats also rely heavily upon the Michigan Court of Appeals' decision in *Dresden v. Detroit Macomb Hosp. Corp.,* 553 N.W.2d 387 (Mich .Ct. App. 1996).  But that case is inapposite because it dealt with conduct and claims that pre-dated the release language. In contrast, Defendants' fraudulent conduct post-dates the release.

Defendants — "any and all claims arising from or relating to the Agreement, addendum" — is

ambiguous.  Therefore, consistent with the Eastern District of Michigan's decision in *Hines*, the

Court should deny Defendants' Motion to Dismiss.

> **B.    In the alternative, if Plaintiff Bannock never entered into a contract with the Defendant Nerats as asserted by the Nerats in their Motion to Dismiss (ECF No. 21), then the release is invalid.**

The Defendant Nerats have filed their own Motion to Dismiss. [ECF No. 21].  In

that brief, the Defendant Nerats assert that it never contracted to sell the Property to Bannock. [*Id.*

at PageI.D.130].  If this were true — which it is not — it would mean the release provision would

be invalid and could not act to release Defendants Siem or Coldwell Banker.

Defendants Siem and Coldwell Banker were not parties to the Purchase Agreement.

[ECF No. 16-1].  To be released by the Purchase Agreement, Defendants Siem and Coldwell

Banker would have to be third-party beneficiary of the release provision. *See, e.g.*, *Shay v Aldrich*,

487 Mich 648, 674, 790 NW2d 629, 645 (2010) (stating that various officers were plainly third

party beneficiaries to a release provision with an agreement between other parties).  "The third-

party-beneficiary statute expressly provides that the rights of the third-party beneficiary are

'subject always to such express or implied conditions, limitations, ***or infirmities*** of the contract to

which the rights of the promisee or the promise are subject.'" *Id.* at 666, 790 N.W.2d at 640 (2010)

(quoting the third party beneficiary statute)(emphasis added).  In short, the existence of a valid

contract is a *condition precedent* to being a third party beneficiary of a contract, and the release

provision would be subject to all the infirmities of that contract.

Here, Defendants Siem and Coldwell Banker claim to be third party beneficiaries

of the release provision at paragraph 13 of the Purchase Agreement between the Defendant Nerats

and Plaintiff Bannock.  But the Defendant Nerats allege that there is no contract between them and

Plaintiff Bannock.  If this claim were accurate — and it is not — then the release provision has no

force or effect.  As a result, it cannot serve as a basis for dismissal of Plaintiff Bannock's claims

against Defendants Siem and Coldwell Banker. *Shay*, 487 Mich at 666.   Therefore, in the event

that Court agrees with the Defendant Nerats and holds that the they and Plaintiff Bannock never

entered into the Purchase Agreement, the Court should reject Defendants Siem and Coldwell

Banker's Motion to Dismiss.

**II.     Plaintiff Bannock has pled a Cognizable Claim for Fraud with Particularity.**

Defendants Siem and Coldwell Banker assert that Plaintiff Bannock, has failed to

allege each element of a fraud claim, that as the Defendant Nerats' real estate agents they had no

duty under the common law to refrain from misleading Plaintiff Bannock.  They further assert that

Plaintiff Bannock has failed to plead its fraud claims with particularity under Fed. R. Civ. P. 9(b).

Defendants' position is without merit.

Although real estate agents and brokers do not have a general duty to disclose

defects in a property, they "remain liable for common law fraud or misrepresentation based upon

false material misrepresentations (necessarily including incomplete or misleading statements

creating a false impression) that are made with fraudulent intent." *M & D, Inc. v. McConkey*, 226

Mich. App. 801, 573 N.W.2d 281, 289–90 (1997), opinion vacated (Nov. 26, 1997), opinion

reinstated in part sub nom. *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 585 N.W.2d 33

(1998).

To allege a cognizable claim for fraud under Michigan law, a plaintiff must allege

that: (1) the defendant made a material representation; (2) the representation was false; (3) when

the defendant made the representation, the defendant knew that it was false, or made it recklessly,

without knowledge of its truth as a positive assertion; (4) the defendant made the representation

with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and

(6) the plaintiff suffered damage.  *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. at 27, 585

N.W.2d at 36.  The gist of an action for silent fraud is "fraudulently producing a false impression upon the mind of the other party." *Id.* at 30-31; 585 N.W.2d at 38-39.  Therefore, a party can be liable for fraud even if no statement is uttered because "a representation ***can be action or conduct*** and can be actionable as silent fraud if that action or conduct is intended to create a misimpression to the opposing party." *Id.* at 33-34; 585 N.W.2d at 40 (emphasis added).

When faced with a motion to dismiss for failure to plead fraud 'with particularity' as required by Rule 9(b) a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8.  *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 788 (E.D. Mich. 2015).  Fraud is pled with particularity where the plaintiff identifies the time, place, and content of the alleged misrepresentation on which the plaintiff relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.  *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993).  In short, "the threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff's claim of fraud." *Id.* (quotation marks omitted).

Here, Plaintiff Bannock has alleged that Defendants Siem and Coldwell Banker, as the listing agent and broker, were aware of the Purchase Agreement, assisted in its execution and understood the Defendant Nerats and Plaintiff Bannock to be in a binding contract.  Additionally, Defendants Siem and Coldwell Banker knew that Plaintiff Bannock had performed under the Purchase Agreement by tendering the earnest money deposit and that it had not been returned to Plaintiff Bannock. [ECF No. 16, PagI.D. 75, ¶¶72-74, 77].  Defendants Siem and Coldwell Banker also knew that in March of 2021 the Defendant Nerats executed a purchase agreement with Deniro

Saco and that the Defendant Nerats would not proceed with selling the property to Plaintiff Bannock. [*Id.* at ¶¶75-76].

With this scienter background, Defendants Siem and Coldwell Banker nonetheless tendered the Amendment to Plaintiff Bannock on behalf of the Defendant Nerats.  In doing so, Defendants Siem and Coldwell Banker intended to lead Plaintiff Bannock into believing the transaction was moving forward even though Defendants knew this was not true. [*Id.* at Page I.D. 75-76, ¶¶ 74-81].  This conduct constitutes a material misrepresentation that was intended to create a misimpression in Plaintiff Bannock that it would be purchasing the property under the Purchase Agreement. *M&D, Inc.*, 231 Mich App at 33-34; 585 N.W.2d at 40 (conduct can constitute a misrepresentation).  Defendants Siem and Coldwell Banker have a general duty under the common law to not make material misrepresentations and thus had a duty to disclose material facts to prevent their conduct from producing a false impression in Plaintiff Bannock.  By making these misrepresentations, they breached that duty. *Id.*

Plaintiff Bannock reasonably relied upon this misrepresentations by not demanding the Defendant Nerats authorize the return of its earnest money deposit, which Defendants Siem and Coldwell Banker knew was being held by the title agency, and by proceeding to move toward closing. [ECF No. 16, Page I.D. 74-75,  ¶ 68 (incorporated by reference at ¶ 71), ¶ 77].  As a result of this reliance, Plaintiff Bannock suffered damages by incurring expenses related to its plans for the Property and not pursuing other properties, among other damages. [ECF No. 16, Page I.D. 75-76 ¶¶ 70, 83].  Based upon the above, Plaintiff Bannock has sufficiently identified Defendants' misrepresentation, Defendants' scienter, the context of those representations, and other elements of fraud permitting "the defendants to answer, addressing in an informed way plaintiff's claim of fraud" in *Coffey*.  Therefore, the Court should deny Defendants' Motion to Dismiss.

**Conclusion**

In sum, Defendant Nerats engaged in fraudulent conduct designed to drag Plaintiff Bannock along and prevent it from taking steps to protect its interests.  Defendants knew that Defendant Nerats would not sell the Property to Plaintiff Bannock and intentionally mislead Plaintiff to believe otherwise.  Further, Defendant Nerats are on notice of Plaintiff Bannock's fraud claim such that Defendants Siem and Coldwell Banker can respond to the same in an informed way.  Therefore, Plaintiff Bannock has alleged a cognizable claim for fraud with particularity and the Court should not dismiss Plaintiff Bannock's fraud claim against Defendants Siem and Coldwell Banker.

Further, the Court should not hold that Plaintiff Bannock's claims against Defendants Siem and Coldwell Banker are barred by release.  Indeed, the release is ambiguous as to whether an "addendum" is synonymous with the term "amendment" and because it is unclear whether the phrase "all claims arising from or related to the Agreement, addendums…" is limited to claims arising from performance or provisions in the Agreement.  Alternatively, in the event that the Defendant Nerats are correct (which they are not) that they and Plaintiff Bannock never entered into the Purchase Agreement, then the release would have no force and effect.

We respectfully request the Court dismiss Defendants Siem and Coldwell Banker's Motion to Dismiss is its entirety and permit Plaintiff Bannock to test its claims on the merits.

MILLER JOHNSON
Attorneys for Plaintiff

Dated: November 9, 2021                          By:  _/s/*Shoran R. Williams*_____
                                                              Shoran R. Williams (P83262)
                                                              Joslin E. Monahan (P77362)
                                                              45 Ottawa Avenue SW, Suite 1100
                                                              Grand Rapids, MI  49503
                                                              616.831.1700

13

MJ_DMS 33680939v2 50016-1