IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| 1240 S. BANNOCK, LLC,<br>Colorado limited liability corporation,<br><br>   Plaintiff,<br><br>v.<br><br>DENNIS SIEM, DONALD J. NERAT,<br>STEVEN A. NERAT, COLDWELL<br>BANKER REAL ESTATE GROUP<br><br>   Defendants. | Case No. 2:21-cv-00183<br><br>U.S. District Judge:<br>Hon. Paul L. Maloney<br><br>U.S. Magistrate Judge:<br>Hon. Maarten Vermaat |

**PLAINTIFF'S RESPONSE TO DEFENDANTS DONALD J. NERAT'S AND
STEVEN A. NERAT'S MOTION TO DISMISS**

# Table of Contents

**Page**

Introduction..................................................................................................................................1

Factual Background .....................................................................................................................2

    A.    Plaintiff and the Defendant Nerats Execute a Buy-Sell Agreement for Plaintiff to purchase real property from Defendant Nerats. ..............................2

    B.    One month later, in March of 2021, the Defendant Nerats execute a Purchase Agreement with a third party.....................................................................3

    C.    In April 2021, the Defendant Nerats Execute an Amendment to its Purchase Agreement with Plaintiff. ....................................................................3

    D.    The Defendant Nerats Close on the Deniro Purchase Agreement. .........................3

Standard of Review and Choice of Laws......................................................................................5

Analysis.........................................................................................................................................5

I.    The Purchase Agreement is a Valid Contract between Plaintiff and Defendant Nerats. ...................................................................................................................5

    A.    The lapse deadline for Plaintiff's offer was ambiguous and indeterminate: therefore, Defendants only needed to accept it within a reasonable time, which they did on January 26, 2021. .........................................6

    B.    Even if the Court could conclude that the offer lapsed on January 21, 2021, the Purchase Agreement is still valid because the Defendant Nerats signed the Purchase Agreement and executed the Amendment.......................................................................................................................7

II.    The Amendment is not void for Illegality because, on its face, the Amendment does not require the Parties to violate the Controlled Substance Act and because this Court can grant all relief sought by Plaintiff without requiring the parties to violate the Controlled Substance Act. ...........................................8

III.    Plaintiff has Pled a Cognizable Claim for Fraud with Particularity because Plaintiff has Identified the Misrepresentations, the Circumstances Surrounding the Misrepresentation, Defendants' Intent to Commit Fraud, and Plaintiff's Reliance thereon........................................................................................13

Conclusion ................................................................................................................................14

## Index of Authorities

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) .................................................................................... 5

*Bailey v. Schaaf*,
  293 Mich. App. 611, 810 N.W.2d 641 (2011), aff'd in part, remanded on other
  grounds, 494 Mich. 595, 835 N.W.2d 413 (2013) ............................................................. 5, 7

*Bart Street III v ACC Enterprises, LLC*,
  2020 WL 1638329 (D. Nev. April 1, 2020) .......................................................................... 10

*Burton v. Ladd*,
  211 Mich. 382, 178 N.W. 774 (1920) ..................................................................................... 6

*Challenge Mach. Co. v. Mattison Mach. Works*,
  138 Mich. App. 15, 359 N.W.2d 232 (1984) .......................................................................... 6

*Coffey v. Foamex L.P.*,
  2 F.3d 157 (6th Cir.1993) ................................................................................................ 13, 14

*Cullinane v. Est. of Vene*,
  No. 305030, 2012 WL 2362441 (Mich. Ct. App. June 21, 2012) ........................................... 7

*Dervin Corp. v. Banco Bilbao Vizcaya Argentaria, S.A.*,
  No. 03 CIV. 9141(PKL), 2004 WL 1933621 (S.D.N.Y. Aug. 30, 2004) ......................... 11, 12

*Directv, Inc. v. Treesh*,
  487 F.3d 471 (6th Cir. 2007) ................................................................................................... 5

*Energy Labs, Inc. v. Edwards Eng'g, Inc.*,
  No. 14 C 7444, 2015 WL 3504974 (N.D. Ill. June 2, 2015) ............................................ 11, 12

*Ginsburg v. ICC Holdings, LLC*,
  No. 3:16-CV-2311-D, 2017 WL 5467688, (N.D. Tex. Nov. 13, 2017) ...................... 8, 11, 12

*Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*,
  163 F. Supp. 3d 821 (D. Colo. 2016) ................................................................................. 9, 11

*Hemphill v Liberty Mutual Ins Co.*,
  2013 WL 12123984 (D. N.M. Mar. 28, 2013) ........................................................................ 9

*J. Lilly, LLC v Clearspan Fabric Structures Int'l, Inc.*,
  2020 WL 1855190 (D. Or. April 13, 2020) ............................................................................ 9

*Kraus v. Gerrish Twp.*,
   205 Mich. App. 25, 517 N.W.2d 756 (1994), aff'd in part, remanded in part on other grounds sub nom. *Kraus v. Dep't of Com.*, 451 Mich. 420, 547 N.W.2d 870 (1996) ............................................................................................................ 6

*M&D, Inc. v. W.B. McConkey*,
   231 Mich. App. 22, 585 N.W.2d 33 (1998) .......................................................... 13, 14

*Mann v. Gullickson*,
   No. 15-cv-03630, 2016 WL 6473215 (N.D. Cal. Nov. 2, 2016) ........................ 11, 12

*Polk v Gontmakher*,
   2020 WL 2562536 (W.D. Wash. May 21, 2020) ....................................................... 10

*Ricatto v M3 Innovations Unlimited, Inc.*,
   2019 WL 6681558 (S.D.N.Y. December 6, 2019) .................................................... 10

*Samuel D. Begola Servs., Inc. v. Wild Bros.*,
   210 Mich. App. 636, 534 N.W.2d 217 (1995) ..................................................... 13, 14

*Sensoria, LLC v Kaweske*,
   Case No. 20-cv-00942-MEH, 2021 WL 103020 (D. Colo. January 12, 2021) .................. 11, 12

*Tracy v USAA Cas Ins Co*,
   2012 WL 928186 (D. Haw. Mar. 16, 2012) ................................................................ 9

**Statutes**

21 USC § 841(a)(1) ................................................................................................. 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 8, 11

Fed. R. Civ. P. 9(b) ................................................................................................ 15

**Introduction**

This case arises from a failed real estate sale transaction. And the transaction failed because Defendants Donald J. Nerat and Steven A. Nerat (Defendant Nerats or Defendants) had no intention of actually selling the real property at issue to Plaintiff 1240 S. Bannock, LLC (Plaintiff Bannock or Plaintiff) even though they had executed both a purchase agreement and an amendment to that purchase agreement. But instead of disclosing their intentions to Plaintiff, Defendants actively misled Plaintiff by executing the amendment—which reaffirmed the purchase agreement and the pending sale of real property to Plaintiff—into believing that the transaction would proceed to close. All the while, Plaintiff was preparing to close, refrained from searching for other investment opportunities, and was looking forward to obtaining the rental income that would arise from the purchase. But it would never be: Defendants sold the property to a third party, and left Plaintiff to discover the sale only after it called the title agency to confirm a closing date for the sale to Plaintiff.

Now, in their Motion to Dismiss, Defendant Nerats rely on technical rules to entirely disavow that they ever had a binding contract with Plaintiff. They claim that the Amendment they used as part of their fraud is invalid merely because it granted Plaintiff contingency to not proceed with the transaction if a potential tenant could not obtain a marijuana license from the State of Michigan. Defendants also claim that Plaintiff has failed to allege a cognizable claim for fraud with particularity.

Defendants' positions are without merit. The parties entered into a valid, binding, and enforceable contract under Michigan law. The amendment executed does not violate federal law. The Court can grant all of the relief sought by Plaintiff in this suit without requiring Plaintiff or Defendant Nerats to violate federal law. Finally, Plaintiff has pled a cognizable claim for fraud

1

with particularity: Plaintiff has identified the misrepresentation, the circumstances surrounding it, Plaintiff's reliance on those misrepresentations and some examples of the damages that arose from Defendants fraud. Therefore, the Court should **DENY** Defendants' Motion to Dismiss and permit this case to proceed so Plaintiff can test its claims on their merits.

## Factual Background

### A. Plaintiff and the Defendant Nerats Execute a Buy-Sell Agreement for Plaintiff to purchase real property from Defendant Nerats.

Plaintiff Bannock entered into the Purchase Agreement with Donald and Steven Nerat to purchase real property commonly described as 2003 to 2013 10th Street, Menominee, MI ("the Property") for $415,000 in cash. [ECF No. 16, PageI.D.68, ¶11; ECF No. 16-1]. Defendants Siem and Coldwell Banker acted as the brokering/seller's agent in the sale, and Defendant Siem was at all relevant times an employee of Coldwell Banker [ECF No. 16, Page I.D.s 68, 72, ¶¶12, 44].

The Purchase Agreement provided the Defendant Nerats with the right to terminate the Agreement within 7 days of their January 26, 2021 acceptance in case a third party tenant, Wild West Tobacco, exercised its right of first refusal. [ECF No. 16-1, ¶26]. The Purchase Agreement required Plaintiff to deposit $5,000 of earnest funds with a Title Company whose identity would later be determined. [*Id.* at ¶ 17]. The Defendant Nerats instructed the title agency to proceed with closing with Plaintiff Bannock. [ECF No. 16 Page I.D. 69, ¶ 14]. On February 1, 2021, Plaintiff received wire transfer instructions from Bay Title to complete the earnest money deposit. [*Id.* at ¶ 17]. As of February 2, 2021, the Defendant Nerats did not terminate the Purchase Agreement. [*Id.* at ¶ 18]. On February 2, 2021, Plaintiff Bannock wire transferred $5,000 of earnest funds into Bay Title's trust account for the benefit of the Defendant Nerats. [*Id.* at ¶ 19]. Plaintiff began to inspect the Property pursuant to the 120-day inspection period provided by the

Purchase Agreement and incur expenses related to its anticipated ownership in the Property. [*Id.* at ¶ 20].

> B. **One month later, in March of 2021, the Defendant Nerats execute a Purchase Agreement with a third party.**

On or about March 3, 2021, the Defendant Nerats executed a buy-sell agreement with Deniro Saco to sell the Property to Deniro Saco (the "Deniro Purchase Agreement"). [*Id.* at ¶ 21]. Wild West Tobacco is not identified as the purchaser on the Deniro Purchase Agreement nor does the agreement indicate that the Deniro Purchase Agreement arises from the exercise of a right of first refusal. [*Id.* at PageI.D. 70, ¶ 22].

> C. **In April 2021, the Defendant Nerats Execute an Amendment to its Purchase Agreement with Plaintiff.**

On April 8, 2021, Plaintiff Bannock submitted an offer to amend the Purchase Agreement. ("the Amendment"). [*Id.* at ¶ 26; ECF No. 16-4]. Defendants Siem and Coldwell Banker presented the Amendment to the Defendant Nerats for their signatures on April 12, 2021. [*Id.* at ¶27]. The Defendant Nerats executed the Amendment on or about April 12, 2021. [*Id.* at ¶ 28; ECF No. 16-5]. Defendants Siem and Coldwell Banker then returned the signed Amendment to Plaintiff Bannock. [ECF No. 16, Page I.D. 76, ¶ 78]. The Amendment re-affirmed the Parties' Purchase Agreement, moved the closing date from April 28, 2021 to July 1, 2021, and modified the Purchase Agreement. [*Id.* Page I.D. 70, ¶ 29]. The Defendant Nerats began to perform under the Agreement. [*Id.* at Page I.D. 70-71, ¶¶ 30-33]. The Defendant Nerats never disclosed the Deniro Purchase Agreement to Plaintiff Bannock. [*Id.* at ¶ 34].

> D. **The Defendant Nerats Close on the Deniro Purchase Agreement.**

On June 28, 2021, Plaintiff called Bay Title to follow up on the expected closing date for the sale of the Property to Plaintiff. [*Id.* at Page I.D. 71, ¶ 37]. On that call, a representative

3

of Bay Title informed Plaintiff that the Property had already been sold to a third party. [*Id.* at ¶ 38]. Based upon information and belief, the Defendant Nerats and Defendant Siem attended the closing of the Deniro Purchase Agreement. [*Id.* at Page I.D. 72, ¶ 39]. Based upon information and belief, the Defendant Nerats and Defendant Siem misrepresented to Bay Title that Plaintiff's Purchase Agreement was a mere "second offer." [*Id.* at ¶ 40].

Neither the Defendant Nerats nor Defendants Siem or Coldwell Banker had ever informed Plaintiff that the Purchase Agreement was a mere "second offer." [*Id.* at ¶ 41]. Prior to June 28, 2021, Plaintiff was not aware that a third party had executed any contract with the Defendant Nerats to purchase the Property. [*Id.* at ¶ 42].

By executing the Amendment and providing it to Plaintiff even though Defendant Nerats had executed the Deniro Agreement, intended to close on the Deniro Agreement, and had no intention of closing on the property with Plaintiff, Defendant Nerats made incomplete and misleading representations that created a false impression in Plaintiff that the sale of the Property to Plaintiff was still moving forward. [*Id.* at Page I.D. 76, ¶ 60-65]. Defendant Nerats intended for Plaintiff Bannock to have this false impression. [*Id.* at ¶ 67]. Defendant Nerats knew that their conduct was deceitful and they intended for Plaintiff Bannock to rely upon their deceitful conduct. [*Id.* at ¶ 67]. Plaintiff reasonably relied upon the Defendants' deceit because they had not disclosed the Deniro Agreement and because Defendant Nerats had just executed an Amendment to the parties' purchase agreement [*Id.* at ¶ 68-69]. Plaintiff relied on the Defendants' deceit and was injured by proceeding toward closing, not searching for other properties, and by not seeking the immediate return of its earnest money deposit. [*See, e.g., Id.* at Page I.D. 74-75, ¶¶ 68-70].

As a result of Plaintiff Bannock's reasonable reliance, Plaintiff Bannock has suffered injuries which include, but are not limited to: incurring expenses related to its plans for

4

the Property, not having the opportunity to begin looking for other properties, losing the opportunity to bring an action in court to request specific performance under the Purchase Agreement prior to the Property's sale to a third party, among other injuries and damages. [*Id.* at ¶¶ 68-70].

## Standard of Review and Choice of Laws

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Furthermore, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Plaintiff concurs with Defendant Nerats' analysis of the choice of laws as stated at ECF No. 21, PageI.D.137 in so far as Michigan law applies to this dispute except that federal law controls as it relates to the Controlled Substance Act.

## Analysis

**I.  The Purchase Agreement is a Valid Contract between Plaintiff and Defendant Nerats.**

To have a contract, there must be an offer, an acceptance of the offer. *Bailey v. Schaaf*, 293 Mich. App. 611, 624, 810 N.W.2d 641, 649 (2011), aff'd in part, remanded on other grounds, 494 Mich. 595, 835 N.W.2d 413 (2013). An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that

bargain is invited and will conclude it." *Id.* (internal quotations and citations omitted). "An acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for the purpose." *Kraus v. Gerrish Twp.*, 205 Mich. App. 25, 45, 517 N.W.2d 756, 765 (1994), aff'd in part, remanded in part on other grounds sub nom. *Kraus v. Dep't of Com.*, 451 Mich. 420, 547 N.W.2d 870 (1996). Where the parties use standardized forms, the forms' characterization of one party's conduct as an "offer" or an "acceptance" is not dispositive and the court instead looks to the totality of the circumstances. *Challenge Mach. Co. v. Mattison Mach. Works*, 138 Mich. App. 15, 21, 359 N.W.2d 232, 235 (1984).

      **A.**    **The lapse deadline for Plaintiff's offer was ambiguous and indeterminate: therefore, Defendants only needed to accept it within a reasonable time, which they did on January 26, 2021.**

Here, the Nerats argue that signing the Purchase Agreement is legally meaningless because Bannock LLC's offer had already lapsed and that execution of the Amendment was likewise legally meaningless because it was an amendment to a contract that did not exist. [ECF No. 21, PageI.D.133]. But it is not obvious that it lapsed at all. Paragraph 27 of the Purchase Agreement states that the offer will expire on "January 21 at 5 [p.m.]." [ECF No. 16-1, Page I.D. 82]. Notably, no year is identified. Therefore, is unclear when, under the Purchase Agreement's terms, the "offer" would lapse. Because lapse date is indeterminate, the offer need only be accepted within a reasonable time. *Burton v. Ladd*, 211 Mich. 382, 387, 178 N.W. 774, 775 (1920) (stating that an offer will lapse after a reasonable time). There is no question that the Defendant Nerats' acceptance of the Purchase Agreement on January 26, 2021 was well within a reasonable time after the offer was made.

6

**B.     Even if the Court could conclude that the offer lapsed on January 21, 2021, the Purchase Agreement is still valid because the Defendant Nerats signed the Purchase Agreement and executed the Amendment.**

Even if the Court could conclude that the offer lapsed on January 21, 2021, the Nerats' position that no contract was formed between the parties still fails.

In *Cullinane v Estate of Vene* the defendant argued that because its counter offer lapsed by its own terms without an acceptance that no contract to sell real property was formed with the plaintiff, and the execution of two addenda thereafter did not change this because "no contract ever existed between plaintiff and [defendant]." *Cullinane v. Est. of Vene*, No. 305030, 2012 WL 2362441, at *6 (Mich. Ct. App. June 21, 2012). The Court of Appeals expressly found that "plaintiff's original offer, together with the two addenda to plaintiff's original offer, which both plaintiff and Holly signed, manifested their mutual assent to all the essential terms of a contract to sell real property."

Applying *Cullinane* here, the parties manifested their mutual assent to all essential terms of a contract for the sale of real property where Plaintiff submitted its written offer and Defendant Nerats signed the purchase agreement. Further, the parties later executed the Amendment to the Purchase Agreement which expressly reaffirmed their contractual obligations. [ECF No. 16-1, 16-4]. Therefore, "a binding contract for the sale of real property arose between plaintiff and [Defendant Nerats]." *Cullinane*, 2012 WL 236441, at *7.

Finally, the Michigan Court of Appeals' analysis and holding in *Cullinane* aside, it is also significant that, instead of just walking away, the Defendant Nerats elected to execute and tender the Purchase Agreement form ***after*** January 21, 2021. By doing so, Defendant Nerats manifested a "willingness to enter into a bargain, so made as to justify [Plaintiff] in understanding that [its] assent to that bargain is invited and will conclude it." *Bailey*, 293 Mich. App. at 624, 810

7

N.W.2d at 649. There is no other reason for the Nerats to tender the signed Amendment. Plaintiff manifested its intent to be bound by the Purchase Agreement by performing under the contract: specifically, submitting the earnest money deposit required by paragraph 17 of the Purchase Agreement. [ECF No. 16-1, Page I.D. 81]. Thereafter, the parties continued performance and even executed the Amendment. Under these circumstances, even if the Court were to conclude that Plaintiff's offer had lapsed, Defendant Nerats and Plaintiff still entered into a valid contract consisting of the terms found in the Purchase Agreement.

In sum, under Michigan law, Defendants Nerat and Plaintiff Bannock entered into a binding contract for Defendant Nerats to sell and Plaintiff to buy the Property. For this reason, the Court should deny Defendants' Motion to Dismiss.

II.   **The Amendment is not void for Illegality because, on its face, the Amendment does not require the Parties to violate the Controlled Substance Act and because this Court can grant all relief sought by Plaintiff without requiring the parties to violate the Controlled Substance Act.**

Illegality of contract is an affirmative defense: therefore, the Defendant Nerats cannot prevail under Rule 12(b)(6) unless the contract clearly violates federal law on its face. *Ginsburg v. ICC Holdings, LLC*, No. 3:16-CV-2311-D, 2017 WL 5467688, at *7 (N.D. Tex. Nov. 13, 2017). "To determine whether a contract violates a federal statute on its face, the court compares the four corners of the contract with the language of the statute and related regulations and any interpreting case law." *Id.* "In addition, even if the contract is not illegal on its face, courts have found contracts inherently illegal where one party must violate a statute or regulation to fulfill its obligations." *Id.*

The Defendant Nerats claim that the Amendment is illegal because it violates the Controlled Substance Act. 21 USC § 841(a)(1) ("CSA"). The CSA prohibits a person from "knowingly or intentionally manufacturing, distributing, dispensing, or possessing with an intent

to manufacture, distribute, or dispense, a controlled substance." *Id.* But here the Amendment does not require either the Defendant Nerats or Plaintiff Bannock to manufacture, distribute, dispense or possess any controlled substance. Instead, the Amendment grants Plaintiff no more than an option to terminate the Purchase Agreement if a potential third party tenant does not get a State of Michigan license to sell marijuana. Significantly, though, the Defendant Nerats have not cited any authority for the proposition that the mere acquisition of a state marijuana license is—itself—a violation of the CSA nor have Defendants cited any case where a court has invalidated a real estate purchase agreement on this basis.

Instead, Defendant Nerats rely upon a series of cases that are inapposite or actually support Plaintiff Bannock's position. For example, *Tracy v USAA Cas Ins Co*, 2012 WL 928186 (D. Haw. Mar. 16, 2012) and *Hemphill v Liberty Mutual Ins Co.*, 2013 WL 12123984 (D. N.M. Mar. 28, 2013) are inapposite because the plaintiffs sought an insurance reimbursement for loss of marijuana plants and marijuana. There is no such concern here because Plaintiff is not asking the Defendant Nerats to reimburse it for any expenses or losses relating to marijuana. And, at any rate, the viability of *Tracy* (and decisions like it) decision is in doubt. See, *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 835 (D. Colo. 2016)("for the reasons discussed above, and particularly in light of several additional years evidencing a continued erosion of any clear and consistent federal public policy in this area, this Court declines to follow *Tracy*. Accordingly, the Court declines [the insurance company's] indirect invitation to declare the [insurance] Policy void on public policy grounds.")

Similarly, *J. Lilly, LLC v Clearspan Fabric Structures Int'l, Inc.*, 2020 WL 1855190 (D. Or. April 13, 2020) is inapposite because in that case the plaintiff sought damages for lost profits that would have arisen from the sale of marijuana. But, here, Plaintiff Bannock is

9

not seeking any lost profits relating to the sale of marijuana. The Defendant Nerats also cite *Bart Street III v ACC Enterprises, LLC*, 2020 WL 1638329 (D. Nev. April 1, 2020) and *Polk v Gontmakher*, 2020 WL 2562536 (W.D. Wash. May 21, 2020) but in those cases the plaintiff either had right to become an owner of the marijuana business through a right of first refusal or the contract at issue was a partnership agreement where the partnership was cultivating marijuana. Here, the Purchase Agreement and Amendment do not relate to the ownership (or potential ownership) of any marijuana-related entity either by Plaintiff or Defendant Nerats.

At most, the Amendment could support the proposition that Plaintiff had a purpose to indirectly support a third-party marijuana business by leasing real property to it. But Defendant Nerats fail to cite any authority under federal law that supports the proposition that if a potential purchaser intends to lease real property to a potential marijuana business then the contract to purchase real estate is automatically void or unenforceable. Instead, Defendant Nerats rely on "dicta in a footnote" from *Ricatto v M3 Innovations Unlimited, Inc.*, 2019 WL 6681558, fn 4 (S.D.N.Y. December 6, 2019) where the court commented that "…if the plaintiff did in fact seek enforcement of a contract that obligated Defendants to develop land, it is not readily apparent that it could enforce the contract." The Court then declared that "the fact that a contract offends a federal statute or regulation *does not automatically render it void or unenforceable…unless the enforcement of a contract would require directing the precise conduct that a statute or regulation makes unlawful*." *Id.* (emphasis added). This proposition actually *supports* enforcement of the Purchase Agreement and Amendment in the case at bar. Additionally, it is consistent with decisions by several other courts that have declined to grant a motion to dismiss where those courts could grant the relief sought by the plaintiffs without directing the parties to engage in the precise

10

conduct prohibited by law.  *Ginsburg v. ICC Holdings, LLC*, No. 3:16-CV-2311-D, 2017 WL 5467688 (N.D. Tex. Nov. 13, 2017) (denying Motion to Dismiss at 12(b)(6) stage).[1]

Defendant Nerats appear to rely most heavily upon *Sensoria, LLC v Kaweske*, Case No. 20-cv-00942-MEH, 2021 WL 103020 at *6 (D. Colo. January 12, 2021) to support their proposition that the Amendment is "related to marijuana sales…" merely because the Amendment included a contingency permitting Plaintiff Bannock LLC to back out of the deal if a third party could not get a Michigan marijuana license.  But *Sensoria* actually *supports* Plaintiff's position and is consistent with decisions by other federal courts which have denied a motion to dismiss for illegality merely because a contract has a connection to the marijuana industry.

In *Sensoria*, the court noted that "the simple fact that marijuana is involved does not mean that the [p]laintiff's claims must be dismissed automatically."  The court then reasoned that, "case law shows flexibility when relief can be granted in a way that does not implicate the federal marijuana laws.  For example, courts have enforced loans and insurance contracts **that could be paid from money not derived from marijuana sales**." *Id.* (emphasis added) (citing *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co*., 163 F. Supp. 3d 821 (D. Colo. 2016) (enforcing an insurance contract); *Ginsburg v. ICC Holdings, LLC*, No. 16-cv-2311, 2017 WL 5467688 (N.D. Tex. Nov. 13, 2017) (enforcing promissory notes); *Mann v. Gullickson*, No. 15-

---

[1] See also, *Energy Labs, Inc. v. Edwards Eng'g, Inc.*, No. 14 C 7444, 2015 WL 3504974, at *4 (N.D. Ill. June 2, 2015); *Dervin Corp. v. Banco Bilbao Vizcaya Argentaria, S.A*., No. 03 CIV. 9141(PKL), 2004 WL 1933621, at *3 (S.D.N.Y. Aug. 30, 2004) ("The fact that a contract offends a federal statute or regulation does not, however automatically render it void or unenforceable. Unless the enforcement of a contract would require directing the precise conduct that a statute or regulation makes unlawful… "); *Mann v. Gullickson*, 2016 WL 6473215, at *7 (N.D. Cal. Nov. 2, 2016) (holding, in case where defendant failed to make payments under contract for sale of consulting business related to marijuana industry, that the court "could grant relief in this case that does not require [defendant] to violate the CSA. [Plaintiff]'s suit seeks [defendant's] full payment for the businesses he sold to her. Mandating that payment does not require [defendant] to possess, cultivate, or distribute marijuana, or to in any other way require her to violate the CSA.")].

11

cv-03630, 2016 WL 6473215 (N.D. Cal. Nov. 2, 2016)[2] (enforcing payment on a contract for consultative services that indirectly concerned marijuana). Based upon this reasoning the *Sensoria* court ultimately dismissed the breach of contract claim—with the leave to amend—because "Plaintiffs [failed to] explain how relief could be fashioned here that would not endorse or require illegal activity, or would be paid from an asset source independent of marijuana."

The deficiencies that existed in *Sensoria* do not exist here. Here, Plaintiff Bannock is not seeking specific performance of the contract. Instead, Plaintiff asks this Court to award lost rent that it would have received from current non-marijuana-related tenants had the sale transaction closed, the costs it incurred preparing for the sale, lost equity in the property that it would have obtained, among other damages. In short, Defendant Nerats will not violate the CSA if this Court enters a judgment awarding damages to Plaintiff and no damages paid by Defendants will arise from or relate to marijuana sales. Therefore, consistent with the court's reasoning in *Sensoria*, as well as the reasoning in *Ginsburg v. ICC Holdings, LLC*; *Energy Labs, Inc. v. Edwards Eng'g, Inc.*; *Dervin Corp. v. Banco Bilbao Vizcaya Argentaria, S.A.*; and *Mann v. Gullickson*,[3] the Court should dismiss the Defendants' Motion to Dismiss.

---

[2] Ironically, Defendant Nerats ask this Court to decline to follow the *Mann* decision; yet, one of the key cases Defendant Nerats relies upon—*Sensoria*—cites, with approval, the *Mann* decision as well two other decisions that deny motions to dismiss on the doctrine of illegality.

[3] The Court should also reject Defendant Nerats' invitation to disregard the *Mann* decision. In their brief, Defendants assert that *Mann* was wrongly decided by distinguishing its facts. But even if the Court accepted Defendants' criticism of the *Mann* courts application of the law to the facts in that case, that criticism is not apt here because, under the Amendment, Defendants will not be buying a company sells marijuana products; nothing in the Amendment indicates that Plaintiff would be selling marijuana products; and any damages paid by the Defendants will not relate to or arise from the sale of marijuana.

**III.     Plaintiff has Pled a Cognizable Claim for Fraud with Particularity because Plaintiff has Identified the Misrepresentations, the Circumstances Surrounding the Misrepresentation, Defendants' Intent to Commit Fraud, and Plaintiff's Reliance thereon.**

To allege a cognizable claim for fraud under Michigan law, a plaintiff must allege that (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 27, 585 N.W.2d 33, 36 (1998). A claim for fraud can be based upon representations regarding future conduct "where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 210 Mich. App. 636, 639, 534 N.W.2d 217, 219 (1995). .

Fraud is pled with particularity where the plaintiff identifies the time, place, and content of the alleged misrepresentation on which the plaintiff relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993)). In short, "the threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff[']s claim of fraud." *Id.*

Here, Plaintiff Bannock has alleged that Defendant Nerats executed the Amendment and re-affirmed the Purchase Agreement even though Defendants Nerat had executed the Deniro Agreement, and had no intention of closing on the property with Plaintiff, as a part of a ruse to make Plaintiff believe that a contract existed and would proceed toward closing. [ECF No. 16 at Page I.D. 73-74, ¶ 59-66]. This conduct constitutes a material misrepresentation that

13

was intended to create a misimpression[4] in Plaintiff that it would be purchasing the property under the Purchase Agreement. *M&D, Inc.*, 231 Mich App at 33-34; 585 N.W.2d at 40 (conduct can constitute a misrepresentation); and *Samuel D. Begola Servs., Inc. v. Wild Bros*, *supra*.

Plaintiff reasonably relied upon Defendants' deceit by not demanding that Defendant Nerats immediately authorize the return of Plaintiff's earnest money deposit, which Defendant Nerats knew was being held for its benefit by the title agency. [See, e.g., ECF No. 16, Page I.D. 74-75, ¶¶ 68-70]. As a result of this reliance, Plaintiff Bannock suffered damages by incurring expenses related to its plans for the Property and not pursuing other properties, among other damages. [*Id.*].

Based upon the above, Plaintiff has sufficiently identified Defendants' misrepresentation, Defendants' scienter, the context of those representations, and other elements of fraud permitting "the defendants to answer, addressing in an informed way plaintiff[']s claim of fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir.1993) (quotation marks omitted). Therefore, the Court should deny Defendants' motion to dismiss.

## Conclusion

In sum, Plaintiff and Defendant Nerats entered into a valid, binding, and enforceable Purchase Agreement and Amendment to sell the Property to Plaintiff. Defendants Nerat, however, had no intention of selling the Property to Plaintiff. They did actively took steps to mislead and deceive Plaintiff into believing that the sale to Plaintiff would occur. Plaintiff has pled a cognizable claim for fraud under Michigan law with particularity in compliance with Fed.

---

[4] Indeed, Defendants' brief further supports Plaintiff's claims. If Defendants believed they never had a contract with Plaintiff, then why execute the Amendment, which clearly disclosed Plaintiff's understanding that a contract existed? The reasonable explanation would be to string Plaintiff along and make it believe a binding contract existed which would lead the transaction moving forward.

R. Civ. P. 9(b).  Therefore, we respectfully request this Court **DENY** Defendants' Motion to Dismiss and give Plaintiff the opportunity to proof the substantive merits of its claims.

                                         Miller Johnson
                                         Attorney for Plaintiff

Dated: November 12, 2021              By:  */s/Shoran R. Williams*
                                                Shoran R. Williams (P83262)
                                                Joslin E. Monahan (P77362)
                                                MILLER JOHNSON
                                                Attorneys for Plaintiff
                                                45 Ottawa Avenue SW, Suite 1100
                                                Grand Rapids, MI  49503
                                                616.831.1700
                                                williamssr@millerjohnson.com
                                                monahanj@millerjohnson.com