# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

---

1240 S. BANNOCK, LLC, a
limited liability corporation,

    Plaintiff,

—v—

DENNIS SIEM, DONALD J. NERAT,
STEVEN A. NERAT, COLDWELL
BANKER REAL ESTATE GROUP,
and BAY TITLE & ABSTRACT,

    Defendants.

Case No. 21-cv-00183
Hon. Paul L. Maloney

**Oral Argument Requested**

---

Attorneys for Bannock:
Miller Johnson
- Shoran R. Williams (P83262)
- Joslin E. Monahan (P77362)

45 Ottawa Avenue SW, Suite 100
Grand Rapids, Michigan 49503
Phone: (616) 831-1700
E-Mail: williamssr@miller.johnson.com
E-Mail: monahanj@millerjohnson.com

Attorneys for Nerats:
Numinen DeForge & Toutant PC
- Phillip B. Toutant (P72992)

105 Meeske Avenue
Marquette, Michigan 49855
Phone: (906) 226-2580
E-Mail: phillip@numinenlaw.com

Attorneys for Siem and Coldwell Banker:
Collins Einhorn Farrell PC
- Theresa M. Asoklis (P42709)
- Trent B. Collier (P66448)

4000 Town Center, 9th Floor
Southfield, Michigan 48075
Phone: (248) 355-4141
E-Mail: theresa.asoklis@ceflawyers.com
E-Mail: trent.collier@ceflawyers.com

**Reply Brief in Support of Dennis Siem and Coldwell Banker Real Estate Group's Motion to Dismiss**

# Table of Contents

Index of Authorities ................................................................................................................... ii

Counter-Argument ..................................................................................................................... 1

   I.  Bannock's fraud claims are barred by the release .......................................................... 1

      A.  The broad, unambiguous language of the release encompasses future claims .... 1

      B.  The fraud claims relate to the purchase agreement or the amendment/addendum to the purchase agreement ................................................................................... 4

   II.  Bannock's fraud claims are insufficiently pled ............................................................. 7

      A.  Bannock fails to allege an affirmative false statement, which requires dismissal of the claim for fraudulent misrepresentation (fraud) ....................................... 7

      B.  Bannock fails to allege facts establishing a duty of disclosure or specific acts of reliance, which requires dismissal of the claim for fraudulent concealment (silent fraud) ................................................................................................................... 7

Conclusion ................................................................................................................................ 11

Certificate of Service ................................................................................................................. 1

Certificate of Compliance ......................................................................................................... 2

# Index of Authorities

*Cases*

*Adkins v. Times-World Corp.,*
  771 F.2d 829 (4th Cir. 1985) ................................................................................ 6

*Alfieri v. Bertorelli,*
  813 N.W.2d 772 (Mich. Ct. App. 2012) ............................................................... 8

*Amini v. Oberlin Coll.,*
  259 F.3d 493 (6th Cir. 2001) ................................................................................ 9

*Andrie v. Chrystal-Anderson & Assoc. Realtors, Inc.,*
  466 N.W.2d 393 (Mich. Ct. App. 1991) ............................................................... 7

*Benteler Auto. Corp. v. Wellington Indus., Inc.,*
  No. 328329, 2017 WL 1103540 (Mich. Ct. App. March 21, 2017) ...................... 3

*Beshada v. Millard Realty,*
  No. 244635, 2004 WL 60321 (Mich. Ct. App. Jan. 13, 2004) ............................ 10

*Cole v. Ladbroke Racing Mich., Inc.,*
  614 N.W.2d 169 (Mich. Ct. App. 2000) .............................................................. 4

*Fid. Nat'l Title Ins. Co. v. Title First Agency, Inc.,*
  No. 2008 WL 4371838 (E.D. Mich. Feb. 4, 2004) ............................................... 5

*Heritage Resources, Inc. v. Caterpillar Fin. Serv. Corp.,*
  774 N.W.2d 332 (Mich. Ct. App. 2009) .............................................................. 3

*Hines v. G. Renolds Sims & Assoc.,*
  No. 12-12478, 2013 WL 1774938 (E.D. Mich. April 25, 2013) .................. 1, 2, 4

*Hord v. Envt'l Research Inst. of Mich.*,
  617 N.W.2d 543 (Mich. 2000) ............................................................................................... 7, 8

*M&D, Inc. v. W.B. McConkey*,
  585 N.W.2d 33 (Mich. Ct. App. 1998) ................................................................................. 8, 10

*Modern Globe, Inc. v. 1425 Lake Drive Corp.*,
  66 N.W.2d 92 (Mich. 1954) ...................................................................................................... 9

*Pritts v. J.I. Case Co.*,
  310 N.W.2d 261 (Mich. Ct. App. 1981) .................................................................................... 3

*Trent v. PPG Indus., Inc.*,
  865 So.2d 1041 (10th Cir. 2004) ............................................................................................... 5

*Umbach v. Carrington Inv. Partners, L.P.*,
  851 F.3d 147 (2d Cir. 2017) ....................................................................................................... 5

*Wolfe v. A. E. Kusterer & Co.*,
  257 N.W. 729 (1934) ................................................................................................................ 10

### *Rules*

Fed. R. Civ. P. 9(b) ........................................................................................................................ 11

### *Other Authorities*

Black's Law Dictionary (5th ed. 1979) ........................................................................................... 5

Merriam-Webster's Online Dictionary ........................................................................................... 5

Restatement (Second) of Contracts § 202 ..................................................................................... 6

Webster's New International Dictionary (2d ed. 1957) ................................................................ 5

## Counter-Argument

**I.     Bannock's fraud claims are barred by the release.**

The release at issue states, in relevant part, that Bannock releases Siem and Coldwell Banker "with respect to all claims arising out of related to this Agreement, any addendums or counteroffers…."[1] The plain language of the release bars the fraud claims.

**A.     The broad, unambiguous language of the release encompasses future claims.**

Bannock stresses that the fraud claims are based on conduct that occurred *after* execution of the release (specifically, Siem and Coldwell Banker's act of forwarding the offer to amend the purchase agreement to the Nerats without mentioning the conditional offer from a third party). From that premise, Bannock submits that a jury could find that the language of the release isn't broad enough to encompass *future* claims.[2]

Bannock attempts to liken the language to the language at issue in *Hines v. G. Renolds Sims & Assoc.*, No. 12-12478, 2013 WL 1774938 (E.D. Mich. April 25, 2013), a consumer-lending action under the FDCPA. There, defendant's client (the creditor) obtained a default judgment against plaintiff (the debtor). Following the default judgment, the parties entered into a settlement agreement that contained a release. Per the release, plaintiff released defendant and defendant's client (among others) from "any

---

[1] ECF No. 16-1, Pg. ID 80 (Buy and Sell Agreement, ¶ 13).
[2] ECF No. 23, Pg. ID 160-164 (Response to Motion to Dismiss, pp. 5-9).

—1—

and all *further* claims of whatever nature and all liability, known or unknown, foreseen and unforeseen, that could or may arise from *this action or facts*." After execution of the settlement agreement and release, defendant contacted plaintiff twice regarding the debt. According to plaintiff, defendant committed a host of FDCPA violations.

Plaintiff filed a lawsuit in which she raised claims against defendant based on FDCPA violations. Defendant took the position that the release barred the claims. Plaintiff took the position that the language of the release was ambiguous. The district court agreed with plaintiff and found the release ambiguous in two respects:

> The ambiguity arises because of the release's reference to "this action or facts." This may refer to the state-court debt-collection civil action brought by [defendant's client] over [plaintiff's] debt or it may refer to a future action, such as the instant action. It is also unclear what "facts" the release purports to encompass. For example, the "facts" might include those pertaining to the state-court debt collection lawsuit, or they might include other facts relating to conduct that occurred after that lawsuit.
>
> Additionally, another ambiguity exists in the release's phrase referencing "any and all further claims." The Court finds that the use of "further" is ambiguous, as the adjective could reference (i) claims plaintiff could have brought arising out of the state-court debt collection action or (ii) future claims based on conduct occurring after the execution of the release.

*Id.* at *5.

*Hines* isn't capable of analogy. The parties in *Hines* executed the release in the course of litigation. There were existing, pending claims—which understandably made the reference to "*further* claims" confusing. Here, by contrast, there's no ambiguity in the

—2—

reference to "*all* claims." The term "all" is a broad, all-encompassing term that "leaves room for no exceptions." *Pritts v. J.I. Case Co.*, 310 N.W.2d 261, 265 (Mich. Ct. App. 1981).

Bannock's position that a release can't encompass future claims absent an explicit reference to future claims[3] isn't well-founded. Consider *Benteler Auto. Corp. v. Wellington Indus., Inc.*, No. 328329, 2017 WL 1103540 (Mich. Ct. App. March 21, 2017), as but one example. There, plaintiff and defendant—both automotive-parts suppliers—entered into an agreement to outsource the production of certain parts for an automotive manufacturer. After a dispute over payment arose, litigation ensued. Plaintiff and defendant agreed to release "any and all claims…arising out of [their] contractual relationship." *Id.* at *1. Later, plaintiff and defendant quarreled over whether the released claims included future claims, including indemnification claims. The release didn't contain the word "future," but the Court of Appeals determined that "*all* claims" necessarily encompassed future claims. "There cannot be any broader classification than the word 'all'. In its ordinary and natural meaning, the word 'all' leaves no room for exceptions." *Id.* at *3 (cleaned up), quoting *Heritage Resources, Inc. v. Caterpillar Fin. Serv. Corp.*, 774 N.W.2d 332, 346 (Mich. Ct. App. 2009). The Court thus held that "the trial court erred by holding that the [release] did not provide for the release of *all* present and future claims between the parties related to the contractual relationship at issue, including the indemnification claims." *Id.* at *4.

---

[3] ECF No. 23, Pg. ID 162 (Response to Motion to Dismiss, p. 7).

—3—

Bannock's position regarding "future claims" is also untenable by virtue of the reference to "any addendums or counteroffers." Bannock agreed to release Siem and Coldwell Banker not only from claims arising out of or relating to the *existing* purchase agreement, but also from claims arising out of or relating to any *not-yet-existing* (i.e., *future*) addendums or counteroffers. To say that the release didn't encompass future claims would be to ignore the plain language and rewrite the purchase agreement in violation of the fundamental rules of contract interpretation.

In short, *Hines* is readily distinguishable. The language here is clear and susceptible of only one interpretation: Bannock released all claims relating to or arising out of the purchase agreement and the "amendment" (addendum) to the purchase agreement, including the fraud claims. "The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity. *Cole v. Ladbroke Racing Mich., Inc.*, 614 N.W.2d 169, 176 (Mich. Ct. App. 2000).

### B. The fraud claims relate to the purchase agreement or the amendment/addendum to the purchase agreement.

According to Bannock, the fraud claims are based on Siem and Coldwell Banker's act of forwarding an instrument, referred to as an "amendment" to the purchase agreement, to the Nerats despite knowledge that the Nerats intended to sell the property to a third party.[4] Bannock contends in a footnote that because the instrument is described

---

[4] ECF No. 23, Pg. ID 167 (Response to Motion to Dismiss, p. 12).

—4—

as an "amendment" to the purchase agreement, not an "addendum" to the purchase agreement, the fraud claims don't relate to the purchase agreement or an "addendum" to the purchase agreement.[5]

An "addendum" is an instrument that adds a new term to an agreement. See *Trent v. PPG Indus., Inc.*, 865 So.2d 1041, 1048 (10th Cir. 2004), citing Black's Law Dictionary 35 (5th ed. 1979); *Fid. Nat'l Title Ins. Co. v. Title First Agency, Inc.*, No. 2008 WL 4371838, *13 (E.D. Mich. Feb. 4, 2004), citing Merriam-Webster's Online Dictionary. An "amendment" is an instrument that changes or modifies an existing term of an agreement. *Umbach v. Carrington Inv. Partners, L.P.*, 851 F.3d 147, 159 (2d Cir. 2017), citing Webster's New International Dictionary 83 (2d ed. 1957). The instrument, which adds a new term and modifies an existing term, is both an addendum and an amendment.

The parties added a new term by making the sale contingent on procurement of a license to operate a retail marijuana establishment at the property.[6] The contingency, which wasn't part of the purchase agreement, is thus properly characterized as an "addendum" to the purchase agreement. The parties also modified an existing term by moving the closing date from April 28, 2021 to July 1, 2021 or later.[7] Thus, the instrument is both an "addendum" and an "amendment." Because the fraud claims "relate to" an "addendum," the release bars the fraud claims.

---

[5] ECF No. 23, Pg. ID 162 (Response to Motion to Dismiss, p. 7 n. 1).
[6] ECF No. 16-4, Pg. ID 93 (Amendment to Offer to Purchase).
[7] ECF No. 16-4, Pg. ID 93 (Amendment to Offer to Purchase).

Even if the Court gave credence to the label and construed the instrument as an "amendment," the "amendment" became part of the purchase agreement. Restatement (Second) of Contracts § 202(b) (stating that "all writings that are part of the same transaction are interpreted together"). Indeed, the "amendment" explicitly referred to and addressed a significant part of the purchase agreement.[8] The "amendment" had no existence apart from the purchase agreement. And the parties understood and treated the "amendment" as part of the purchase agreement, as evidenced by agreed-upon language that "all other terms of the [purchase agreement]…remain the same."[9] See *Adkins v. Times-World Corp.*, 771 F.2d 829, 831-832 (4th Cir. 1985) (finding that an agreement and an addendum were "part of the same contract" because the addendum specifically referred to and addressed a significant term of the agreement, "the addendum had no existence separate from the…agreement," and the parties understood and treated the addendum as part of the agreement). In that regard, the fraud claims "relate to" the purchase agreement. The release, therefore, bars the fraud claims.

---

[8] ECF No. 16-4, Pg. ID 93 (Amendment to Offer to Purchase).
[9] ECF No. 16-4, Pg. ID 93 (Amendment to Offer to Purchase).

—6—

## II. Bannock's fraud claims are insufficiently pled.

### A. Bannock fails to allege an affirmative false statement, which requires dismissal of the claim for fraudulent misrepresentation (fraud).

Although Bannock asserts claims for both fraudulent misrepresentation (fraud) and fraudulent concealment (silent fraud), Bannock neither alleges nor identifies in briefing any affirmative false statement on the part of Siem and Coldwell Banker. According to Bannock, the misrepresentation was not an affirmative false statement, but rather a misleading action—specifically, Siem and Coldwell Banker forwarded the offer to amend the purchase agreement to the Nerats despite knowledge that the Nerats executed a purchase agreement with and intended to sell the property to a third party. Because Bannock concedes that Siem and Coldwell Banker didn't make an affirmative false statement, the claim for fraudulent misrepresentation can't be sustained. *Hord v. Envt'l Research Inst. of Mich.*, 617 N.W.2d 543, 549 (Mich. 2000).

### B. Bannock fails to allege facts establishing a duty of disclosure or specific acts of reliance, which requires dismissal of the claim for fraudulent concealment (silent fraud).

As to the claim for silent fraud, Bannock must establish a duty of disclosure. *Id.* at 550. As Siem and Coldwell pointed out in their motion to dismiss, a seller's agent generally owes no duty of disclosure to a buyer. *Andrie v. Chrystal-Anderson & Assoc. Realtors, Inc.*, 466 N.W.2d 393, 335-337 (Mich. Ct. App. 1991). Michigan courts have identified only a couple narrow circumstances in which a seller's agent may owe a duty

—7—

of disclosure to a buyer: (1) the buyer expresses "some particularized concern" or makes "a direct inquiry," the seller fails to fully disclose known, material facts regarding the concern or inquiry, and the buyer detrimentally relies on the resulting misdirection or misimpression, or (2) the seller's agent acquires substantial information that he recognizes as rendering a previous, affirmative representation untrue or misleading. *Hord,* 617 N.W.2d at 550-551; *M&D, Inc. v. W.B. McConkey,* 585 N.W.2d 33, 37-38 (Mich. Ct. App. 1998); *Alfieri v. Bertorelli,* 813 N.W.2d 772, 775-776 (Mich. Ct. App. 2012).

Stated otherwise, mere knowledge and suppression of information aren't enough to establish fraud. *M&D,* 585 N.W.2d at 37-38, 39. In *Hord,* for example, defendant (employer) provided plaintiff (prospective employee) with favorable information about the financial health of the company in an apparent effort to induce plaintiff to accept employment. According to plaintiff, defendant knew at the time of the interview that the current financial health of the company wasn't so favorable—there'd been substantial decreases in revenue and fee income, along with numerous layoffs. Nonetheless, the Supreme Court held that defendant didn't commit silent fraud because there was no indication that "plaintiff made any inquiry about the financial condition of the company in general or requested updated financial data in particular." *Hord,* 617 N.W.2d at 550. Although defendant provided financial information, that "was not in response to any request for information by plaintiff." *Id.* at 550-551.

The purchase agreement put Bannock on alert that a third party—Wild West Tobacco, a retailer owned by Deniro Saco[10]—possessed an option (the right of first refusal).[11] And according to Bannock, Siem and Coldwell Banker disclosed the existence of a third-party offer.[12] Bannock says that the disclosure of the "offer," rather than the "purchase agreement," was misleading.[13] Not so. The offer in the purchase agreement was contingent on satisfaction of several conditions, including but not limited to Saco securing financing "in its (sic) sole discretion," providing evidence of loan approval, and obtaining a satisfactory inspection.[14] Bannock pleads no facts from which to infer that all the conditions precedent had been met when Siem and Coldwell Banker disclosed the "offer" to Bannock. In other words, Bannock pleads no facts from which to infer that the purchase agreement had become valid and enforceable before Siem and Coldwell Banker disclosed the "offer." *Modern Globe, Inc. v. 1425 Lake Drive Corp.*, 66 N.W.2d 92, 94 (Mich. 1954) (acceptance of a conditional offer doesn't create a valid contract unless and until the condition is fulfilled).

More pointedly, Bannock pleads no facts from which to infer that it expressed particularized concern or made direct inquiry about the option or the third-party offer.

---

[10] The Court may consider Wild West Tobacco's articles of incorporation, which are matters of public record, without converting a motion to dismiss to a motion for summary judgment. *Amini v. Oberlin Coll.*, 259 F.3d 493 (6th Cir. 2001).
[11] ECF No. 16-1, Pg. ID 82 (Buy and Sell Agreement, ¶ 26).
[12] ECF No. 16, Pg. ID 76 (Amended Complaint, ¶ 79).
[13] ECF No. 16, Pg. ID 76 (Amended Complaint, ¶ 79).
[14] ECF No. 16-3, Pg. ID 87, 89, 90 (Buy and Sell Agreement, ¶¶ 3, 16, 26).

And Bannock pleads no facts from which to infer that Siem and Coldwell Banker ever made an affirmative representation about the option or the third-party offer that subsequent information rendered untrue or misleading. By forwarding Bannock's offer to amend the purchase agreement, Siem and Coldwell Banker "did no more than act as a conduit of information." *Beshada v. Millard Realty*, No. 244635, 2004 WL 60321, *5 (Mich. Ct. App. Jan. 13, 2004). Siem and Coldwell Banker's alleged knowledge of and failure to disclose the purchase agreement with Saco (or conditional offer by Saco) is insufficient to establish silent fraud. *M&D*, 585 N.W.2d at 37-38. As Michigan courts have observed, "mere silence is quite different from concealment." *Id.* at 38, quoting *Wolfe v. A. E. Kusterer & Co.*, 257 N.W. 729 (1934).

Bannock contends that it sufficiently alleged reliance on Siem and Coldwell Banker's alleged misrepresentation. But Bannock directs the Court's attention to an allegation in which it stated that it relied on the *Nerats'* alleged misrepresentation.[15] Moreover, the specifically-alleged acts of reliance—transferring earnest money into a trust account and performing an inspection—occurred before Siem and Coldwell Banker's alleged misrepresentation.[16] While Bannock alleges that it "reasonably relied" on Siem and Coldwell Banker's alleged misrepresentation or "misimpression" that the

---

[15] ECF No. 23, Pg. 167 (Response to Motion to Dismiss, p. 12); ECF No. 16, Pg. ID 74 (Amended Complaint, ¶ 68).
[16] ECF No. 16, Pg. ID 69-70 (Amended Complaint, ¶¶ 19-20, 27).

—10—

transaction would move forward,[17] it alleges no specific acts of reliance. (That isn't particularly surprising since the transaction was, at Bannock's doing, contingent on obtaining a license to operate a retail marijuana establishment at the property.[18]) Bannock thus fails to plead reliance with sufficient specificity. Fed. R. Civ. P. 9(b).

## Conclusion

For the reasons stated here and the reasons stated in their motion to dismiss, Siem and Coldwell Banker request that the Court dismiss the fraud claims with prejudice.

/s/ *Theresa M. Asoklis*
Theresa M. Asoklis (P42709)
4000 Town Center, 9th Floor
Southfield, Michigan 48075
Phone: (248) 355-4141
E-Mail: theresa.asoklis@ceflawyers.com
Attorneys for Siem and Coldwell Banker

Dated: November 18, 2021

---

[17] ECF No. 16, Pg. ID 76 (Amended Complaint, ¶ 82).
[18] ECF No. 16-4, Pg. ID 93 (Amendment to Offer to Purchase, ¶ 6).

—11—

## Certificate of Service

I HEREBY CERTIFY that on November 18, 2021, I electronically filed the above and foregoing **Reply Brief in Support of Dennis Siem and Coldwell Banker Real Estate Group's Motion to Dismiss** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

/s/ *Theresa M. Asoklis*
Theresa M. Asoklis (P42709)

## Certificate of Compliance

In accordance with Local Rule 7.2(b)(ii), I certify that this brief complies with the word-count limitation set forth in Local Rule 7.2(c). I used a proportionally-spaced font, Palatino Linotype, at 12 point. According to my word-processing system, Microsoft Word 2016, this brief contains 2,606 countable words.

/s/ *Theresa M. Asoklis*
Theresa M. Asoklis (P42709)
4000 Town Center, 9th Floor
Southfield, Michigan 48075
Phone: (248) 355-4141
E-Mail: theresa.asoklis@ceflawyers.com
Attorneys for Siem and Coldwell Banker