UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| 1240 S. BANNOCK, LLC., | Case No.  2:21-cv-00183 |
| Plaintiff, | Hon.  Paul L. Maloney<br>U.S. District Judge |
| v. | |
| DENNIS SIEM, et al., | |
| Defendants._____/ | |

**REPORT AND RECOMMENDATION**

### I.  Introduction

This Report and Recommendation (R&R) addresses two motions to dismiss that were filed by Defendants. (ECF No. 20 (motion to dismiss filed by Dennis Siem and the Coldwell Banker Real Estate Group), and ECF No. 21 (motion to dismiss by Donald J. Nerat and Steven A. Nerat).)

The Plaintiff – 1240 S. Bannock LLC (Bannock) – is a Colorado limited liability corporation.  Bannock filed this lawsuit against Defendants Coldwell Banker Real Estate Group (Coldwell), Coldwell real estate agent Dennis Siem (Siem), and property owners Donald J. Nerat and Steven A. Nerat (the Nerats).[1]  Bannock's amended complaint (ECF No. 16) alleges claims of breach of contract (Count 1), fraud and silent fraud (Count 2) against the Nerats, and a claim of fraud and silent fraud (Count 3) against Siem and Coldwell.

---

[1]   Bay Title & Abstract was a defendant in the case until the parties stipulated to its dismissal.   (ECF No. 17 (stipulation), ECF No. 18 (order).)

In January 2021, Bannock made an offer to purchase real property consisting of a strip mall located at 2002 to 2013 10th Street, Menominee, MI (the property), which was owned by the Nerats. Bannock's initial offer included an expiration date, and the Nerats failed to accept by that date. The Nerats did, however, accept the offer several days after the expiration date, which led Bannock to make a deposit of earnest money and to begin inspecting the property.

In March 2021, the Nerats agreed to sell the property *to another buyer* without disclosing the sale to Bannock. Bannock alleges that after this alleged sale to a third-party, Bannock and the Nerats executed an Amendment to the original purchase contract. In the Amendment, Bannock and the Nerats agreed that the sale and purchase of the property was contingent on actions by a third-party business. Specifically, the Amendment provided that the agreement was contingent on Yuma Way MI LLC (Yuma Way) first obtaining from the City of Menominee a retail marijuana license to operate a marijuana establishment at the property. That contingency violates federal law and, in the opinion of the undersigned, is not enforceable in this Court.

In addition, on April 14, 2021, Donald J. Nerat executed a property owner consent form that would allow Yuma Way to operate a marijuana facility or establishment on the property.

Bannock's stated purpose in the Amendment was to purchase the real estate to establish a retail marijuana business. Although, that pursuit is legal under Michigan law, it is not legal under federal law. "[M]arijuana remains a controlled

2

substance at the federal level." *United States v. Lundy*, No. 20-6323, 2021 WL 5190899, at *1 (6th Cir. Nov. 9, 2021); *see also* 21 U.S.C. § 812(c)(10) (identifying "marihuana" as a Schedule I controlled substance); 21 C.F.R. § 1308(d)(23) (same); 21 C.F.R. § 1308(d)(58) (identifying marihuana extract as a Schedule I controlled substance). It is unlawful to manufacture, to distribute, and to possess with intent to distribute a controlled substance – including marijuana – under federal law unless authorized under Subchapter I of Title 21. 21 U.S.C. § 841(a)(1). Furthermore, it is unlawful to attempt or conspire to do any of these acts. 21 U.S.C. § 846. And, pursuant to 18 U.S.C. § 2(a), it is unlawful to aid and abet another in a violation of federal law. Plaintiff has given no indication that the marijuana-related activities discussed in this case are authorized under Subchapter I of Title 21. Although the litigants here have not started to produce and distribute marijuana, their activities appear to be an attempt or a conspiracy to do so, or to aid and abet such an attempt to violate federal law.

In the opinion of the undersigned, Bannock's request that this Court grant it damages against Defendants for breach of contract fails to state a claim upon which relief can be granted because the amendment to the contract is premised on a contingency that is illegal under federal law. It is the undersigned's opinion that the amended contract is unenforceable.

Bannocks claims of fraud arise out the failure to complete the sale of property. These fraud claims arise out of the same transaction at the heart of the breach of the contract claim, and this Court cannot disentangle the fraud claims from the alleged

breach of contract. The appropriate cause of action based upon a promise to do a future act is based in contract and not in fraud. Bannock's purpose in purchasing the subject property was to engage in conduct that violated the Controlled Substances Act (CSA). Bannock knowingly revived its offer to purchase the property by presenting an amendment that made the deal contingent on a third-party obtaining a retail marijuana license. Bannock knew or should have known that the sale of marijuana was illegal under the CSA. Finally, Bannock filed this action in federal court, again with at least constructive knowledge that the terms of the agreement violated the CSA.

It is respectfully, recommended that the Court grant Defendants' motions to dismiss this case.

## II. Factual Allegations

According to the amended complaint and attachments, Bannock offered to buy real property consisting of a strip mall owned by the Nerats for $415,000 on January 8, 2021. (ECF No. 16-1, PageID.79.) The offer stated an expiration date of January 21 with no year specified but included a closing date of April 28, 2021. (*Id.*, PageID.82, 80.) Bannock alleges that on January 26, 2021, the Nerats accepted the offer. (ECF No. 16, PageID.68, ECF No. 16-2, PageID.83.)

The agreement provided that:

> Seller has a right to terminate this agreement within 7 days of acceptance of the contract in case Wild West Tobacco will exercise their right of first refusal.

(ECF No. 16-1, PageID.82.)  Bannock interprets this language as providing the Nerats with only 7 days to terminate the agreement from their January 26 acceptance of the agreement to sell to Bannock.  (ECF No. 16, PageID.69.)  The Nerats did not terminate the agreement by February 2, 2021.  (*Id.*)  Bannock deposited $5,000.00 of earnest funds with Bay Title's trust account for the benefit of the Nerats.  (*Id.*)  Bannock then began inspecting the property.  (*Id.*)

Without giving notice to Bannock, the Nerats then executed a buy and sell agreement for the property with Deniro Saco on or about March 3, 2021.  (*Id.*)  Bannock alleges that it had no knowledge of a relationship between Saco and Wild West Tobacco, which, as noted above, had a right of first refusal in the original offer.  (*Id.*, PageID.70.)  Neither the Nerats nor their Coldwell Banker Real Estate Group (Coldwell) agent Dennis Siem disclosed this agreement to Bannock.  (*Id.*)

On April 8, 2021, without any knowledge of the second buy and sell agreement, Bannock submitted an offer to amend the purchase agreement with the Nerats.  (*Id.*)  This offer was presented to the Nerats by Coldwell agent Siem, and the Nerats executed the amendment on April 12, 2021.  (*Id.*)  The amendment moved the closing date from April 28, 2021, to July 1, 2021, and made the agreement contingent on third-party Yuma Way MI, LLC receiving a license from the City of Menominee to operate a retail marijuana establishment at the property.  (*Id.*)  The amendment required the Nerats to sign forms and cooperate with Yuma Way MI, LLC's license request to the City of Menominee.  (*Id.*)

On April 14, 2021, two days after executing the amendment, Donald Nerat executed a Property Owner Consent Form for the benefit of Yuma Way indicating that he "will allow the applicant to engage in the operation of the applied marihuana business on the property." (*Id.*, PageID.71.)

Not knowing about the second purchase agreement that the Nerats signed with Saco, Bannock contacted Bay Title on June 28, 2021, to confirm the July 1 closing date. (*Id.*) A Bay Title representative informed Bannock that the Nerats had already sold the property to a third-party. (*Id.*) Neither the Nerats nor their Coldwell agent Siem had informed Bannock of the property transfer, or of the agreement made with Saco. (*Id.*)

Bannock asserts a breach of contract, fraud, and silent fraud claims against the Nerats (Counts 1 and 2). (*Id.*, PageID.72-77.) Bannock also asserts fraud and silent fraud claims against Siem and Coldwell (Count 3). (*Id.*, PageID.75-77.)

### III. Motion to Dismiss Standard

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Put differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

### IV. Applicable Law

The parties concede that Michigan law applies. As a federal court sitting in diversity, this Court applies Michigan substantive law. *See Biegas v. Quickway Carriers, Inc.,* 573 F.3d 365, 374 (6th Cir. 2009) ("Under the *Erie* doctrine, federal courts sitting in diversity apply the substantive law of the forum state and federal procedural law.").

The parties dispute whether the federal Controlled Substances Act, 21 U.S.C. § 801 et seq. applies to this case. Bannock argues that the Court can only apply

Michigan law to this action. The Nerats argue that the CSA is relevant to this case, because the subject matter of the purchase agreement was in violation of the CSA. This Court cannot set aside the CSA when ruling on matters involving state contract law. Although, Michigan law applies to his case, this federal court cannot ignore the applicability of the CSA.

**V.  Buy and Sell Agreement**

The Nerats argue that no contract was formed because the Buy and Sell Agreement was executed after the offer had expired. The offer stated that it would expire on January 21, with no year specified. (ECF No. 16-1, PageID.82.) The Nerats signed the agreement on January 26, 2021. (*Id.*, PageID.83.)

Under Michigan law, a binding contract requires an offer, acceptance, consideration, and "a meeting of the minds on all essential terms." *Kloian v. Domino's Pizza L.L.C.,* 273 Mich. App. 449, 452–53, 733 N.W.2d 766, 770 (2006). Contracts should be construed to give effect to the intentions of the parties and to give a reasonable meaning to all provisions. *Klever v. Klever,* 333 Mich. 179, 186, 52 N.W.2d 653, 656–57 (1952). If the language of the contract is clear and unambiguous, the court should construe it according to its plain sense meaning. *Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool,* 473 Mich. 188, 198, 702 N.W.2d 106, 113 (2005).

"An offer comes to an end at the expiration of the time given for its acceptance." *Pakideh v. Franklin Commercial Mort. Group*, Inc., 213 Mich. App. 636, 640-41, 540

N.W. 2d 777 (1995).  "An offeree cannot accept, either through words or deeds, an offer that has lapsed."  (*Id.* at 641.)

The Nerats signed the offer from Bannock to purchase the property after the offer had expired.  (ECF No. 16-1, PageID.82-23.)  Thus, the offer was never properly accepted.  However, an offer to amend the terms of the original offer was executed by Bannock on April 8, 2021.  That executed Amendment To Offer To Purchase is shown below.

> **WB-40 AMENDMENT TO OFFER TO PURCHASE**
>
> CAUTION: Use a WB-40 Amendment if both Parties will be agreeing to modify the terms of the Offer. Use a WB-41 Notice if a Party is giving a Notice which does not require the other Party's agreement.
>
> 1 Buyer and Seller agree to amend the Offer dated January 8, 2021, and accepted January 26, 2021, for
> 2 the purchase and sale of real estate at 2003-2013 E. 10th St. Menominee, MI
> 3 _____, Wisconsin as follows:
> 4 Closing date is changed from April 28th, 2021, to July 1st, 2021 or later as defined below in Other
> 5 Purchase price is changed from $_____ to $_____.
> 6 Other: Buyer and Seller agree that the sale is contingent to Yuma Way MI LLC receiving a license from the City of Menominee to operate a
> 7 retail marihuana establishment at the property. The closing date shall be defined as the later of July 1st, 2021 or five (5) business days following
> 8 Yuma Way MI LLC receiving a license to operate a marihuana retail establishment at the above-mentioned property. Seller agrees to sign any
> 9 forms and otherwise cooperate with Yuma Way MI LLC's request from the City of Menominee and the State of Michigan to award a license to
> 10 Yuma Way MI to operate a marihuana retail establishment at the Property.
>
> 36 This Amendment was drafted by 1240 S Bannock LLC on 04/08/2021
> 40 (x) [signature] 4/8/21
> 41 Buyer's Signature
> 43 (x) [signature] 04/08/21
> 44 Buyer's Signature

(ECF No. 16-4, PageID.93.)

This Amendment to the offer was accepted by the Nerats on April 12, 2021. (ECF No. 16-5, PageID.95.) The Amendment was properly accepted and indicates that the parties did intend to contract for the sale and purchase of the subject property. This Amendment could provide the basis for an enforceable contract.

10

However, the subject matter of the Amendment creates a problem because it endorses an illegal act under federal law. Under the Amendment to the offer, and as shown above, the purchase agreement was contingent on Yuma Way obtaining a license from the City of Menominee "to operate a retail marihuana establishment at the property." (*Id.*) Bannock requests that this federal court conclude that the Amendment created a valid contract and seeks damages based upon this contract.

## VI. Illegality of Amended Purchase Agreement

The Bannock's complaint paints a poor picture of the Nerats and Siem. For purposes of this motion, the Court must accept the allegations in the complaint as true. With that in mind, Bannock's allegations assert that the Nerats and Siem misled Bannock into believing that the purchase would proceed. Bannock alleges that Defendants fraudulently failed to disclose the existence of another purchase agreement for the property, and they failed to disclose to Bannock that they had sold the property to a third-party. Instead, the Nerats and Siem allowed Bannock to believe that everything was moving forward as planned and that closing on the sale was forthcoming.

It is undisputed that Bannock asks for damages arising out of a failed real estate transaction that had the purpose of allowing the sale of marijuana on the property. It is likely that the parties to the Amendment were involved in a conspiracy to manufacture, distribute and possess with intent to distribute marijuana, a Schedule I controlled substance; or an attempt to carry out these activities; or were aiding and abetting an attempt to do so. *See* 21 U.S.C. § 812(c)(10)

(listing marihuana as a Schedule I controlled substance), 21 U.S.C. § 841(a)(1) (criminalizing the manufacture, distribution and possession with intent to distribute of controlled substances in the absence of authorization under the CSA), 21 U.S.C. § 846 (criminalizing conspiracies and attempts to violate the CSA); 18 U.S.C. § 2(a) (criminalizing aiding and abetting violations of federal criminal law); 21 C.F.R. § 1308(d)(23) (listing marihuana as a Schedule I controlled substance); 21 C.F.R. § 1308(d)(58) (listing marihuana extract as a Schedule I controlled substance). These activities are not legal under federal law.

In addition, it should be noted that "[b]y classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study." *Gonzales v. Raich*, 545 U.S. 1, 14 (2005). Under the CSA, "marijuana is 'contraband for *any* purpose,' and, 'if there is any conflict between federal and state law' with regard to marijuana legislation, 'federal law shall prevail' pursuant to the Supremacy Clause." *United States v. Walsh*, 654 F. App'x 689, 695 (6th Cir. 2016).

"Federal courts may not enforce a contract if the result would be to compel a violation of the law." *Anderson v. Int'l Union, United Plant Guard Workers of Am.*, 370 F.3d 542, 554 (6th Cir. 2004), *citing Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 77 (1982). Even where conduct may be legal under state law and enforceable by a state court, federal courts sitting in diversity have held that contracts that violate the federal marijuana laws are not enforceable by a federal court. *See Sensoria, LLC v*

*Kaweske*, 2021 WL 103020, *6 (D. Colo., Jan. 12, 2021) (dismissing investor's allegations in lawsuit based on the pleadings in the complaint against owners of a corporate holding company that owned and operated marijuana retail and manufacturing entities); *Tracy v. USSA Cas. Ins. Co.*, 2012 WL 928186 (D. Haw., Mar. 16, 2012) (granting summary judgment to insurance company on plaintiff's claim for loss of medical marijuana plants that were legal under State law); *J. Lilly, LLC v. Clearspan Fabric Structures International, Inc.*, 2020 WL 1855190 (D. Or., April 13, 2020) (dismissing claim for lost profits from the sale of marijuana arising out of alleged breach of greenhouse lease with option to purchase).

However, a federal court may provide relief on a contract claim if the relief can be granted in a manner that does not violate federal marijuana laws. *Sensoria*, at *6; *See Mann v. Gullickson*, 2016 WL 6473215, *7-8 (N.D. Cal. Nov. 2, 2016) (contract involving the sale of a hydroponic plant growing franchise business and a consulting business for obtaining state regulated marijuana dispensary licenses was enforceable because the operations of the businesses did not require a violation of the CSA).

Bannock argues that the Amendment granted it the "option" to terminate the agreement if Yuma Way failed to obtain a retail license to sell marijuana. (ECF No. 25, PageID.182.) The undersigned disagrees. First, the Amendment did not state that Bannock had an "option" to terminate the contract. Rather the Amendment states unambiguously "that the sale is contingent to Yuma Way MI, LLC receiving a license from the City of Menominee to operate a retail marihuana establishment at the property." (ECF No. 16-4, PageID.93.) The Property Owner Consent Form

13

(ECF No. 16-6, PageID.97) confirms this understanding. There exists no ambiguity. The purchase agreement was dependent on Yuma Way MI, LLC receiving a license to operate a retail marijuana establishment on the property. If Yuma Way received the license, then the purchase agreement was enforceable. If Yuma Way did not receive the license, then the agreement would not be enforceable. But this contingency does not create an option for Bannock.

Furthermore, under the terms of the amended purchase agreement, Bannock was likely involved in a conspiracy to distribute marijuana or an attempt to do so. Bannock argues that the Court need not enforce the terms of the purchase agreement to impose damages against Plaintiffs. In making this argument, Bannock focuses on its request for relief, instead of the contract that was allegedly breached. Bannock asserts that it is not seeking specific performance of the contract but damages that include costs in preparation for closing, lost rent from existing "non-marijuana-related tenants", and lost equity in the real estate. (ECF No. 25, PageID.185.)

The problem here, however, is that Bannock chose to make the purchase agreement dependent on its own indirect involvement in the manufacture and retail sale of marijuana. Bannock admits that "[a]t most, the Amendment could support the proposition that Plaintiff had a purpose to indirectly support a third-party marijuana business by leasing real property to it." (ECF No. 25, PageID.183.) But indirect support is likely tantamount to aiding and abetting the manufacture and distribution of marijuana in this case because the Amended purchase agreement was

14

contingent on Yuma Way obtaining a license to operate a retail marijuana establishment at the property, and the Nerats consented to this use. Bannock invites the Court to overlook the contingency in the Amendment. The primary purpose of the Amendment was to purchase the property for a retail marijuana establishment. This point is also reflected by the City of Menominee Property Owner Consent Form, by which the Nerats authorized Yuma Way MI LLC to operate a marijuana business on the property if the application is granted by the city. (ECF No. 16-6, PageID.97 (City of Menominee Property Owner Consent Form signed by Donald J. Nerat).) The consent form includes the following statement: "I am required to sign this agreement in order for the applicant's application to go forward and understand that I may be liable under . . . federal law for the marihuana activities I am allowing on my property." (*Id.*)

In summary, the Amended purchase agreement likely required Bannock to knowingly participate in activities that would constitute violations of federal law. In the opinion of the undersigned, because the Amended purchase agreement was contingent on approval of Yuma Way's application to operate a retail marijuana establishment on the property, this Court may only conclude that the purpose of the Amendment was to allow others to engage in activities that constituted violations of federal law.

Bannock asserts claims of fraud and silent fraud based upon the Nerats' failure to complete the terms of the contract. In general, Bannock says that the Nerats committed fraud by never intending to complete the sale of the property to Bannock

15

and that Siem and Coldwell committed fraud by failing to inform Bannock that the Nerats never intended to sell to Bannock.

The "[f]ailure to carry out a promise to do a future act does not constitute actionable fraud; instead, the remedy if any, lies in a suit for breach of contract." *Adell Broadcasting Corp. v. Cablevision Industries*, 854 F. Supp. 1280 (E.D. Mich. 1994) (citing *Michigan Nat'l Bank v. Holland-Dozier-Holland Sound Studios*, 73 Mich. App. 12, 250 N.W.2d 532, 535 (1976)). Here the fraud claims and the breach of contract claims arise out of the same course of conduct. "Fraud is actionable only for false representations of past or existing facts." *Miller v. Joaquin*, 431 F. Supp. 3d 906, 917 (E.D. Mich. 2019). Where "a plaintiff wishes to sue for a defendant's failure to abide by a promise, the plaintiff can resort to a breach of contract claim" because "a mere broken promise . . . is [not] evidence of fraud." *Id.* (citations omitted). In the opinion of the undersigned, this Court cannot disentangle the claims of fraud from the alleged breach of contract because they essentially rely upon the same conduct. *Newman v. Roland Machinery Co.*, 2009 WL 1438531, *9-10 (W.D. Mich., May 19, 2009) (allegations of fraud arising out of breach of contract cannot be disentangled from the breach of contract claim).

Similarly, Bannock's fraud and silent fraud claims arise out of the illegal contract. This Court should reject enforcement of those claims because they directly relate to violations of the CSA.

It is worth noting that Bannock chose to proceed with the sale despite knowing that the original purchase agreement was "accepted" *after* the offer had expired.

16

Bannock did nothing to correct that error. Bannock then revived its offer by presenting an amendment that made the deal contingent on a third-party obtaining a retail marijuana license. Bannock knew or should have known that the manufacture and sale of marijuana remain illegal under federal law. Finally, Bannock filed this action in federal court, again with at least constructive knowledge that the terms of the agreement authorized activities that would violate federal law.

In the opinion of the undersigned, this Court cannot award damages to Bannock under a failed purchase agreement that was entered into with the likely intent to carry out acts that would constitute violations of federal law. The Court should decline Bannock's invitation to ignore the contract language and its stated purpose – which was to carry out acts that would constitute violations of federal law. It is recommended that the Court determine that Bannock's contract and fraud claims fail as a matter of law because the Amended purchase agreement was contingent on activities that would constitute violations of federal law.

## VII. Recommendation

It is respectfully recommended that the Court grant Defendants motions to dismiss (ECF Nos. 20 and 21) because the amended complaint (ECF No. 16) presents factual allegations that fail to state a claim upon which relief may be granted.

Dated: May 27, 2022                                   /s/ *Maarten Vermaat*
                                                                                                         MAARTEN VERMAAT
                                                                                                          U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen

(14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).